UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| OYSTER OPTICS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>INFINERA CORPORATION, CORIANT (USA) INC., CORIANT NORTH AMERICA, LLC, and CORIANT OPERATIONS, INC.,<br><br>Defendants. | C.A. No. 2:19-cv-257<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR PATENT INFRINGEMENT**

This is an action for patent infringement arising under the Patent Laws of the United States of America, 35 U.S.C. § 1 *et seq.* in which Plaintiff Oyster Optics ("Plaintiff" or "Oyster") makes the following allegations against Defendant Infinera Corporation ("Infinera") and Defendants Coriant (USA) Inc., Coriant North America, LLC, and Coriant Operations, Inc. (collectively "Coriant Defendants" and together with Infinera the "Defendants"):

**PARTIES**

1. Oyster Optics, LLC is a Texas company, and has a place of business at 11921 Freedom Drive, Suite 550, Reston, VA 20190.

2. On information and belief, Infinera Corporation is a Delaware corporation with its principal place of business at 140 Caspian Court, Sunnyvale, CA 94089-1000. Infinera can be served through its registered agent, Corporation Service Company DBA CSC-Lawyers INCO, 211 E. 7th Street, Suite 620, Austin, TX 78701. On information and

1

belief, Infinera product(s) power CyrusOne's Texas Internet Exchange (IX), the first statewide IX in the United States.

3. On information and belief, Coriant (USA) Inc. is a Delaware corporation. Coriant (USA) Inc. can be served through its registered agent, National Registered Agents, Inc., at 1999 Bryan St., Ste. 900, Dallas, TX 75201.  On information and belief Coriant (USA) Inc. has been indirectly owned by Infinera since October 1, 2018.

4. On information and belief, Coriant North America, LLC. is a Delaware corporation. Coriant North America LLC can be served through its registered agent, National Registered Agents, Inc., at 1999 Bryan St., Ste. 900, Dallas, TX 75201.  On information and belief Coriant North America LLC has been indirectly owned by Infinera since October 1, 2018.

5. On information and belief, Coriant Operations, Inc. is a Delaware corporation. Coriant Operations, Inc. can be served through its registered agent, National Registered Agents, Inc., at 1999 Bryan St., Ste. 900, Dallas, TX 75201.  On information and belief Coriant Operations, Inc. has been indirectly owned by Infinera since October 1, 2018.

**JURISDICTION AND VENUE**

6. This action arises under the patent laws of the United States, Title 35 of the United States Code.  This Court has original subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

7. This Court has personal jurisdiction over Defendants in this action because each Defendant has committed acts within the Eastern District of Texas giving rise to this action and has established minimum contacts with this forum such that the exercise of

jurisdiction over Defendants would not offend traditional notions of fair play and substantial justice.  Defendants, directly and through subsidiaries or intermediaries, have committed and continue to commit acts of infringement in this District by, among other things, offering to sell and selling products and/or services that infringe the asserted patents.

8. This Court has personal jurisdiction over Defendants in this action because, among other reasons, Defendants have committed acts within the Eastern District of Texas giving rise to this action and have established minimum contacts with the forum state of Texas. Defendants directly and/or through subsidiaries, parents, or intermediaries (including distributors, retailers, and others), have committed and continue to commit acts of infringement in this District by, among other things, making, using, importing, offering for sale, and/or selling products and/or services that infringe the patents-in-suit. Defendants have, in prior cases, acknowledged the propriety of jurisdiction of this Court, such as in Civil Action No. 2:16-cv-1295 (E.D. Tex. November 23, 2016) and in Civil Action No. 2:16-cv-1302 (E.D. Tex. November 24, 2016). Thus, Defendants purposefully availed themselves of the benefits of doing business in the State of Texas and the exercise of jurisdiction over Defendants would not offend traditional notions of fair play and substantial justice. Infinera is registered to do business in the State of Texas and has appointed Corporation Service Company DBA CSC-Lawyers INCO, 211 E. 7th Street, Suite 620, Austin, TX 78701 as its agent for service of process. The Coriant Defendants are registered to do business in the State of Texas, and have appointed National Registered Agents, Inc., at 1999 Bryan St., Ste. 900, Dallas, TX 75201, as their agent for service of process.

