**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| **OYSTER OPTICS, LLC,** | |
| **Plaintiff,** | **Civil Action No. 2:19-cv-00257** |
| **v.** | |
| **INFINERA CORPORATION, CORIANT (USA) INC., CORIANT NORTH AMERICA, LLC, and CORIANT OPERATIONS, INC.,** | |
| **Defendants.** | |

**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S
FRAUD AND CONCEALMENT CLAIMS UNDER RULE 12(b)(6)**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.     INTRODUCTION ......................................................................................... 1

II.    STATEMENT OF THE ISSUES..................................................................... 2

III.   BACKGROUND ............................................................................................ 2

    A.   Oyster Sues Infinera, Coriant and Others in 2016 .................................. 2

    B.   Oyster Enters a Broad Settlement with Coriant in June 2018 ............................... 3

    C.   This Court Grants Summary Judgment That Infinera Is Not Liable on Oyster's Patent Infringement Claims ......................................................... 3

    D.   Oyster Seeks to Revive Its Untimely Fraud Theory ............................... 4

IV.    DISCUSSION ................................................................................................. 4

    A.   Legal Standards for Dismissal of Oyster's Fraud and Concealment Claims.......... 4

    B.   Oyster Fails to State a Claim for Fraud or Concealment ........................ 5

        1.   The FAC Does Not Plausibly Allege Justifiable Reliance ........................ 5

            a)   The FAC Refutes Any Allegation of Actual Reliance................... 6

            b)   The Agreement's Merger Clause Further Shows The Absence of Actual or Justifiable Reliance ......................................... 6

            c)   The Adversarial Relationship between Oyster and Coriant Precludes a Showing of Justifiable Reliance ................................ 7

            d)   Oyster Could Not Justifiably Rely on Representations or Omissions to Ignore the Agreement's Express Terms................... 8

        2.   Oyster Fails to Specifically Plead a Material Misrepresentation under Federal Rule of Civil Procedure 9(b)......................................... 9

        3.   Oyster Fails to Plausibly Allege a Duty of Disclosure ............................ 11

        4.   The FAC's Damages Allegations Are Insufficient................................... 12

    C.   Oyster's Fraud and Concealment Claims Are Also Barred by Res Judicata........ 13

V.     CONCLUSION............................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AKB Hendrick, LP v. Musgrave Enters.*,
  380 S.W.3d 221 (Tex. App. 2012) ............................................................7

*Am. Tobacco Co., Inc. v. Grinnell*,
  951 S.W.2d 420 (Tex. 1997) ....................................................................6

*Armstrong v. Am. Home Shield Corp.*,
  333 F.3d 566 (5th Cir. 2003) ...................................................................7

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ......................................................................2, 4, 5, 6

*Bartlett v. Schmidt*,
  33 S.W.3d 35 (Tex. App. 2000) ................................................................6

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 554 (2007) ...............................................................................2, 5

*Benchmark Elecs., Inc. v. J.M. Huber Corp.*,
  343 F.3d 719 (5th Cir. 2003) ...................................................................5

*Bombardier Aerospace Corp. v. SPEP Aircraft Holdings, LLC*,
  572 S.W.3d 213 (Tex. 2019) ..................................................................12

*Bradley v. Armstrong Rubber Co.*,
  130 F.3d 168 (5th Cir. 1997) .................................................................14

*In re Capco Energy, Inc.*,
  669 F.3d 274 (5th Cir. 2012) ...................................................................7

*Collins v. Morgan Stanley Dean Witter*,
  224 F.3d 496 (5th Cir. 2000) ...................................................................6

*Comer v. Murphy Oil USA, Inc.*,
  718 F.3d 460 (5th Cir. 2013) .................................................................14

*DRC Parts & Accessories, L.L.C. v. VM Motori, S.P.A.*,
  112 S.W.3d 854 (Tex. App. 2003)......................................................................................8

*DSF Lux Int'l, S.a.r.l. v. Specialized Finance Partners, L.L.C.*,
  No. A-07-CA-742-LY, 2009 WL 10669618 (W.D. Tex. Sept. 18, 2009).................................5

*El Paso Dev. Co. v. Ravel*,
  339 S.W.2d 360 (Tex. 1960).............................................................................................13

*Ellis v. Yellow Book Sales & Dist. Co.*,
  No. 2:11-cv-138-JRG, 2012 WL 689273 (E.D. Tex. Mar. 2, 2012)......................................11

*Facebook, Inc. v. Pac. Nw. Software, Inc.*,
  640 F.3d 1034 (9th Cir. 2011) ..........................................................................................10

*Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*,
  565 F.3d 200 (5th Cir. 2009) ..........................................................................................5, 9

*Fleming v. Travenol Labs., Inc.*
  707 F.2d 829 (5th Cir. 1983) ...........................................................................................15

*Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*,
  960 S.W.2d 41 (Tex. 1998)...............................................................................................13

*United States ex rel. Grubbs v. Kanneganti*,
  565 F.3d 180 (5th Cir. 2009) .............................................................................................5

*Hobbs v. Alcoa, Inc.*,
  501 F.3d 395 (5th Cir. 2007) .............................................................................................7

*J.C. Kinley co. v. Haynie Wire Line Serv., Inc.*,
  705 S.W.2d 193 (Tex. App. 1985)......................................................................................9

*JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*,
  546 S.W.3d 648 (Tex. 2018)..............................................................................................9

*Latitude Solutions, Inc. v. DeJoria*,
  922 F.3d 690 (5th Cir. 2019) ...........................................................................................13

*Lone Star Fund V (U.S.) L.P. v. Barclays Bank PLC*,
  594 F.3d 383 (5th Cir. 2010) ...........................................................................................11

*Lone Star WiFi LLC v. Legacy Stonebriar Hotel, Ltd.*,
  No. 6:12-cv-957-MHS, 2013 WL 12142378 (E.D. Tex. Oct. 15, 2013)...............................15

*Longview Energy Co. v. Huff Energy Fund LP*,
  533 S.W.3d 866 (Tex. 2017)..............................................................................................5

*Marchesani v. Pellerin-Milnor Corp.*,
    269 F.3d 481 (5th Cir. 2001) ..........................................................................5

*Matis v. Golden*,
    228 S.W.3d 301 (Tex. App. 2007) .................................................................11

*Mikob Props., Inc. v. Joachim*,
    468 S.W.3d 587 (Tex. App. 2015) ...................................................................8

*Miller v. Meinhard-Commercial Corp.*,
    462 F.2d 358 (5th Cir. 1972) ...................................................................13, 14

*Mun. Employees' Ret. Sys. of Mich. v. Pier 1 Imports, Inc.*,
    935 F.3d 424 (5th Cir. 2019) ..........................................................................5

*Nat'l Prop. Holdings, L.P. v. Westergren*,
    453 S.W.3d 419 (Tex. 2015)............................................................................8

*Ortiz v. Collins*,
    203 S.W.3d 414 (Tex. App. 2006) ................................................................7, 8

*Reid v. El Paso Constr. Co.*,
    498 S.W.2d 923 (Tex. 1973)..........................................................................13

*Sawyer v. E.I. Du Pont De Nemours & Co.*,
    430 S.W.3d 396 (Tex. 2014)..........................................................................10

*Schlumberger Tech. Corp. v. Swanson*,
    959 S.W.2d 171 (Tex. 1997).........................................................................5, 7

*Squyres v. Heico Cos.*,
    782 F.3d 224 (5th Cir. 2015) .........................................................................15

*Walker v. Beaumont Independent Sch. Dist.*,
    938 F.3d 724 (5th Cir. 2019) ...........................................................................2

*Williams v. WMX Techs., Inc.*,
    112 F.3d 175 (5th Cir. 1997) .....................................................................5, 10

*Zorrilla v. Aypco Construction II, LLC*,
    469 S.W.3d 143 (Tex. 2015).......................................................................9, 12

## Statutes

Tex. Civ. Prac. & Rem. Code 41.004(a).............................................................13

**Other Authorities**

Fed. R. Civ. P. 9(b) ............................................................................................................ *passim*

Fed. R. Civ. P. 12(b)(6)..........................................................................................................1, 11

**UNLESS OTHERWISE SPECIFIED, ALL EMPHASES
IN THIS BRIEF HAVE BEEN ADDED**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants Infinera Corporation ("Infinera"), Coriant (USA) Inc., Coriant North America, LLC, and Coriant Operations, Inc. (collectively, "Coriant") respectfully move this Court to dismiss Counts II and III of the First Amended Complaint ("FAC") filed by Plaintiff Oyster Optics, LLC ("Oyster").

## I.     <u>INTRODUCTION</u>

Oyster is a sophisticated patent licensing entity represented by experienced counsel. It negotiated a settlement agreement with Coriant for two and a half months, which—as this Court already held—unambiguously gave a license and release to, *inter alia*, any entity with control of Coriant in the future, including Infinera. After losing on summary judgment in the prior litigation, Oyster now again seeks to renege on its agreement by alleging fraud and concealment in its FAC. Those allegations should be dismissed, both for failure to state a claim and based on res judicata.

Oyster's FAC fails to state a claim for fraud or concealment for several reasons. First, both claims require justifiable reliance, but Oyster's own allegations and settled law show that Oyster did not rely on Coriant during the settlement negotiations and could not have done so justifiably given the parties' adversarial posture. Oyster's failure to read and understand the agreement is Oyster's own negligence, not Coriant's fraud. Second, Oyster fails to identify any misrepresentation with the specificity required by the Federal Rules. Third, Oyster does not plausibly allege that Coriant owed it a duty of disclosure in this arms-length transaction between sophisticated, represented parties. Fourth, Oyster does not identify recoverable damages. Oyster's only identified damages—patent royalties—are far too speculative and remote to be recoverable.

Finally, Oyster's fraud and concealment claims are barred by res judicata. Both claims raise allegations that this Court previously deemed untimely. That effort is improper both as a collateral attack against this Court's prior judgment and because it seeks to circumvent this Court's prior

scheduling order. Oyster cannot reopen its prior case against Infinera by seeking the same damages as a remedy for alleged fraud. Its fraud and concealment claims should therefore be dismissed.

## II.   <u>STATEMENT OF THE ISSUES</u>

1.   Whether Oyster's amended complaint sufficiently states claims against Defendants for fraud and concealment under Fed. R. Civ. P. 9(b), *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554 (2007).

