# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF TEXAS

# MARSHALL DIVISION

| | | |
|---|---|---|
| OYSTER OPTICS, LLC, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Case No. 2:19-CV-00257-JRG |
| | § | |
| INFINERA CORPORATION, CORIANT | § | |
| (USA) INC., et al., | § | |
| | § | |
| *Defendants.* | | |

## **PLAINTIFF OYSTER OPTICS, LLC'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FRAUD AND CONCEALMENT CLAIMS UNDER RULE 12(B)(6)**

# Table of Contents

I.      INTRODUCTION ................................................................................................ 1

II.     STATEMENT OF FACTS ................................................................................... 2

    A.   Coriant and Oyster Negotiate Settlement Contingent on Coriant's Market Share . 2

    B.   Coriant Plans Acquisition by Infinera During Parties' Settlement Negotiations ... 4

III.    LEGAL STANDARD........................................................................................... 4

IV.    ARGUMENT........................................................................................................ 5

    A.   Oyster States Claims for Fraud and Concealment ................................................. 5

       1.   Oyster's First Amended Complaint Plausibly Alleges Justifiable Reliance....... 5

       2.   Oyster's Fraud Allegations Satisfy Rule 9(b).................................................... 9

       3.   Coriant Failed to Fulfill Its Duty of Disclosure ................................................ 11

       4.   Oyster Sufficiently Alleged Its Entitlement to Relief....................................... 12

    B.   Res Judicata Does Not Bar Oyster's Fraud and Concealment Claims ................. 14

V.     CONCLUSION.................................................................................................... 15

## Table of Authorities

**Cases**

*AKB Hendrick, L.P. v. Musgrave Enterprises, Inc.*,
   380 S.W.3d 221 (Tex. App. 2012) ........................................................................ 7

*Am. Home Assur. Co. v. Chevron, USA, Inc.*,
   400 F.3d 265 (5th Cir. 2005) ............................................................................. 15

*Barnett v. Forest River, Inc.*,
   No. 9:17-CV-99, 2017 WL 7733052 (E.D. Tex. Nov. 29, 2017) .................................... 9, 11

*Bartlett v. Schmidt*,
   33 S.W.3d 35 (Tex. App. 2000) ............................................................................ 6

*Berry v. CIGNA/RSI-CIGNA*,
   975 F.2d 1188 (5th Cir. 1992) ........................................................................... 11

*Cantu v. Butron*,
   921 S.W.2d 344 (Tex. App. 1996) ........................................................................ 12

*Dallas Farm Mach. Co. v. Reaves*,
   158 Tex. 1, 307 S.W.2d 233 (1957) ....................................................................... 6

*DRC Parts & Accessories, L.L.C. v. VM Motori, S.P.A.*,
   112 S.W.3d 854 (Tex. App. 2003) .......................................................................... 8

*Forest Oil Corp. v. McAllen*,
   268 S.W.3d 51 (Tex. 2008) ................................................................................. 6

*Hardy v. Zimmer*,
   No. 2:16-CV-242-JRG, 2017 WL 1551601 (E.D. Tex. Apr. 28, 2017) .................................. 11

*Harrison v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*,
   No. 1:13-CV-74, 2014 WL 12513890 (E.D. Tex. Mar. 21, 2014) ...................................... 15

*Harrison v. Bert Bell/Pete Rozelle NFL Ret. Plan*,
   583 F. App'x 413 (5th Cir. 2014) ........................................................................ 15

*Humphrey v. Camelot Ret. Cmty.*,
   893 S.W.2d 55 (Tex. App. 1994) .......................................................................... 12

*In re Pilgrim's Pride Corp. Sec. Litig.*,
   No. 2:08-CV-419-TJW, 2010 WL 3257369 (E.D. Tex. Aug. 17, 2010) ................................. 11

*In re So. Scrap Material Co.*,
   541 F.3d 584 (5th Cir.2008) ............................................................................... 5

*Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*,
   341 S.W.3d 323 (Tex. 2011) ............................................................................... 6

*J.C. Kinley Co. v. Haynie Wire Line Serv., Inc.*,
   705 S.W.2d 193 (Tex. App. 1985) ...................................................................... 9

*JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*,
   546 S.W.3d 648 (Tex. 2018) ............................................................................... 9

*Lesikar v. Rappeport*,
   33 S.W.3d 282 (Tex. App. 2000) ...................................................................... 11

*Marshall Contractors, Inc. v. Integrated Gas Sys., Inc.*,
   105 F.3d 653 (5th Cir. 1996) ............................................................................ 14

*Mikob Properties, Inc. v. Joachim*,
   468 S.W.3d 587 (Tex. App. 2015) ...................................................................... 8

*Morgan v. Hubert*,
   335 F. App'x 466 (5th Cir. 2009) ...................................................................... 5

*Nat'l Prop. Holdings, L.P. v. Westergren*,
   453 S.W.3d 419 (Tex. 2015) ............................................................................... 8

*Ortiz v. Collins*,
   203 S.W.3d 414 (Tex. App. 2006) ...................................................................... 7