9. Venue is proper in this District under 28 U.S.C. §§ 1391 (b)-(c) and 1400(b) because Defendants are subject to personal jurisdiction in this District, have transacted business in this District and have committed acts of patent infringement in this District. Furthermore, in prior cases brought in this District, Defendants have not challenged the propriety of venue in this District. See, e.g., Civil Action No. 2:16-cv-1295 (E.D. Tex. November 23, 2016), in Civil Action No. 2:16-cv-1302 (E.D. Tex. November 24, 2016), Civil Action No. 2:18-cv-206 (E.D. Tex. May 15, 2018). During times at which infringement alleged in this complaint occurred, Defendants have maintained one or more regular and established places of business in this District, including at 4100 Midway Road, Suite 1120, Carrollton, TX 75007

### COUNT I
### INFRINGEMENT OF U.S. PATENT NO. 6,665,500

10. Plaintiff realleges and incorporates by reference the foregoing paragraphs, as if fully set forth herein.

11. In the early 2000s, Oyster Optics, Inc., a research, development, and engineering company, was focused upon innovation in government, commercial, security, and broad-band applications of leading edge fiber optics technology. Mr. Peter ("Rocky") Snawerdt was at Oyster Optics, Inc. when he invented the subject matter of U.S. Patent Nos. 6,665,500 ("the '500 Patent").

12. Oyster is the owner by assignment of the '500 Patent entitled "Dual-Mode Fiber Optic Telecommunications System and Method." The '500 Patent was duly and legally issued by the United States Patent and Trademark Office on December 16, 2003. A true and correct copy of the '500 Patent is included as Exhibit A.

13. On information and belief, Infinera has offered for sale, sold and/or imported into the United States Infinera products and services that infringe the '500 patent, and continues to do so.

14. On information and belief, Defendants make, use, offer for sale and/or sell in the United States the products and services that infringe various claims of the '500 Patent, and continue to do so. These products include, without limitation, products utilizing Infinera's "Infinite Capacity Engine" ("ICE"). According to Infinera, ICE is a "family of optical engines [that deliver] cloud scale capacity for Infinera Intelligent Transport Networks," ICE Version 4 ("ICE 4") was first introduced in 2016, and ICE version 5 ("ICE 5") was announced in 2018. According to Infinera, ICE 4 "powers a broad range of Infinera products from the compact, disaggregated Cloud Xpress 2 and XT-Series Meshponders to the DTN-X XTC family, serving a wide variety of metro, long haul, and subsea applications." On information and belief, the ICE 4 and ICE 5 drive Infinera's DTN, DTN-X, DTN-X-XTC, FlexILS, and Cloud Xpress platforms. The infringing products also include, without limitation, the Coriant and Infinera Groove G30 DCI Platform. The exemplary products utilizing ICE 4 and ICE 5 and the Groove G30 named in this paragraph shall be referred to collectively hereinafter as the "Accused Instrumentalities."

15. On information and belief, Defendants have directly infringed and continue to infringe the '500 Patent, for example, by making, selling, offering for sale, and/or importing the Accused Instrumentalities, and through their own use and testing of the Accused Instrumentalities, which constitute the optical data transmitter of Claim 1 of the '500 Patent comprising a laser; a phase modulator for phase modulating light from the light source; and a controller having an input for receiving an electronic data stream, the

controller in a first mode controlling the phase modulator so as to create phase-modulated optical signals in the light from the laser as a function of the electronic data stream and the controller in a second alternate mode amplitude-modulating the light from the laser as a function of the electronic data stream, the first mode and the second mode occurring at different times. Upon information and belief, Defendants use the Accused Instrumentalities, which are infringing systems, for their own internal non-testing business purposes, while testing the Accused Instrumentalities, and while providing technical support and repair services for the Accused Instrumentalities to Defendants' customers.

16. On information and belief, Defendants knew of the '500 Patent and knew of their infringement, including by way of this lawsuit. By the time of trial, Defendants will have known and intended (since receiving such notice) that their continued actions would actively induce and contribute to the infringement of the claims of the '500 Patent.

17. On information and belief, use of the Accused Instrumentalities in their ordinary and customary fashion results in infringement of the claims of the '500 Patent.