2.   Whether Oyster's fraud and concealment claims seeking patent royalties as damages are barred by res judicata.

## III.   <u>BACKGROUND</u>

### A.   **Oyster Sues Infinera, Coriant and Others in 2016**

In late 2016, Oyster sued Infinera, Coriant, Fujitsu, Ciena, Huawei, Alcatel-Lucent, and Cisco in cases this Court consolidated for pretrial purposes other than venue. [*See* Dryer Decl. Exs. 1-2 (consolidation orders).] [1] Apparently trying to remedy omissions from its infringement contentions in that case, Oyster filed a second case against Infinera on May 15, 2018. [2] [Dryer Decl. Ex. 8 (*Oyster II* compl.).] To prevent piecemeal adjudication, Infinera and Oyster jointly moved to sever Oyster's first case against Infinera from the consolidated cases and combine it with the second Oyster-Infinera case. [Dryer Decl. Ex. 9 (jt. mot. to sever & consolidate).] This Court granted that motion. [Dryer Decl. Ex. 10 (order granting jt. mot. to sever & consolidate).]

---

[1] For the Court's convenience, Defendants have attached cited pleadings and orders from the prior litigations. Although most are relevant only as background, the Court can properly take judicial notice of them in deciding Defendants' motion to dismiss because they are matters of public record. *E.g.*, *Walker v. Beaumont Independent Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019).

[2] Oyster moved to compel discovery on certain products from both Infinera and Cisco, which both opposed because Oyster's infringement contentions did not accuse those products. [Dryer Decl. Exs. 3-6 (excerpts of briefing on Oyster motions to compel).] Oyster withdrew its motion to compel Infinera at the March 8, 2018 hearing on the motions, and this Court denied the motion to compel Cisco. [Dryer Decl. Ex. 7 (order on motions to compel and motion for sanctions) at 1-4.]

### B.  Oyster Enters a Broad Settlement with Coriant in June 2018

Oyster and Coriant held a mediation with Judge Folsom on April 11, 2018, resulting in a settlement in principle, subject to the execution of a written agreement. [Dryer Decl. Ex. 11 (Oyster-Coriant notice of settlement).] Oyster and Coriant negotiated that agreement over the next two and a half months, executing it on June 28, 2018. [Dryer Decl. Ex. 12 (Oyster-Coriant settlement agreement) at 11.] The agreement contains a merger clause stating that "[t]he terms and provisions contained in this Agreement constitute the entire agreement between the Parties and shall supersede all previous communications, representations, agreements, or understandings, either oral or written, between the Parties hereto with respect to the subject matter hereof" and that "[n]o covenants, agreements, representations or warranties of any kind whatsoever have been made by any Party, except as specifically set forth in this Agreement." [*Id.* §11.] The Oyster-Coriant settlement agreement also contains broad license and release provisions applicable both to Coriant and to Coriant's "Affiliates," [*id.* §§3.1, 4.1], and expressly defines "Affiliates" to include "any Person, now or in the future, which . . . has Control of a Party hereto." [*Id.* §1.1.]

### C.  This Court Grants Summary Judgment That Infinera Is Not Liable on Oyster's Patent Infringement Claims

After acquiring Coriant, Infinera asserted affirmative defenses of license and release. [Dryer Decl. Ex. 13 (Infinera am. answer) at 8.] Infinera moved for summary judgment on those defenses on November 29, 2018. [Dryer Decl. Ex. 14 (Infinera MSJ).] This Court heard argument on June 12, 2019. Although Oyster never alleged fraud in its briefing, its hearing presentation asserted that one of the "final issue[s] on release or license" was whether "Coriant committed fraud in the inducement." [Dryer Decl. Ex. 15 (Oyster MSJ hearing slides) at 34.]

On June 20, 2019, Oyster sought leave to amend its Complaint to allege "fraud in the inducement." [Dryer Decl. Ex. 16 (Oyster proposed am. compl.) at 12.] Before Infinera's

opposition was due, this Court granted Infinera's motion for summary judgment on its license and release defenses. [Dryer Decl. Ex. 17 (mem. op. and order granting Infinera's MSJ); *id.* Ex. 18 (Order re opp'n deadline).] The Court found "that the contract is clear and unambiguous" and held that its release and license provisions applied to Infinera. [Dryer Decl. Ex. 17 at 7, 11-19.] The Court also declined to consider Oyster's untimely arguments, including fraud. [*Id.* at 17 n.5.] The parties filed a joint status report on June 27, 2019, indicating that no claims or counterclaims remained live in the case and that Oyster "hereby voluntarily withdraws its motion for leave to amend its complaint." [Dryer Decl. Ex. 19 (joint status report) at 1.] This Court entered final judgment the next day. [Dryer Decl. Ex. 20 (final judgment).]

> ### D.  Oyster Seeks to Revive Its Untimely Fraud Theory

About two months later, Oyster filed a complaint against Coriant, Infinera, and "Does 1-100" in California state court, asserting "promissory fraud" and "concealment." [Dryer Decl. Ex. 21 (Oyster Cal. compl.) at 1.] In parallel, Oyster filed another patent suit against Infinera and Coriant in this Court. [Dkt. 1.] After Infinera noted that this Court has exclusive jurisdiction over disputes under the agreement and threatened a motion under California's Anti-SLAPP Law, Oyster voluntarily dismissed the California case and filed the FAC in this action, adding counts for "fraud" and "concealment." [Dryer Decl. Ex. 22 (Oyster Cal. dismissal); Dkt. 33 at 19-30.]