*Schmueser v. Burkburnett Bank*,
   937 F.2d 1025 (5th Cir. 1991) .......................................................................... 14

*Solutioneers Consulting, Ltd. v. Gulf Greyhound Partners, Ltd.*,
   237 S.W.3d 379 (Tex. App. 2007) ............................................................. 11, 12

*Tech Pharmacy Servs., LLC v. Alixa Rx LLC*,
   No. 4:15-CV-766, 2016 WL 4272411 (E.D. Tex. Aug. 15, 2016) ..................... 9

*United States ex rel. Woodard v. DaVita, Inc.*,
   No. 1:05-CV-227, 2010 WL 11531271 (E.D. Tex. Dec. 21, 2010) ................... 10

*Williams v. WMX Techs., Inc.*,
   112 F.3d 175 (5th Cir. 1997) ............................................................................ 10

*Wooten v. Roach*,
   No. 4:18-CV-380, 2019 WL 7067136 (E.D. Tex. Dec. 23, 2019) ..................... 5

## Other Authorities

Claim and Defense Preclusion,
   18 Fed. Prac. & Proc. Juris. § 4406 (3d ed.) .............................................. 14, 15

**Rules**

Fed. R. Civ. P. 54(c) ................................................................................................................ 13

Fed. R. Civ. P. 9(b) ................................................................................................................. 9

Tex. Rules Prof. Conduct 4.01 ................................................................................................. 8

## I.   INTRODUCTION

Oyster respectfully asks the Court to deny Defendants' motion to dismiss its fraud and concealment claims. Each of Defendants' arguments is based on inapposite authority or mischaracterizations of the underlying facts of Oyster's complaint. Oyster's first amended complaint adequately alleges entitlement to the relief sought to remedy Defendants' fraud and concealment.

Oyster filed separate patent infringement suits against Coriant America Inc. ("Coriant") and Infinera Corporation ("Infinera") in November 2016. Oyster engaged in extensive negotiations to settle the Coriant litigation, reaching a settlement price that was discounted based upon Coriant's small market share and its willingness to settle first among the several defendants then facing similar patent infringement suits by Oyster. The parties' discussions ranged over several months before culminating in a written settlement agreement. Throughout those discussions, Coriant represented that the settlement would affect only the Coriant litigation and accused products. Unbeknownst to Oyster, during the settlement discussions, Coriant was in talks with its co-defendant Infinera to negotiate a deal by which Infinera would acquire Coriant. Coriant concealed its discussions with Infinera throughout the negotiations with Oyster. Shortly after Coriant executed the settlement agreement with Oyster, Infinera and Coriant finalized their deal—and Infinera began planning how to use its acquisition as a shield in its own litigation with Oyster. Infinera ultimately asserted license and release defenses based on the Coriant-Oyster settlement, winning summary judgment and defeating Oyster's multimillion-dollar infringement claims against Infinera.

Oyster now asserts claims for reformation or rescission based on Defendants' fraud and concealment. Defendants argue that Oyster has failed to adequately plead the elements of its fraud claims, and that the claims are barred by res judicata. Neither argument holds true.

First, Defendants argue that Oyster has failed to plead justifiable reliance. They claim that Oyster's first amended complaint itself disclaims reliance because Oyster sought and received representations and warranties from Coriant about the nature and scope of the products to be covered by the settlement. But those allegations only show that Oyster was diligent but unsuccessful in trying to protect itself against fraud by Coriant. Defendants further claim that the merger clause in

1

the settlement disclaims any reliance. But Texas courts have declined to hold that merger clauses operate as a *per se* bar to allegations of reliance. Defendants also argue that Oyster could not justifiably rely on representations by Coriant given the parties' adversarial relationship, but Defendants cite no apposite authorities. The Court should not adopt a rule that the existence of an adversarial relationship means the parties are free to make any misrepresentations they like. Defendants further argue that the express terms of the contract preclude any allegations of reliance, but when the contract was formed based on fraudulent misrepresentations and omissions, the language of the contract is no shield to fraud claims. Finally, Oyster has adequately pleaded the particulars of Defendants' fraud and Oyster's entitlement to relief, including by identifying examples of who misled Oyster on behalf of Defendants, what they said, and when they said it.

Defendants also claim that Oyster's fraud claims are barred by res judicata. But Oyster's fraud claims represent a separate cause of action from Oyster's previous patent infringement claims against Infinera, and therefore the claims are not barred. In particular, Defendants now have pleaded the settlement agreement as a defense to Oyster's infringement claims under the '500 patent, which was not at issue in the prior litigation and was not mentioned in the settlement's "List of Licensed Patents." Ex. 12 at 13; Dkt. 17 at 8. The theories of recovery, operative facts, and remedies sought all differ, so the two actions necessarily involve two separate causes of action. Furthermore, a claim is not barred if it arose after the allegedly preclusive prior judgment. Here, the harm from Defendants' fraud was not complete until the Court entered judgment against Oyster in the previous litigation against Infinera; therefore, Oyster could not have been required to bring its claims in the prior action.

For these and the following reasons, Oyster respectfully asks the Court to deny Defendants' motion to dismiss Oyster's fraud and concealment claims.