18. Defendants' affirmative acts of making, using, selling, offering for sale, and/or importing the Accused Instrumentalities have induced and continue to induce users of the Accused Instrumentalities to use the Accused Instrumentalities in their normal and customary way to infringe the claims of the '500 Patent, knowing that when the Accused Instrumentalities are used in their ordinary and customary manner, such systems constitute on optical data transmitter comprising: a laser; a phase modulator for phase modulating light from the light source; and a controller having an input for receiving an electronic data stream, the controller in a first mode controlling the phase modulator so as to create phase-modulated optical signals in the light from the laser as a function of the electronic data

6

stream and the controller in a second alternate mode amplitude-modulating the light from the laser as a function of the electronic data stream, the first mode and the second mode occurring at different times.  Defendants also induce their customers to use the Accused Instrumentalities to infringe other claims of the '500 Patent.  Defendants specifically intended and were aware that the normal and customary use of the Accused Instrumentalities on compatible systems would infringe the '500 Patent.  Defendants performed the acts that constitute induced infringement, and would induce actual infringement, with the knowledge of the '500 Patent and with the knowledge, or willful blindness to the probability, that the induced acts would constitute infringement.  On information and belief, Defendants engaged in such inducement to promote the sales of the Accused Instrumentalities, *e.g.*, through Defendants' user manuals, product support, marketing materials, demonstrations, installation support, and training materials to actively induce the users of the accused products to infringe the '500 Patent.  Accordingly, Defendants have induced and continue to induce end users of the accused products to use the accused products in their ordinary and customary way with compatible systems to make and/or use systems infringing the '500 Patent, knowing that such use of the Accused Instrumentalities with compatible systems will result in infringement of the '500 Patent. Accordingly, Defendants have been (since at least as of filing of the original complaint), and currently are, inducing infringement of the '500 Patent, in violation of 35 U.S.C. § 271(b).

19.     Defendants have also infringed, and continue to infringe, claims of the '500 patent by offering to commercially distribute, commercially distributing, making, and/or importing the Accused Instrumentalities, which are used in practicing the process, or using

7

the systems, of the '500 patent, and constitute a material part of the invention. Defendants know the components in the Accused Instrumentalities to be especially made or especially adapted for use in infringement of the '500 patent, not a staple article, and not a commodity of commerce suitable for substantial noninfringing use. For example, the ordinary way of using the Accused Instrumentalities infringes the patent claims, and as such, is especially adapted for use in infringement. Accordingly, Defendants have been, and currently are, contributorily infringing the '500 patent, in violation of 35 U.S.C. § 271(c).

20. The Accused Instrumentalities include "[a]n optical data transmitter:"

**THE INFINERA INFINITE CAPACITY ENGINE (ICE)** family of optical engines delivers cloud scale capacity for Infinera Intelligent Transport Networks. Powered by the advanced electronics in Infinera's FlexCoherent® digital signal processors (DSPs) and the cutting-edge photonics of Infinera's photonic integrated circuits (PICs), ICE offers network operators the combined benefits of scalable multi-terabit super-channel capacity and industry-leading capacity-reach performance from metro to subsea distances.

|  | ICE4 | ICE5 |
| --- | --- | --- |
| Maximum capacity per wavelength | 200 Gb/s | 600 Gb/s |
| Base optical engine, number of wavelengths | 6 wavelengths | 4 wavelengths |
| Base optical engine, maximum capacity | 1.2 Tb/s | 2.4 Tb/s |
| Maximum capacity per fiber (C-Band) | 27.6 Tb/s | approximately 40 Tb/s |
| Supported modulations | BPSK thru 16QAM | QPSK thru 64QAM |
| Transmission symbol rate | flexible, 17-33 gigabaud | flexible, 33-66 gigabaud |
| Built-in encryption support | Yes | Yes |

**Table 1.** ICE Generations at a Glance

https://www.infinera.com/wp-content/uploads/2016/03/Infinera-BR_Infinite-Capacity-Engine.pdf.