## IV.  <u>DISCUSSION</u>

> ### A.  Legal Standards for Dismissal of Oyster's Fraud and Concealment Claims

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." *Id.* Neither a "formulaic recitation of the elements of a cause of action" nor "naked assertions devoid of further factual enhancement" is sufficient to avoid dismissal. *Id.*

Because Oyster's claims allege fraud, its "amended complaint must also satisfy Federal Rule of Civil Procedure 9(b), which requires the plaintiff state with particularity the circumstances constituting fraud or mistake." *Mun. Employees' Ret. Sys. of Mich. v. Pier 1 Imports, Inc.*, 935 F.3d 424, 429 (5th Cir. 2019) (quotation marks omitted).[3] The Fifth Circuit "interprets Rule 9(b) strictly, requiring the plaintiff to 'specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 207 (5th Cir. 2009) (quoting *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997)). This particularity requirement under Rule 9(b) is "supplemental" to *Twombly* and *Iqbal*'s plausibility standard. *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009).

## B. Oyster Fails to State a Claim for Fraud or Concealment

### 1. The FAC Does Not Plausibly Allege Justifiable Reliance

Under Texas law, fraud requires that the plaintiff both actually and justifiably relied on the

---

[3] Concealment "is simply a subcategory of fraud." *See Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 181 (Tex. 1997). Texas law applies to Oyster's fraud and concealment claims. Federal courts "determine which state's law applies by following the choice of law rules of the forum state." *Marchesani v. Pellerin-Milnor Corp.*, 269 F.3d 481, 485 (5th Cir. 2001). "Texas courts apply the law of the jurisdiction that has the most significant relationship to the particular substantive issue to be resolved." *Longview Energy Co. v. Huff Energy Fund LP*, 533 S.W.3d 866, 872 (Tex. 2017). Oyster's fraud and concealment claims relate to an agreement settling litigation in Texas based upon a mediation held in Texas and involving one party based in Texas, so that rule points to Texas law. The agreement's choice of law clause does not apply because Oyster's fraud and concealment claims sound in tort. Indeed, numerous courts have held almost identical choice of law clauses inapplicable to tort claims like fraud. *E.g.*, *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 722, 726 (5th Cir. 2003); *DSF Lux Int'l, S.a.r.l. v. Specialized Finance Partners, L.L.C.*, No. A-07-CA-742-LY, 2009 WL 10669618, at *2 (W.D. Tex. Sept. 18, 2009). Thus, while the agreement's ***interpretation*** remains governed by New York law, [Dryer Decl. Ex. 12 §9], Texas law applies to Oyster's fraud and concealment claims.

alleged misrepresentation or omission. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 501-02 (5th Cir. 2000); *Am. Tobacco Co.*, *Inc. v. Grinnell*, 951 S.W.2d 420, 436 (Tex. 1997). Yet, the FAC contains only conclusory reliance allegations, stating that "Oyster justifiably relied upon the bad-faith representations made by the Coriant defendants and were harmed by the Defendants' silence regarding these material facts." [Dkt. 33 ¶¶50, 57.] That is exactly the type of "formulaic recitation of the elements of a cause of action" that is insufficient. *Iqbal*, 556 U.S. at 681. Indeed, the facts pled by Oyster itself demonstrate that there was no actual reliance and that reliance would not have been justifiable. Oyster's fraud and concealment claims should therefore be dismissed.

### a)      The FAC Refutes Any Allegation of Actual Reliance

Oyster's own allegations show that it did not rely on Coriant's statements or silence in negotiating the agreement. Oyster admits that—even after the alleged fraud—it "specifically added several additional safeguards to the settlement agreement's release" and "included an anti-circumvention clause" to the agreement. [Dkt. 33 ¶42.] Indeed, Oyster admits that, where it had concerns over the agreement's effects, it "ask[ed] for—and expressly obtain[ed]—a representation and warranty from the Coriant Defendants and their Affiliates." [*Id.*] Oyster's allegations thus show that it exercised its own independent judgment regarding the scope of the agreement rather than relying on Coriant. [*Id.*] Oyster's fraud and concealment claims therefore fail to meet the threshold requirement of showing actual reliance. *E.g.*, *Bartlett v. Schmidt*, 33 S.W.3d 35, 38 (Tex. App. 2000) (finding no reliance where plaintiff conducted his own independent investigation).

### b)      The Agreement's Merger Clause Further Shows The Absence of Actual or Justifiable Reliance

Oyster's claim of reliance is even less plausible in view of the settlement agreement's broad merger clause. Section 11 of the agreement unequivocally states that:

The terms and provisions contained in this Agreement ***constitute the entire***

> *agreement* between the Parties and ***shall supersede all previous communications, representations, agreements, or understandings***, either oral or written, between the Parties hereto with respect to the subject matter hereof. ***No covenants, agreements, representations or warranties of any kind whatsoever have been made by any Party, except as specifically set forth in this Agreement***.