## II.  STATEMENT OF FACTS

### A.  Coriant and Oyster Negotiate Settlement Contingent on Coriant's Market Share

Throughout the progress of the prior litigation, in discovery responses and settlement

discussions, Defendants represented that there was no overlap between the Coriant Accused Products and the accused products of other defendants, including Infinera. FAC ¶ 29. During the settlement discussions, Coriant confirmed that it understood that Oyster's settlement price depended on market share, and represented that its market share was 8-10%. FAC ¶ 31.

On April 11, 2018, Coriant and Oyster took part in settlement discussions to settle the Coriant action, including through retired United States District Judge David Folsom, the court-assigned mediator. FAC ¶ 32-34. During the mediation, Oyster again communicated to Coriant that its settlement demands were based on Coriant's relative market share and on Coriant's willingness to settle its case first among the other named defendants in the consolidated litigation. FAC ¶ 34. Throughout the mediation, Coriant's counsel make specific references to the market share of other defendants, including arguing that its settlement price should be reduced because Coriant was "half the size" of Infinera. *Id.* Oyster repeatedly communicated to Coriant that a settlement would provide final resolution of asserted patent claims as to Coriant's products, but not as to any other products by other named defendants. *Id.* Furthermore, Coriant repeatedly asked for a "first mover" discount for being willing to settle its case before other named defendants; Oyster agreed, as a sign of good faith, to a significant discount on that basis. *Id.* Coriant even stated to Oyster that, if they could quickly settle the case, Coriant would be willing to assist Oyster in obtaining higher licensing value from the other named defendants in the consolidated litigation, including by assisting Oyster in another assertion campaign against the other defendants. FAC ¶ 37.

The parties ultimately reached an agreement to enter into a Memorandum of Understanding or "MOU" based on the parties' terms. FAC ¶ 35. The parties recorded in the MOU that it represented a "settlement of the current case." *Id.* The parties further recorded the "significant one-time discount" vis-à-vis the other defendants in the MOU. *Id.*

Over the following months, the parties exchanged drafts of a "longform" agreement until reaching agreement on a final execution longform agreement. FAC ¶ 37. Throughout those negotiations, Coriant continued to represent that the parties' agreement would cover only the Coriant Defendants, their customers, and their suppliers. For example, on April 27, 2018, Coriant

circulated a redline revision of the draft settlement agreement that would later play a key part in Infinera's defenses, but Coriant misleadingly characterized the redline revisions as not "extensive." FAC ¶ 41. Furthermore, in an email from Coriant's counsel to Oyster's counsel on May 30, 2018, Coriant represented that it intended the settlement agreement to cover Coriant, its customers, and its suppliers—and no one else. *Id.* Coriant's counsel also affirmatively stated, on phone calls with Oyster's counsel, that its edits to the longform agreement would not "increase the scope of the rights conveyed" in the MOU. FAC ¶ 44.

Oyster and Coriant executed their settlement agreement (the "Coriant-Oyster Agreement") on June 28, 2018. FAC ¶ 45.

**B.  Coriant Plans Acquisition by Infinera During Parties' Settlement Negotiations**

During the settlement negotiations, Coriant secretly entered into discussions with Infinera to arrange a purchase of Coriant. FAC ¶ 32. Coriant never disclosed this information nor produced any related documents to Oyster, despite an ongoing obligation to do so under the Local Rules of the Eastern District of Texas. *Id.*

In July 2018, days after the Coriant-Oyster Agreement was executed, Coriant and Infinera formally completed their negotiations for Infinera to acquire Coriant. FAC ¶ 46. Infinera closed its acquisition of Coriant on October 1, 2018. FAC ¶ 47. A few weeks later, on October 26, 2018, Infinera amended its answer to Oyster's complaint to add affirmative defenses of release and license, claiming it was a third-party beneficiary of the release and license granted in the Coriant-Oyster Agreement. *Id.* Infinera moved for summary judgment on November 29, 2018, and the Court granted summary judgment on June 25, 2019, entering judgment on June 28, 2019 in Infinera's favor. *Id.* In granting summary judgment in Infinera's favor, the Court relied upon language added to the Coriant-Oyster Agreement by Coriant's April 27, 2018 redline revisions—the very language that Coriant had characterized as not "extensive." *Id.*

**III. LEGAL STANDARD**

The Federal Rules require that each claim in a complaint include a "short and plain

statement...showing that the pleader is entitled to relief." *Wooten v. Roach*, No. 4:18-CV-380, 2019 WL 7067136, at *2 (E.D. Tex. Dec. 23, 2019). In assessing a motion to dismiss, courts apply the *Twombly/Iqbal* standard, which requires that the allegations of the complaint state "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007). This standard "'calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements." *Morgan v. Hubert*, 335 F. App'x 466, 470 (5th Cir. 2009) (quoting *In re So. Scrap Material Co.*, 541 F.3d 584, 587 (5th Cir.2008)).