### FEATURING MODULARITY AS A BUSINESS ENABLER

The innovative three-tier modular concept of the Coriant Groove™ G30 DCI Platform provides a number of competitive advantages to DCI and telecom network planners and architects. The Coriant Groove™ G30 DCI Platform supports up to four field replaceable, individually configurable and hot-swappable 400G sleds (or field replaceable units). Each 400G sled can be equipped with up to two 200G line side interfaces (CFP2-ACO) and up to four 100G client side interfaces (QSFP28). Another 400G sled variant supporting a mix of 10G, 40G, and 100G clients is also available. The sleds and the pluggable interfaces can be purchased and deployed one at a time as required.

Coriant Groove G30 DCI Platform Data Sheet at 1.



Implementation Agreement for CFP2-Analogue Coherent Optics Module, OIF-CFP2-ACO-01.0, at 14.

21. The Accused Instrumentalities include "a laser:"

9

> **Cutting-edge Photonics**
> Infinera PIC technology has clocked over two billion field hours, lighting up over two million kilometers of fiber. The PIC technology within the Infinera Infinite Capacity Engine integrates several hundred optical functions, including tuneable lasers, photodiodes, nested Mach-Zehnder modulators, demodulators, splitters, combiners, attenuators and amplifiers. The PIC is designed to

https://www.infinera.com/wp-content/uploads/2016/03/Infinera-BR_Infinite-Capacity-Engine.pdf.

> • Laser Safety: ANSI Class 1M, IEC Class 1M, EN 60825-1/2, 21 CFR 1040 US FDA CDRH, Laser Safety

Coriant Groove G30 DCI Platform Data Sheet at 4.



Implementation Agreement for CFP2-Analogue Coherent Optics Module, OIF-CFP2-ACO-01.0, at 14.

22. The Accused Instrumentalities include "a phase modulator for phase modulating light from the light source." For example, the Accused Instrumentalities use BPSK and/or QPSK phase modulation.

**Cutting-edge Photonics**

Infinera PIC technology has clocked over two billion field hours, lighting up over two million kilometers of fiber. The PIC technology within the Infinera Infinite Capacity Engine integrates several hundred optical functions, including tuneable lasers, photodiodes, nested Mach-Zehnder modulators, demodulators, splitters, combiners, attenuators and amplifiers. The PIC is designed to

|  | ICE4 | ICE5 |
|---|---|---|
| Maximum capacity per wavelength | 200 Gb/s | 600 Gb/s |
| Base optical engine, number of wavelengths | 6 wavelengths | 4 wavelengths |
| Base optical engine, maximum capacity | 1.2 Tb/s | 2.4 Tb/s |
| Maximum capacity per fiber (C-Band) | 27.6 Tb/s | approximately 40 Tb/s |
| Supported modulations | BPSK thru 16QAM | QPSK thru 64QAM |
| Transmission symbol rate | flexible, 17-33 gigabaud | flexible, 33-66 gigabaud |
| Built-in encryption support | Yes | Yes |

**Table 1.** ICE Generations at a Glance

https://www.infinera.com/wp-content/uploads/2016/03/Infinera-BR_Infinite-Capacity-Engine.pdf.

**LEVERAGING PROGRAMMABLE MODULATION FORMATS**

Powered by Coriant CloudWave™ Optics, the Coriant Groove™ G30 DCI Platform supports programmable DWDM line interface bandwidth and performance to optimize high-capacity transmission from 100G to 400G in metro, regional, or long-haul DCI applications. The Coriant Groove™ G30 DCI Platform features three different user programmable line modulation formats to further cost optimize each network design for optimal transparent reach and fiber spectral utilization. Each of the sixteen Coriant Groove™ G30 DCI Platform line side ports can be independently configured as either 100G DP-QPSK, 150G DP-8QAM, or 200G DP-16QAM. Paired with the Coriant® Pluggable Optical Layer that features pluggable form factor amplifiers, variable optical attenuators, power monitoring, combiners, splitters, WSS, and all other functions, the Coriant Groove™ G30 DCI Platform is the simplest, most flexible, and most efficient DCI solution currently available.

| Modulation Scheme | Application | Fiber Capacity | Reach | Forward Error Correction |
|---|---|---|---|---|
| DP-QPSK | Long Haul | 9.6 Tbps | Up to 4000 km | Up to 25% SDFEC |
| DP-8QAM | Regional | 19.2 Tbps | Up to 2000 km | Up to 25% SDFEC |
| DP-16QAM | Metro, Metro Edge | 25.6 Tbps | Up to 1000 km | Up to 25% SDFEC |

Coriant Groove G30 DCI Platform Data Sheet at 2.