[Dryer Decl. Ex. 12 §11.] Courts have frequently found that similar merger clauses showed the absence of justifiable reliance. *E.g.*, *Armstrong v. Am. Home Shield Corp.*, 333 F.3d 566, 571 (5th Cir. 2003) (finding fraud allegations barred by a merger clause stating that the agreement "shall constitute the entire contract between the parties and supersedes all existing agreements between them, whether oral or written, with respect to the subject matter hereof"); *see also Hobbs v. Alcoa, Inc.*, 501 F.3d 395, 397 (5th Cir. 2007) ("[A]ny alleged misrepresentation is barred by the settlement agreement's integration clause."); *Schlumberger*, 959 S.W.2d at 180-82.

The merger clause in the Oyster-Coriant settlement agreement is even more unequivocal than the clause at issue in *Armstrong*. [Dryer Decl. Ex. 12 §11.] Moreover, the Oyster-Coriant agreement sets forth detailed representations and warranties where they were relied upon, further showing that Oyster did not justifiably rely on other representations or omissions. [*E.g.*, *id.* §§3.1, 6.1-6.2.] Accordingly, Oyster has not plausibly alleged the requisite reliance. *See, e.g.*, *In re Capco Energy, Inc.*, 669 F.3d 274, 283-84 (5th Cir. 2012) (rejecting fraud claim "[w]here the parties have signed a contract with a clause that expressly disclaims reliance on prior representations").

### c) The Adversarial Relationship between Oyster and Coriant Precludes a Showing of Justifiable Reliance

Even if Oyster had adequately alleged actual reliance, any assertion of ***justifiable*** reliance must fail. It is well-established under Texas law that "as a matter of law, reliance on any alleged misrepresentations is ***unjustified***" if the "representations were made ***in an adversarial context, such as litigation***." *Ortiz v. Collins*, 203 S.W.3d 414, 422 (Tex. App. 2006) (finding reliance on statements made during settlement negotiations unjustified as a matter of law); *see also AKB*

*Hendrick, LP v. Musgrave Enters.*, 380 S.W.3d 221, 232 (Tex. App. 2012) (finding no justifiable reliance in "an arm's length transaction between sophisticated businessmen").

The Coriant-Oyster negotiations to settle over a year of contentious litigation was precisely the type of "adversarial context" under which a party's reliance upon the other is unjustifiable. *E.g.*, *Mikob Props., Inc. v. Joachim*, 468 S.W.3d 587, 598-99 (Tex. App. 2015) (rejecting purported reliance on fraud during negotiations to settle "multiple lawsuits" between "sophisticated businesspeople" "represented by counsel in an adversarial setting"); *Ortiz*, 203 S.W.3d at 422. Oyster therefore cannot have justifiably relied on Coriant to inform it about the scope of the license or release. Nor could Oyster have justifiably relied upon Coriant's silence to assume that Coriant would not be acquired by a defendant in another lawsuit filed by Oyster. As the court in *Mikob Properties* found, "[t]here is absolutely no reason" for one side's lawyers to rely on the other side's lawyers in negotiating a settlement. 468 S.W.3d at 599. Instead, the obligation to protect Oyster and its interests rested entirely on Oyster and its own lawyers. *See id.* In short, Oyster's dissatisfaction with the results of the agreement it negotiated is a matter of Oyster's own negligence, and cannot be a basis for fraud and concealment claims against Coriant.

### d) Oyster Could Not Justifiably Rely on Representations or Omissions to Ignore the Agreement's Express Terms

Oyster's justifiable reliance allegations fail for yet another reason. "[A]s Texas courts have repeatedly held, a party to a written contract cannot justifiably rely on oral misrepresentations regarding the contract's unambiguous terms." *Nat'l Prop. Holdings, L.P. v. Westergren*, 453 S.W.3d 419, 424 (Tex. 2015) (citing *Thigpen v. Locke*, 363 S.W.2d 247, 251 (Tex. 1962)).

The Oyster-Coriant agreement unambiguously extends the license and release to products other than Coriant's. [Dryer Decl. Ex. 17 at 7, 16-19.] Oyster thus cannot have justifiably relied on a representation that the settlement was limited to Coriant's products. *DRC Parts &*

*Accessories, L.L.C. v. VM Motori, S.P.A.*, 112 S.W.3d 854, 858 (Tex. App. 2003). ("[R]eliance upon an oral representation that is directly contradicted by the express, unambiguous terms of a written agreement between the parties is not justified as a matter of law.").

Oyster's concealment claim fares no better. The settlement's definition of "Affiliates" expressly includes "any Person . . . in the future" with control of Coriant. [Dryer Decl. Ex. 12 §1.1.] That language was—at a minimum—a "red flag" indicating that the license and release could apply to additional entities with control of Coriant in the future. [*See id.*] Oyster therefore cannot have justifiably relied on Coriant's silence to assume that no such change of control would take place. *See, e.g.*, *JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 656-58, 660 (Tex. 2018) (holding that, *inter alia*, "a new, non-standard negation-of-warranty provision" constituted a "red flag" negating justifiable reliance on alleged misrepresentations); *J.C. Kinley co. v. Haynie Wire Line Serv., Inc.*, 705 S.W.2d 193, 198 (Tex. App. 1985) (holding fraudulent concealment claim barred because Plaintiff failed to use reasonable diligence).