## IV.  ARGUMENT

### A.  Oyster States Claims for Fraud and Concealment

Oyster's First Amended Complaint states allegations adequate to plead claims for fraud and concealment. While Defendants argue that the allegations of the FAC itself negate any allegations of reliance, the allegations Defendants point to show that Oyster was diligent but ultimately unsuccessful in attempting to guard its own interests. Furthermore, the merger clause contained in the Coriant-Oyster Agreement does not operate as a *per se* bar to Oyster's allegations of reliance. Defendants next argue that the adversarial nature of the relationship between Coriant and Oyster excuses Defendants' fraud, but the authorities they cite are inapposite and do not support their proposed rule that an adversarial relationship excuses any manner of lies and half-truths. Defendants also argue that the express terms of the contract bar any allegations of reliance, but when the contract was entered under fraudulent pretenses, those express terms cannot excuse Defendants' conduct. Finally, Oyster has adequately pleaded the particulars of Defendants' fraudulent representations. For these reasons, Oyster's claims should not be dismissed under Rule 12(b)(6).

#### 1.  Oyster's First Amended Complaint Plausibly Alleges Justifiable Reliance
##### a.  The First Amended Complaint Pleads Actual Reliance

Defendants claim that the FAC itself shows that Oyster did not rely on Defendants' fraudulent misrepresentations and omissions. But the paragraphs that Defendants cite merely show that Oyster was diligent in defending its own interests, and that even such diligence could not avoid Defendants' fraud. For example, Defendants point to Oyster's allegation that it "ask[ed] for—and

expressly obtain[ed] a representation and warranty from the Coriant Defendants and their Affili-ates that there was no overlap between their product sales activities and the products of 'any of the other named Defendants in the Consolidated Litigation.'" FAC ¶ 42. Defendants claim that Oyster "exercised its own independent judgment" regarding the scope of the Coriant-Oyster Agreement. But Defendants ignore the fact that the representation and warranty that Oyster sought from Cori-ant was *false.* Defendants would fault Oyster for believing their lie. The fact that Oyster sought such a representation shows only that Oyster was diligent in attempting to protect itself.

Furthermore, the case that Defendants cite on this point is inapposite. In *Bartlett v. Schmidt,* the court found that a plaintiff could not justifiably rely on the defendant's representations when the plaintiff had conducted "an independent investigation . . . which is sufficient to inform him of the truth, and which is not interfered with or rendered nugatory by any act of any other party." *Bartlett v. Schmidt*, 33 S.W.3d 35, 38 (Tex. App. 2000). Here, *no* investigation could have been "sufficient to inform [Oyster] of the truth" because Coriant was actively preventing Oyster from learning of the planned acquisition by Infinera. Therefore, Oyster's allegations about its own dili-gence in attempting to avoid Defendants' fraud does not negate allegations of reliance; rather, it shows Defendants' determined efforts to defraud Oyster.

b.   Merger Clauses Are Not *Per Se* Bars to Claims of Fraud and Concealment

Defendants claim that the Coriant-Oyster Agreement's merger clause invalidates any alle-gations of reliance. But "[f]or more than fifty years, it has been 'the rule that a written contract [even] containing a merger clause can [nevertheless] be avoided for antecedent fraud or fraud in its inducement and that the parol evidence rule does not stand in the way of proof of such fraud.'" *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 331 (Tex. 2011) (quoting *Dallas Farm Mach. Co. v. Reaves*, 158 Tex. 1, 307 S.W.2d 233, 239 (1957)). While contracts negotiated at arm's length between parties represented by counsel sometimes represent an exception to that rule (*id.* at 332), Texas courts have declined to "adopt a *per se* rule that a disclaimer automatically precludes a fraudulent-inducement claim." *Forest Oil Corp. v. McAllen*, 268 S.W.3d 51, 61 (Tex. 2008). Indeed, the Supreme Court of Texas has emphasized that its

6

holdings "should not be construed to mean that a mere disclaimer standing alone will forgive intentional lies regardless of context." *Id.* Furthermore, Texas courts consider a number of factors in deciding whether to apply a merger clause to bar a fraud claim, including whether "during negotiations the parties specifically discussed the issue which has become the topic of the subsequent dispute." *Id.* at 61. Even Defendants do not claim that there was ever any discussion of Coriant's acquisition by Infinera during the parties' settlement negotiations.

Defendants ask the Court to decide that the boilerplate merger clause contained in the Coriant-Oyster Agreement will excuse Defendants' "intentional lies," but the Texas courts have carefully avoided creating such a *per se* rule, and the Court should decline to do so as well.

> c.   Adversarial Relationships Do Not Justify Intentional Misrepresentation

In claiming that an adversarial relationship between Defendants and Oyster precluded any justifiable reliance, Coriant effectively argues that Oyster should have assumed that Coriant would deliberately mislead Oyster. This is not a case where Oyster was steered wrong by its "mere confidence in the honesty and integrity of the other party." *Ortiz v. Collins*, 203 S.W.3d 414, 422 (Tex. App. 2006). On the contrary, Defendants actively prevented Oyster from learning the truth about the negotiations behind the scenes, and Defendants knew well that no degree of diligence or care could have led Oyster to discover that Infinera was planning to acquire Coriant and to take advantage of the Coriant-Oyster Agreement. Under the rule that Defendants propose, no party could ever be liable for blatant misrepresentations during settlement negotiations because each party to a settlement negotiation must assume that the other is lying.