11

23. The Accused Instrumentalities further include "a controller having an input for receiving electronic data":

**Advanced Electronics**

The FlexCoherent DSPs in ICE are designed to deliver sophisticated digital signal handling, with transmitter-based (Tx) processing and enhanced receiver-based (Rx) capability, industry-leading coherent performance and complementary features to enhance network security and availability.

|  | ICE4 | ICE5 |
|---|---|---|
| Maximum capacity per wavelength | 200 Gb/s | 600 Gb/s |
| Base optical engine, number of wavelengths | 6 wavelengths | 4 wavelengths |
| Base optical engine, maximum capacity | 1.2 Tb/s | 2.4 Tb/s |
| Maximum capacity per fiber (C-Band) | 27.6 Tb/s | approximately 40 Tb/s |
| Supported modulations | BPSK thru 16QAM | QPSK thru 64QAM |
| Transmission symbol rate | flexible, 17-33 gigabaud | flexible, 33-66 gigabaud |
| Built-in encryption support | Yes | Yes |

**Table 1.** ICE Generations at a Glance

https://www.infinera.com/wp-content/uploads/2016/03/Infinera-BR_Infinite-Capacity-Engine.pdf.



Implementation Agreement for CFP2-Analogue Coherent Optics Module, OIF-CFP2-ACO-01.0, at 14.

24. The Accused Instrumentalities further include "the controller in a first mode controlling the phase modulator so as to create phase-modulated optical signals in the light from the laser as a function of the electronic data stream":

|  | ICE4 | ICE5 |
|---|---|---|
| Maximum capacity per wavelength | 200 Gb/s | 600 Gb/s |
| Base optical engine, number of wavelengths | 6 wavelengths | 4 wavelengths |
| Base optical engine, maximum capacity | 1.2 Tb/s | 2.4 Tb/s |
| Maximum capacity per fiber (C-Band) | 27.6 Tb/s | approximately 40 Tb/s |
| Supported modulations | BPSK thru 16QAM | QPSK thru 64QAM |
| Transmission symbol rate | flexible, 17-33 gigabaud | flexible, 33-66 gigabaud |
| Built-in encryption support | Yes | Yes |

**Table 1.** ICE Generations at a Glance

### Advanced Electronics

The FlexCoherent DSPs in ICE are designed to deliver sophisticated digital signal handling, with transmitter-based (Tx) processing and enhanced receiver-based (Rx) capability, industry-leading coherent performance and complementary features to enhance network security and availability.

### Cutting-edge Photonics

Infinera PIC technology has clocked over two billion field hours, lighting up over two million kilometers of fiber. The PIC technology within the Infinera Infinite Capacity Engine integrates several hundred optical functions, including tuneable lasers, photodiodes, nested Mach-Zehnder modulators, demodulators, splitters, combiners, attenuators and amplifiers. The PIC is designed to

https://www.infinera.com/wp-content/uploads/2016/03/Infinera-BR_Infinite-Capacity-Engine.pdf.

14

**LEVERAGING PROGRAMMABLE MODULATION FORMATS**

Powered by Coriant CloudWave™ Optics, the Coriant Groove™ G30 DCI Platform supports programmable DWDM line interface bandwidth and performance to optimize high-capacity transmission from 100G to 400G in metro, regional, or long-haul DCI applications. The Coriant Groove™ G30 DCI Platform features three different user programmable line modulation formats to further cost optimize each network design for optimal transparent reach and fiber spectral utilization. Each of the sixteen Coriant Groove™ G30 DCI Platform line side ports can be independently configured as either 100G DP-QPSK, 150G DP-8QAM, or 200G DP-16QAM. Paired with the Coriant® Pluggable Optical Layer that features pluggable form factor amplifiers, variable optical attenuators, power monitoring, combiners, splitters, WSS, and all other functions, the Coriant Groove™ G30 DCI Platform is the simplest, most flexible, and most efficient DCI solution currently available.

| Modulation Scheme | Application | Fiber Capacity | Reach | Forward Error Correction |
|---|---|---|---|---|
| DP-QPSK | Long Haul | 9.6 Tbps | Up to 4000 km | Up to 25% SDFEC |
| DP-8QAM | Regional | 19.2 Tbps | Up to 2000 km | Up to 25% SDFEC |
| DP-16QAM | Metro, Metro Edge | 25.6 Tbps | Up to 1000 km | Up to 25% SDFEC |

Coriant Groove G30 DCI Platform Data Sheet at 2.