### 2.   Oyster Fails to Specifically Plead a Material Misrepresentation under Federal Rule of Civil Procedure 9(b)

Reliance is not the only element Oyster's FAC fails to adequately allege. "A common-law fraud claim" under Texas law also "requires a material misrepresentation, which was false." *Zorrilla v. Aypco Construction II, LLC*, 469 S.W.3d 143, 153 (Tex. 2015) (quotation marks omitted). Oyster fails to plead such a misrepresentation with particularly, as required by Federal Rule of Civil Procedure 9(b).

Most of Oyster's allegations are plainly far too general to satisfy the Fifth Circuit's "strict[]" construction of Rule 9(b), which requires that the plaintiff "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Flaherty*, 565 F.3d at 207. These insufficient allegations include:

- Paragraph 29's allegation that Coriant said that "there was no overlap between the Coriant Accused Products and the products of the other defendants," [Dkt. 33 ¶29];

- Paragraph 31's allegations regarding Coriant's understanding of Oyster's bargaining position and Coriant's market share, [*id.* ¶31]

- Oyster's general allegations of misrepresentations during mediation without identifying any specific false statement, [*id.* ¶¶34-36];[4]

- Paragraph 37's general statement that up to the agreement's execution, Coriant "actively stated [its] intent to only settle the 2016 Coriant Litigation," [*id.* ¶37];

- Paragraph 38's allegation that that Coriant "misstated the revenue of products that would be covered" by the settlement, [*id.* ¶38];

- Paragraph 44's reference to unspecified "phone calls" and "talks," [*id.* ¶44.]

In each of these instances, Oyster fails to specifically identify the "who, what, when, where, and how" required by Rule 9(b). *Williams*, 112 F.3d at 179 (quotation marks omitted). In many cases, Oyster does not even allege that the representations were false. [*E.g.* Dkt. 33 ¶¶29, 31.]

Oyster's other allegations fare no better. Paragraph 37 alleges that Coriant said it would consider helping Oyster obtain revenue from other defendants, but there is no allegation of falsity. [*Id.* ¶37.] Nor can Oyster plausibly allege that a statement that Coriant would "discuss" its future "willingness" was material. [*Id.*]; *see also Sawyer v. E.I. Du Pont De Nemours & Co.*, 430 S.W.3d 396, 402 (Tex. 2014) (finding no materiality because "'I will if I want to' is not fraud").

Paragraph 41 references an e-mail stating that redlines to a draft agreement were not "extensive." [Dkt. 33 ¶41.] But there is again no allegation of falsity, and, in any event, the statement is not actionable because it is one of "mere opinion" that Oyster could have individually

---

[4] Oyster's mediation-based allegations also fail because this District's Court Annexed Mediation Plan prohibits mediation proceedings from being "reported, recorded, placed in evidence, [or] made known to the trial court or jury." [Dryer Decl. Ex. 23 (court annexed mediation plan) § VIII.] That precludes Oyster from prevailing on allegations of fraud at the mediation. *See Facebook, Inc. v. Pac. Nw. Software, Inc.*, 640 F.3d 1034, 1041-42 (9th Cir. 2011) (holding that fraud-at-mediation claim "must fail" in light of confidentiality provision governing the mediation).

assessed by simply reading the draft. [*Id.*]; *Matis v. Golden*, 228 S.W.3d 301, 307 (Tex. App. 2007).

Oyster's other allegations focus on a May 30, 2018 e-mail from Coriant's counsel. [Dkt. 33 ¶¶41, 44.] But the e-mail itself rebuts Oyster's assertion that Coriant said it "still only intended to cover the Coriant Defendants, their customers and their suppliers—and no one else." [Dkt. 33 ¶41.] The e-mail says nothing of the sort, instead focusing on circumstances in which Oyster *could* sue Coriant's suppliers or customers. [Dryer Decl. Ex. 24 (May 2018 e-mails between Tim Meece and Reza Mirzaie) at 1.] In fact, the e-mail was sent in response to Oyster's concerns that the draft agreement might "give[] rights *beyond those granted to* the Coriant defendants/*affiliates*." [*Id.* at 2-3.] Thus, it hardly suggests that the agreement would not apply to Coriant's affiliates. [*Id.*][5]

Paragraph 44 references the same e-mail's statement that Coriant was not "increas[ing] the scope of the rights conveyed" in a memorandum of understanding. [Dkt. 33 ¶44 (alteration in the original).] But the e-mail itself only refers to an "*inadvertent* increase." [Dryer Decl. Ex. 24 at 1.] And, in any event, Oyster never alleges that this statement was false, or even that the scope of rights was ever increased beyond the memorandum. [Dkt. 33 ¶44.] In sum, Oyster fails to plausibly allege a material misrepresentation under Rule 9(b). Its fraud claim must therefore be dismissed.