None of the cases on which Defendants rely support such a rule. *Ortiz v. Collins* involved a suit in which the plaintiff attempted to impose liability on his adversaries' *attorney* for misrepresentations during a property sale. *Ortiz v. Collins*, 203 S.W.3d 414 (Tex. App. 2006). Here, there is no attempt to impose a duty toward Oyster on Defendants' attorneys. In *AKB Hendrick, L.P. v. Musgrave Enterprises, Inc.*, the court found that the alleged misrepresentations made in an adversarial relationship were not actually materially false. 380 S.W.3d 221, 232 (Tex. App. 2012) ("We conclude after review of the record that there is no evidence that the alleged statement was a

material false representation."). Here, however, Coriant made indisputably false representations. In *Mikob Properties, Inc. v. Joachim*, the court found that the plaintiff alleging fraud had failed to exercise reasonable diligence and should have discovered the facts of the matter, while here, no amount of diligence on Oyster's part could have uncovered the facts Defendants were actively concealing from Oyster. 468 S.W.3d 587, 599 (Tex. App. 2015).

Notably, Coriant can point to no authority suggesting that a party is free to misrepresent or mislead another party for its own gain during settlement. Such a rule would be inconsistent with the Texas Rules of Professional Conduct, which forbid attorneys to "knowingly (a) make a false statement of material fact or law to a third person; or (b) fail to disclose a material fact to a third person when disclosure is necessary to avoid . . . knowingly assisting a fraudulent act perpetrated by a client." Tex. Rules Prof. Conduct 4.01. An adversarial relationship cannot excuse outright fraud and concealment, and the Court should not dismiss Oyster's claim on these grounds.

d.   Agreement's Express Terms Do Not Justify Defendants' Misconduct

Defendants claim that their fraud and concealment are justified by the express terms of the Coriant-Oyster Agreement, saying that the language of the Agreement should have been a "red flag" that Coriant was planning to be acquired by Infinera. But, again, the express terms of the contract do not excuse the deliberate misrepresentations and concealment by Defendants. As explained above, Oyster sought and received a warranty and representation from Coriant that the "there was no overlap between [Coriant's] product sales activities and the products of 'any of the other named Defendants in the Consolidated Litigation.'" FAC ¶ 42. Coriant knew that its warranty was misleading at best, given its ongoing negotiations to be acquired by Infinera. But Defendants nonetheless claim that the Coriant-Oyster Agreement's terms should cancel out the falsity of that representation, disregarding the fact that that representation is a key part of the basis for Oyster's willingness to enter into the Agreement at all.

Furthermore, the cases that Defendants cite are inapposite. In *DRC Parts & Accessories, L.L.C. v. VM Motori, S.P.A.*, 112 S.W.3d 854, 858 (Tex. App. 2003), and in *Nat'l Prop. Holdings, L.P. v. Westergren*, 453 S.W.3d 419, 424 (Tex. 2015), the plaintiffs sought to enforce oral

representations that directly varied the contract's terms. Here, by contrast, the entire contract was the result of fraud, and that fraud was perpetrated in part through a written warranty and representation by Coriant about the scope and effect of the Coriant-Oyster Agreement. In *JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, the court found that there were multiple "red flags" that precluded justifiable reliance, such as the plaintiff's failure to carefully check property records and affirmative doubts expressed by the plaintiff's agents. 546 S.W.3d 648, 652 (Tex. 2018), *reh'g denied* (June 15, 2018). But here, any "red flags" were carefully and successfully hidden by Defendants, and could not have been discovered by Oyster despite its diligence. In *J.C. Kinley Co. v. Haynie Wire Line Serv., Inc.*, the plaintiff was not even asserting a "fraudulent concealment claim" as Defendants suggest, but was asserting fraudulent concealment as an affirmative defense to the defendant's assertion that the statute of limitations had run. 705 S.W.2d 193, 198 (Tex. App. 1985), *writ refused n.r.e.* (Apr. 23, 1986).

Defendants cite no authority that stands for the proposition that a party may benefit from a contract that was the result of its own fraudulent misrepresentations and concealment and to have that fraud excused by the written terms of the fraudulent contract. Oyster therefore respectfully asks that the Court deny Defendants' motion to dismiss.