19. The Accused Instrumentalities further include "the controller in a second alternate mode amplitude-modulating the light from the laser as a function of the electronic data stream":

| | ICE4 | ICE5 |
|---|---|---|
| Maximum capacity per wavelength | 200 Gb/s | 600 Gb/s |
| Base optical engine, number of wavelengths | 6 wavelengths | 4 wavelengths |
| Base optical engine, maximum capacity | 1.2 Tb/s | 2.4 Tb/s |
| Maximum capacity per fiber (C-Band) | 27.6 Tb/s | approximately 40 Tb/s |
| Supported modulations | BPSK thru 16QAM | QPSK thru 64QAM |
| Transmission symbol rate | flexible, 17-33 gigabaud | flexible, 33-66 gigabaud |
| Built-in encryption support | Yes | Yes |

**Table 1.** ICE Generations at a Glance

**Advanced Electronics**

The FlexCoherent DSPs in ICE are designed to deliver sophisticated digital signal handling, with transmitter-based (Tx) processing and enhanced receiver-based (Rx) capability, industry-leading coherent performance and complementary features to enhance network security and availability.

15

**Cutting-edge Photonics**

Infinera PIC technology has clocked over two billion field hours, lighting up over two million kilometers of fiber. The PIC technology within the Infinera Infinite Capacity Engine integrates several hundred optical functions, including tuneable lasers, photodiodes, nested Mach-Zehnder modulators, demodulators, splitters, combiners, attenuators and amplifiers. The PIC is designed to

https://www.infinera.com/wp-content/uploads/2016/03/Infinera-BR_Infinite-Capacity-Engine.pdf.

**LEVERAGING PROGRAMMABLE MODULATION FORMATS**

Powered by Coriant CloudWave™ Optics, the Coriant Groove™ G30 DCI Platform supports programmable DWDM line interface bandwidth and performance to optimize high-capacity transmission from 100G to 400G in metro, regional, or long-haul DCI applications. The Coriant Groove™ G30 DCI Platform features three different user programmable line modulation formats to further cost optimize each network design for optimal transparent reach and fiber spectral utilization. Each of the sixteen Coriant Groove™ G30 DCI Platform line side ports can be independently configured as either 100G DP-QPSK, 150G DP-8QAM, or 200G DP-16QAM. Paired with the Coriant® Pluggable Optical Layer that features pluggable form factor amplifiers, variable optical attenuators, power monitoring, combiners, splitters, WSS, and all other functions, the Coriant Groove™ G30 DCI Platform is the simplest, most flexible, and most efficient DCI solution currently available.

| Modulation Scheme | Application | Fiber Capacity | Reach | Forward Error Correction |
|---|---|---|---|---|
| DP-QPSK | Long Haul | 9.6 Tbps | Up to 4000 km | Up to 25% SDFEC |
| DP-8QAM | Regional | 19.2 Tbps | Up to 2000 km | Up to 25% SDFEC |
| DP-16QAM | Metro, Metro Edge | 25.6 Tbps | Up to 1000 km | Up to 25% SDFEC |

Coriant Groove G30 DCI Platform Data Sheet at 2.