### 3.    Oyster Fails to Plausibly Allege a Duty of Disclosure

---

[5] The Court may consider the e-mail, along with the agreement itself, without converting this motion to one for summary judgment. Under Fifth Circuit law, a court addressing a Rule 12(b)(6) motion may rely on "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.) L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010); *see also Ellis v. Yellow Book Sales & Dist. Co.*, No. 2:11-cv-138-JRG, 2012 WL 689273, at *2 (E.D. Tex. Mar. 2, 2012). Doing so "does not operate to convert a Rule 12(b)(6) motion into a motion for summary judgment." *Ellis*, 2012 WL 689273, at *2 (citing *Williams v. Travelers Ins. Co.*, 99 F.3d 1135, 1136 (5th Cir. 1996)). The Oyster-Coriant agreement and the May 30, 2018 e-mail Oyster relies upon to allege fraud meet this requirement. The agreement is referenced throughout Oyster's allegations and is cited directly in paragraph 7 of the FAC. [Dkt. 33 ¶¶7, 42, 45-50, 52, 55-57, 59.] The e-mail Oyster relies on is also a "document[] that [is] referred to in the complaint," *Ellis*, 2012 WL 689273, at *2, and is central to Oyster's fraud allegations. [Dkt. 33 ¶¶41, 44.]

Oyster's concealment claim is equally inadequate. The only omission identified in the FAC is that Coriant never informed Oyster about its negotiations with Infinera regarding Infinera's potential acquisition. [*See* Dkt. 33 at ¶¶32, 36, 38-40, 48, 55.] But Oyster never plausibly alleges that Coriant had a duty to disclose those talks—an essential element of a concealment claim. [*Id.*]; *Bombardier Aerospace Corp. v. SPEP Aircraft Holdings, LLC*, 572 S.W.3d 213, 219 (Tex. 2019).

"In general, there is no duty to disclose without evidence of a confidential or fiduciary relationship." *Bombardier*, 572 S.W.3d at 220. "A confidential relationship is one in which the parties have dealt with each other in such a manner for a long period of time that one party is justified in expecting the other to act in its best interest." *Id.* (quotation marks omitted). Texas law recognizes a duty to disclose in an arms-length transaction like the Coriant-Oyster settlement only in very narrow circumstances. *Id.* at 220. None are plausible based on the FAC. There is no allegation that Coriant "discovered new information that made [an] earlier misrepresentation untrue or misleading." *Id.* And Oyster itself says that "Coriant never disclosed ***any*** information" about the Coriant-Infinera discussions, [Dkt. 33 at ¶32], so the other exceptions—which require partial disclosures—are inapplicable. *Bombardier*, 572 S.W.3d at 220.[6]

### 4. The FAC's Damages Allegations Are Insufficient

Oyster also fails to sufficiently plead injury—an essential element of its claims. *Zorrilla*, 469 S.W.3d at 153. The only damages alleged by Oyster are patent royalties that Oyster speculates it would have obtained from Infinera. [Dkt. 33 at ¶¶51-52, 58-59.] But such "remote damages, or those which are too uncertain for ascertainment, or are purely conjectural, speculative or

---

[6] Oyster appears to instead rely entirely upon an alleged duty to disclose based on discovery obligations during the patent litigation. [Dkt. 33 ¶¶32, 39.] But that argument makes little sense because (1) the Infinera-Coriant talks were not then relevant to Oyster's patent suits and (2) Oyster would have had no access to such information under the protective order in any event.

contingent, cannot be recovered." *El Paso Dev. Co. v. Ravel*, 339 S.W.2d 360, 364 (Tex. 1960). Oyster's conjecture that it would have settled its claims against Infinera or obtained a favorable infringement judgment are precisely the type of speculative claim barred by this rule.

Indeed, courts have consistently rejected damages based on other agreements that a fraud plaintiff claims it might have entered if not for the alleged fraud. *E.g.*, *Reid v. El Paso Constr. Co.*, 498 S.W.2d 923, 924-26 (Tex. 1973) (holding that "lost profits arising out of [an] unexecuted collateral contract to build [] apartment units" were "remote, contingent and too uncertain" to sustain a fraud claim). Fraud damages cannot be "based on an entirely hypothetical, speculative bargain that was never struck . . . ." *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 50 (Tex. 1998). Oyster's assumption—unsupported by any facts pled in the FAC—that it could have established infringement, overcame Infinera's defenses, obtained a jury verdict for damages, and defended any verdict through post-trial motions and any appeals is even more remote and conjectural. Neither the fact of such damages nor their amount could ever be proved with the requisite certainty. Oyster's fraud claim therefore cannot proceed.[7]

## C.    Oyster's Fraud and Concealment Claims Are Also Barred by Res Judicata

Finally, Oyster's fraud and concealment claims should also be dismissed based on res judicata. Oyster had ample opportunity to allege fraud and concealment in the prior case. It failed to timely do so, and then voluntarily withdrew its request to belatedly allege fraud. [Dryer Decl. Ex. 19 at 1.] Oyster cannot attack this Court's final judgment by alleging fraud in a later action. *See Miller v. Meinhard-Commercial Corp.*, 462 F.2d 358, 360-61 (5th Cir. 1972).