### 2. Oyster's Fraud Allegations Satisfy Rule 9(b)

Oyster's allegations of fraudulent misrepresentation satisfy the pleading standard of Fed. R. Civ. P. 9(b) because they "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Barnett v. Forest River, Inc.*, No. 9:17-CV-99, 2017 WL 7733052, at *3 (E.D. Tex. Nov. 29, 2017) (quoting *Tech Pharmacy Servs., LLC v. Alixa Rx LLC*, No. 4:15-CV-766, 2016 WL 4272411, at *2 (E.D. Tex. Aug. 15, 2016)). For example, Oyster identifies statements made by Coriant's counsel to Oyster's counsel via email on April 27, 2018, stating that Coriant's revisions to the settlement agreement were not "extensive" (belying the later import of those same revisions), and on May 30, 2018 stating that Coriant intended that the Coriant-Oyster Agreement

9

would cover only Coriant, its customers, and its suppliers, no one else—though it later became clear that Coriant's intent was to benefit Infinera. FAC ¶ 41. These allegations sufficiently state the "time, place, and contents of the false representations." *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 179 (5th Cir. 1997); *see also United States ex rel. Woodard v. DaVita, Inc.*, No. 1:05-CV-227, 2010 WL 11531271, at *4 (E.D. Tex. Dec. 21, 2010) (Rule 9(b) "requires only simple, concise, and direct allegations of the circumstances constituting fraud") (quotations omitted).

Defendants set forth six bullet points allegedly showing where the complaint fails to satisfy Rule 9(b), but these examples are either mischaracterizations or irrelevant. For example, the statements Defendants point to in Paragraphs 29, 31, and 38 are general statements that are supported by specific examples elsewhere in the complaint. The allegations of paragraph 29 are supported by specific statements concerning representations and warranties in paragraph 42. The allegations of paragraph 31 and the allegations of misstatements in paragraph 38 are further detailed in paragraphs 34 and 36. Paragraphs 34–37 and 44 identify specific meetings, conversations, and emails, on April 11, 2018 and between April 11 and June 28 and point to specific statements and representations made by Coriant's representatives at those times.

To the extent that the Court determines that Oyster's allegations of fraud and concealment do not satisfy the pleading standard under Rule 9(b), Oyster respectfully asks that Oyster be permitted to file an amended complaint setting forth further details in greater specificity. Oyster has already stated the specific dates and nature of communications by Coriant; adding further detail would be simply a matter of Oyster's counsel reviewing correspondence, notes, and calendars to add further details on which individuals made specific statements to Oyster on what dates. For example, Oyster could cite to the specific emails already identified in Oyster's filings before this Court. *See, e.g.*, *Oyster Optics, LLC v. Infinera Corp.*, Civil Action No. 2:18-cv-00206-JRG, Dkt. No. 84 (Mirzaie Decl., Exs. H (April 27, 2018 email from T. Meece to R. Mirzaie); Ex. I (May 30, 2018 email from R. Mirzaie to T. Meece quoting T. Meece email dated May 30, 2018)). Likewise, Oyster could identify the specific representatives of Coriant during the April 11 and subsequent communications: Coriant outside counsel Tim Meece, Coriant Executive Vice President Kenneth

Craft, and Coriant Vice President and Assistant General Counsel Ken Rudofski, and provide further details on the dates of communications, should the Court deem that necessary.

Dismissals for failure to plead fraud with particularly under Rule 9(b), like dismissals under Rule 12(b)(6), should ordinarily be without prejudice. *See Barnett v. Forest River, Inc.*, No. 9:17-CV-99, 2017 WL 7733052, at *4 (E.D. Tex. Nov. 29, 2017) (when dismissing under Rule 9(b), "courts are to 'freely give leave' to amend 'when justice so requires.'"). "Leave to amend should be freely granted," and there is a "strong presumption in favor of granting leave to amend a complaint." *In re Pilgrim's Pride Corp. Sec. Litig.*, No. 2:08-CV-419-TJW, 2010 WL 3257369, at *28 (E.D. Tex. Aug. 17, 2010); *see also Berry v. CIGNA/RSI-CIGNA*, 975 F.2d 1188, 1191 (5th Cir. 1992) ("A dismissal with prejudice is an extreme sanction that deprives the litigant of the opportunity to pursue his claim.") (quotations omitted). Oyster therefore respectfully asks, if the Court finds that Oyster has not adequately pleaded its fraud claim, that Oyster be permitted to amend its complaint to state its allegations with greater particularity.

### 3.   Coriant Failed to Fulfill Its Duty of Disclosure

Coriant claims that it was not obliged to disclose its negotiations with Infinera because the parties had no confidential or fiduciary relationship. But when Coriant stated to Oyster that the Coriant-Oyster Agreement would cover only Coriant's products, and then became aware that Infinera would seek to take advantage of the agreement for its own products, Coriant had the duty to notify Oyster that Coriant's previous representations were no longer true.

Under Texas law, a party has the duty to disclose when "[the] party makes a representation, which gives rise to the duty to disclose new information that the party is aware makes the earlier representation misleading or untrue." *Solutioneers Consulting, Ltd. v. Gulf Greyhound Partners, Ltd.*, 237 S.W.3d 379, 385 (Tex. App. 2007); *see also Lesikar v. Rappeport*, 33 S.W.3d 282, 299 (Tex. App. 2000) (same); *Hardy v. Zimmer*, No. 2:16-CV-242-JRG, 2017 WL 1551601, at *3 (E.D. Tex. Apr. 28, 2017) (same).