20.     The Accused Instrumentalities further include "the first mode and the second mode occurring at different times." For example, the Accused Instrumentalities transmit using PSK or QAM on a given wavelength at different times:

16

| | ICE4 | ICE5 |
|---|---|---|
| Maximum capacity per wavelength | 200 Gb/s | 600 Gb/s |
| Base optical engine, number of wavelengths | 6 wavelengths | 4 wavelengths |
| Base optical engine, maximum capacity | 1.2 Tb/s | 2.4 Tb/s |
| Maximum capacity per fiber (C-Band) | 27.6 Tb/s | approximately 40 Tb/s |
| Supported modulations | BPSK thru 16QAM | QPSK thru 64QAM |
| Transmission symbol rate | flexible, 17-33 gigabaud | flexible, 33-66 gigabaud |
| Built-in encryption support | Yes | Yes |

**Table 1.** ICE Generations at a Glance

https://www.infinera.com/wp-content/uploads/2016/03/Infinera-BR_Infinite-Capacity-Engine.pdf.

**LEVERAGING PROGRAMMABLE MODULATION FORMATS**

Powered by Coriant CloudWave™ Optics, the Coriant Groove™ G30 DCI Platform supports programmable DWDM line interface bandwidth and performance to optimize high-capacity transmission from 100G to 400G in metro, regional, or long-haul DCI applications. The Coriant Groove™ G30 DCI Platform features three different user programmable line modulation formats to further cost optimize each network design for optimal transparent reach and fiber spectral utilization. Each of the sixteen Coriant Groove™ G30 DCI Platform line side ports can be independently configured as either 100G DP-QPSK, 150G DP-8QAM, or 200G DP-16QAM. Paired with the Coriant® Pluggable Optical Layer that features pluggable form factor amplifiers, variable optical attenuators, power monitoring, combiners, splitters, WSS, and all other functions, the Coriant Groove™ G30 DCI Platform is the simplest, most flexible, and most efficient DCI solution currently available.

| Modulation Scheme | Application | Fiber Capacity | Reach | Forward Error Correction |
|---|---|---|---|---|
| DP-QPSK | Long Haul | 9.6 Tbps | Up to 4000 km | Up to 25% SDFEC |
| DP-8QAM | Regional | 19.2 Tbps | Up to 2000 km | Up to 25% SDFEC |
| DP-16QAM | Metro, Metro Edge | 25.6 Tbps | Up to 1000 km | Up to 25% SDFEC |

Coriant Groove G30 DCI Platform Data Sheet at 2.

19. Defendants also infringe other claims of the '500 Patent, directly and through inducing infringement and contributory infringement.

20. By making, using, offering for sale, selling and/or importing into the United States the Accused Instrumentalities, and touting the benefits of using the Accused Instrumentalities' accused features, Defendants have injured Oyster and are liable to Oyster for infringement of the '500 Patent pursuant to 35 U.S.C. § 271.

17

21. As a result of Defendants' infringement of the '500 Patent, Plaintiff Oyster is entitled to monetary damages in an amount adequate to compensate for Defendants' infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendants, together with interest and costs as fixed by the Court.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Oyster respectfully requests that this Court enter:

a. A judgment in favor of Plaintiff that Defendants have infringed, either literally and/or under the doctrine of equivalents the '500 Patent;

b. A permanent injunction prohibiting Defendants from further acts of infringement of the '500 Patent;

c. A judgment and order requiring Defendants to pay Plaintiff its damages, costs, expenses, and prejudgment and post-judgment interest for its infringement of the asserted patents, as provided under 35 U.S.C. § 284;

d. A judgment and order requiring Defendants to provide an accounting and to pay supplemental damages to Oyster, including without limitation, prejudgment and post-judgment interest;

e. A judgment and order finding that this is an exceptional case within the meaning of 35 U.S.C. § 285 and awarding to Plaintiff its reasonable attorneys' fees against Defendants; and

f. Any and all other relief as the Court may deem appropriate and just under the circumstances.

## **DEMAND FOR JURY TRIAL**

Plaintiff, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.

Dated:  July 29, 2019                                        Respectfully submitted,


/s/ *Reza Mirzaie*
Marc A. Fenster (CA SBN 181067)
Reza Mirzaie (CA SBN 246953)
Paul Kroeger (CA SBN 229074)
Neil Rubin (CA SBN 250761)
**RUSS AUGUST & KABAT**
12424 Wilshire Boulevard, 12th Floor
Los Angeles, CA 90025
(310) 826-7474
mfenster@raklaw.com
rmirzaie@raklaw.com
pkroeger@raklaw.com
nrubin@raklaw.com


***Attorneys for Plaintiff Oyster Optics, LLC***