The Fifth Circuit in *Miller* rejected a fraud claim, finding that it constituted an improper

---

[7] With no actual damages, Oyster's request for punitive damages must also be dismissed. Tex. Civ. Prac. & Rem. Code 41.004(a) (barring exemplary damages in the absence of more than nominal damages); *see also, e.g.*, *Latitude Solutions, Inc. v. DeJoria*, 922 F.3d 690, 700 (5th Cir. 2019).

collateral attack because it would "in some fashion overrule a previous judgment." *Id.* at 360. It explained that "*Res judicata* applies where the subject matter is the same, 'not only to every matter which was offered and received to sustain or defeat the claim or demand, but ***also as to any other admissible matter which might have been offered for that purpose***.'" *Id.* (quoting *Cromwell v. County of Sac*, 94 U.S. 351, 352 (1876)) (first emphasis in original). Because "[t]he alleged fraud . . . is precisely a matter which might have been offered," the Fifth Circuit held that permitting it to go forward "would be in effect to reopen the bankruptcy proceedings and retry the merits in a collateral proceeding." *Id.* at 361. Res judicata therefore barred the fraud claim. *Id.*

Oyster's fraud and concealment claims are barred by res judicata for the same reasons. The parties are identical to the previous case because Coriant and Infinera are in privity. *E.g.*, *Bradley v. Armstrong Rubber Co.*, 130 F.3d 168, 179 (5th Cir. 1997). There is also no question that Oyster's claims seek to attack this Court's previous judgments and retry the merits of its prior suit against Infinera. After all, the only damages Oyster claims are patent royalties, [Dkt. 33 ¶¶51-52, 58-59]— precisely the relief denied by this Court's summary judgment. Res judicata forecloses such an attempt to reopen Infinera's liability for those damages. *See Miller*, 462 F.3d at 360-61.[8]

Finally, Oyster could have raised its fraud and concealment claims in the previous case and failed to timely do so. Infinera raised its license and release defenses approximately four months before the February 15, 2019 deadline for Oyster to amend its pleadings. [Dryer Decl. Ex. 25 (docket control order) at 4; *id.* Ex. 13.] Oyster's summary judgment opposition accused Coriant of hiding its possible acquisition by Infinera during settlement negotiations, yet Oyster declined to

---

[8] Oyster's pending appeal of this Court's judgment in the prior litigation does not negate the res judicata effect of the final judgment. *E.g.*, *Comer v. Murphy Oil USA, Inc.*, 718 F.3d 460, 467 (5th Cir. 2013) ("A case pending appeal is res judicata and entitled to full faith and credit unless and until reversed on appeal." (quotation marks omitted)).

allege fraud. [*E.g.* Dryer Decl. Ex. 26 at 1 ("Such corporate acquisitions are not negotiated in 25 days, or without the knowledge of senior corporate officers.").] Instead, Oyster waited until after the hearing on Infinera's summary judgment motion, and only thereafter sought to amend its Complaint to allege fraud. [*See* Dryer Decl. Ex. 16 at 12.] But by then it was too late, as the deadline for amendments to the pleadings had long since passed. [Dryer Decl. Ex. 25 at 4.] And having waited nearly eight months to assert its fraud theory, Oyster could not show the requisite diligence to modify the Court's scheduling order. *See Squyres v. Heico Cos.*, 782 F.3d 224, 237-39 (5th Cir. 2015). Seeing the writing on the wall, Oyster voluntarily withdrew its request to assert fraud and allowed this Court to enter final judgment. [Dryer Decl. Ex. 19 at 1 ("Oyster hereby voluntarily withdraws its motion for leave to amend its complaint."); *id.* Ex. 20 (final judgment).]

Res judicata precludes Oyster's attempt to make an end run around its obligation to timely amend its complaint. Where a party could have amended its complaint to assert additional related claims and fails to do so, res judicata bars a later suit seeking to raise those same claims. *E.g.*, *Fleming v. Travenol Labs., Inc.*, 707 F.2d 829, 833-34 (5th Cir. 1983) (holding that res judicata barred later Title VII suit where the plaintiff "could simply have amended her pending discrimination complaint and argued the Title VII allegations in that suit"); *see also Lone Star WiFi LLC v. Legacy Stonebriar Hotel, Ltd.*, No. 6:12-cv-957-MHS, 2013 WL 12142378 at *1-2 (E.D. Tex. Oct. 15, 2013) ("A Plaintiff may not file successive lawsuits to circumvent the Court's deadline to amend the complaint."). Accordingly, Res judicata provides an additional and independent basis for dismissing Oyster's fraud and concealment claims.

## V.    CONCLUSION

For all of these reasons, Defendants respectfully request that the Court dismiss Oyster's fraud and concealment claims with prejudice.

Dated: December 3, 2019                    Respectfully submitted,


By: *Melissa R. Smith*
     Melissa R. Smith
     Texas Bar No. 24001351
     Gillam & Smith LLP
     303 South Washington Avenue
     Marshall, Texas 75670
     Telephone: 903-934-8450
     Fax: 903-934-9257
     melissa@gillamsmithlaw.com

     Ruffin Cordell
       Bar No. 04820550
       cordell@fr.com
     Joseph V. Colaianni
       D.C. Bar. No. 454744
       colaianni@fr.com
     Indranil Mukerji
       MA Bar No. 644059
       mukerji@fr.com
     Christopher Dryer
       D.C. Bar. No. 1022460
       dryer@fr.com
     FISH & RICHARDSON P.C.
     1000 Maine Ave., S.W., Suite 1000
     Washington, D.C. 20024
     Telephone: (202) 783-5070
     Facsimile: (202) 783-2331

     *Attorneys for Defendants*
     *Infinera Corporation, Coriant (USA) Inc.,*
     *Coriant North America, LLC, and*
     *Coriant Operation, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing document has been served on December 3, 2019, to all counsel of record who are deemed to have consented to electronic service via electronic mail.

/s/ *Melissa R. Smith*