Here, Oyster has alleged that Coriant repeatedly made the representation that the Coriant-

Oyster Agreement would cover Coriant's products, and not the products of any other named de-fendant in the consolidated litigation. FAC ¶¶ 30-31, 34, 41. Oyster has further alleged that at some point after making those representations, but during the parties' negotiations, Coriant entered into acquisition negotiations with Infinera with the plan for Infinera to benefit from the Coriant-Oyster Agreement. FAC ¶¶ 32, 39. That new information made Coriant's previous representations mis-leading or untrue, and therefore created an obligation on Coriant's part to disclose further infor-mation to correct the false impression left by its previous representations. *Solutioneers Consulting*, 237 S.W.3d at 385. Oyster's First Amended Complaint therefore plausibly pleads that Coriant had a duty to disclose its ongoing negotiations for acquisition by Infinera.

### 4. Oyster Sufficiently Alleged Its Entitlement to Relief

Coriant sets up a straw man argument by appearing to argue that Oyster is seeking the patent damages that it could have been entitled to had it prevailed in the earlier litigation against Infinera. But nowhere in the First Amended Complaint does Oyster seek such damages. Instead, on the fraud and concealment claims, the only relief that Oyster seeks is a judgment reforming the Coriant-Oyster Agreement or, in the alternative, rescinding the agreement; and punitive damages to deter Defendants and others from similar double-dealing behavior in the future.

Punitive damages are a widely recognized remedy available for fraud claims in Texas law. *Cantu v. Butron*, 921 S.W.2d 344, 351 (Tex. App. 1996) ("In an action for fraud, evidence of the defendant's conscious indifference to the rights of the aggrieved party may warrant the award of punitive damages."), *writ denied* (Oct. 31, 1996). Similarly, rescission is an equitable remedy available to set aside a contract tainted by fraud. *Humphrey v. Camelot Ret. Cmty.*, 893 S.W.2d 55, 59 (Tex. App. 1994) ("Rescission is an equitable remedy that operates to set aside a contract that is legally valid but is marred by fraud, mistake, or for some other reason, the court must set it aside to avoid unjust enrichment."). Though Texas law[1] restricts punitive damages to cases

---

[1] Notably, the Coriant-Oyster Agreement provides that *New York* law governs the contract. Dryer Decl., Ex. 12, at ¶ 9. Infinera apparently argues that the Court should look beyond the four corners of the contract to apply Texas law to Oyster's fraud claim while simultaneously arguing that the merger clause prevents the Court from looking beyond the contract's terms to find evidence of the same claim.

involving more than nominal damages, but Oyster may prove that it is entitled to further monetary damages as part of its claim for contract reformation. The prayer governs relief for default judgment, not relief at trial, Fed. R. Civ. P. 54(c), so it would not be appropriate for the Court to determine whether a particular form of relief is available at this stage, so long as the redressability standard for standing is met. Furthermore, even if punitive damages were not available to Oyster, that is not grounds to dismiss entire causes of action. Oyster has adequately pleaded its causes of action and its entitlement to the remedies of reformation or rescission, precluding dismissal for failure to state a claim.

Infinera also claims, in a footnote, that Oyster's evidence of fraud that took place at the mediation between Oyster and Coriant would be inadmissible at trial. First, the confidentiality provision in the mediation plan that Defendants cite plainly addresses admissibility of mediation proceedings only "as an admission against interest." Dryer Decl., Ex. 23, at VIII. Furthermore, the plan recognizes that otherwise confidential mediation information may be disclosed if it is "related to an ongoing or intended crime or fraud." Here, Coriant made fraudulent statements in mediation and Oyster will use those statements not as admissions against Coriant's interest but as evidence of fraud. Federal Rule of Evidence 408 has a similar bar against admitting evidence of settlement negotiations, but the advisory committee recognized that "Rule 408 is inapplicable if offered to show that a party made fraudulent statements in order to settle a litigation." Fed. R. Evid. 408 advisory committee's note to 2006 amendment. The Court should recognize the same exception to the mediation plan for the same reasons. Furthermore, the Ninth Circuit case Infinera cites is inapposite. In that case, the court expressly declined to apply the confidentiality provisions of the local ADR rules because the parties had entered into a private mediator, rather than a court-appointed one, and the mediation was not subject to the local rules. *Facebook, Inc. v. Pac. Nw. Software, Inc.*, 640 F.3d 1034, 1041 (9th Cir. 2011). In the same case the Ninth Circuit said it is "doubtful that a district court can augment the list of privileges by local rule." *Id.*

Oyster does not seek to claim patent damages that Oyster has not had the opportunity to prove it is entitled to. Rather, Oyster seeks to reform or rescind a contract that was the result of

13

fraud and concealment. By that fraud and concealment, Oyster was deprived of a fair opportunity at trial to prove its entitlement to patent damages. Moreover, Oyster may be deprived of patent damages for its newly asserted '500 patent. Oyster seeks to undo the harms from that fraud and restore the parties to the positions they would have been in had Defendants not colluded to defraud Oyster. Oyster has sufficiently pleaded its entitlement to the remedies it seeks, and therefore respectfully asks that the Court deny Defendants' motion to dismiss.

## B.   Res Judicata Does Not Bar Oyster's Fraud and Concealment Claims

Res judicata bars repeated litigation of the same claim or cause of action. Two lawsuits involve different causes of action for res judicata purposes "when the theories of recovery, the operative facts, and the measure of recovery differ." *Schmueser v. Burkburnett Bank*, 937 F.2d 1025, 1031 (5th Cir. 1991). Oyster's prior patent infringement suit against Infinera represented a different cause of action from the present fraud and concealment claims because the two actions involved different theories of recovery, different operative facts, and different remedies.

Oyster's prior lawsuit against Infinera sought damages for Infinera's infringement of the Oyster patents asserted in that case. Oyster's present claims seek reformation or rescission of the Coriant-Oyster Agreement based on Defendants' fraudulent misrepresentations and concealment of material facts. This remedy is relevant to Oyster's claims for infringement of the '500 patent, which was not at issue in the prior lawsuits. The theories of recovery, operative facts, and remedies do not overlap; therefore, the two suits do not involve the same claims or causes of action, and res judicata does not bar Oyster's claims for fraud and concealment. *Schmueser v. Burkburnett Bank*, 937 F.2d 1025, 1031 (5th Cir. 1991) ("[O]nly when the subsequent suit is on a different cause of action will those issues which have not been actually litigated and determined not be barred."); *see also Marshall Contractors, Inc. v. Integrated Gas Sys., Inc.*, 105 F.3d 653 (5th Cir. 1996).

Whether Oyster could have amended its complaint in a prior case to add claims for fraud and concealment is immaterial and does not preclude Oyster from bringing them now. § 4406 Claim and Defense Preclusion, 18 Fed. Prac. & Proc. Juris. § 4406 (3d ed.) ("Claim preclusion

applies only if the claim was in fact advanced in the first litigation."); *see also id.* ("If the second lawsuit involves a new claim or cause of action, the parties may raise assertions or defenses that were omitted from the first lawsuit even though they were equally relevant to the first cause of action."). This Court's summary judgment opinion stated it "does not consider" Oyster's fraud theories because they were untimely in the context of the summary judgment briefing. (Ex. 17 at 17.) But that untimeliness was a direct result of Infinera's repeated and inexcusable delays in producing witnesses and documents that Oyster had requested or that Infinera was obligated to produce under this Court's Discovery Order in that case. *See Oyster Optics, LLC v. Infinera Corp.*, Civil Action No. 2:18-cv-00206-JRG, Dkt. No. 84 at 6–9. Regardless of whether Oyster *could* have pursued fraud claims against Infinera in the prior action, the fact remains that Oyster's fraud claims have not been properly before the Court until Oyster raised them in this action.

Furthermore, res judicata cannot apply to bar a claim that arose subsequent to the allegedly preclusive prior judgment. *Am. Home Assur. Co. v. Chevron, USA, Inc.*, 400 F.3d 265, 272 (5th Cir. 2005); *see also Harrison v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*, No. 1:13-CV-74, 2014 WL 12513890, at *11 (E.D. Tex. Mar. 21, 2014) ("The doctrine of res judicata does not bar a party from bringing a claim that arose subsequent to a prior judgment involving the same parties."), *aff'd sub nom. Harrison v. Bert Bell/Pete Rozelle NFL Ret. Plan*, 583 F. App'x 413 (5th Cir. 2014); *see also* § 4406 Claim and Defense Preclusion, 18 Fed. Prac. & Proc. Juris. § 4406 (3d ed.) ("[T]here is no preclusion of a claim that was not mature at the time the first action was filed."). Here, the harm to Oyster from Defendants' fraud was not effected until the Court entered judgment based on the fraud-tainted Coriant-Oyster Agreement, and it became greater on October 7, 2019, when Infinera first alleged that the agreement extended to cover the '500 patent. Therefore, Oyster could not have pleaded the necessary element of harm from Defendants' fraud until after entry of judgment in the prior litigation, and res judicata cannot bar Oyster's fraud claims.

## V. CONCLUSION

For these reasons, Oyster respectfully asks that the Court deny Defendants' motion.

Dated: January 3, 2020                    Respectfully submitted,

                                          By: */s/ Reza Mirzaie*
                                          Marc A. Fenster (CA SBN 181067)
                                          Email: mfenster@raklaw.com
                                          Reza Mirzaie (CA SBN 246953)
                                          Email: rmirzaie@raklaw.com
                                          Paul Kroeger (CA SBN 229074)
                                          Email: pkroeger@raklaw.com
                                          Neil Rubin (CA SBN 250761)
                                          Email: nrubin@raklaw.com
                                          RUSS AUGUST & KABAT
                                          12424 Wilshire Boulevard, 12th Floor
                                          Los Angeles, CA 90025
                                          Telephone: 310/826-7474
                                          Facsimile 310/826-6991

## **CERTIFICATE OF SERVICE**

I hereby certify that the counsel of record who are deemed to have consented to electronic service are being served on January 3, 2020 with a copy of this document via the Court's ECF system.


DATED: January 3, 2020                                 Respectfully submitted,

                                                       By: /s/ *Reza Mirzaie*
                                                              Reza Mirzaie