## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| OYSTER OPTICS, LLC, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | |
| | § | Case No. 2:19-CV-00257-JRG |
| INFINERA CORPORATION, CORIANT | § | |
| (USA) INC., et al., | § | |
| | § | |
| *Defendants.* | § | |

## PLAINTIFF OYSTER OPTICS, LLC'S
## REPLY CLAIM CONSTRUCTION BRIEF

## Table of Contents

I.  Introduction ............................................................................................................... 1

II.  Disputed Construction for the Patent-in-Suit ................................................................ 2

   A.  "phase modulate" and grammatical variations (claims 1, 8, 16, 17, 19) ............... 2

       1.  Defendants Concede their Construction, Which Imports a Negative
           Limitation, Is Not the Plain Meaning of the "Phase Modulation" .................. 2

       2.  Instead of Showing Lexicography or Disclaimer to Support their
           Construction in the '500 Patent's Intrinsic Record, Defendants'
           Largely Ignore That Record—and Have No Real Defense for Why
           They Should Obtain a Construction that Conflicts With That Record ............ 3

       3.  Defendants' Attempts To Deflect Fail Because Their Arguments Are
           Fatally Flawed ................................................................................................ 4

III.  Conclusion ................................................................................................................. 10

# Table of Authorities

**Cases**

*Anchor Wall Sys., Inc. v. Rockwood Retaining Walls, Inc.*,

    340 F.3d 1298 (Fed. Cir. 2003) ................................................................... 3

*Golight, Inc. v. Wal-Mart Stores, Inc.,*

    *355 F.3d 1327* (Fed. Cir. 2004) ................................................................ 8

*In re CSB-Sys. Int'l, Inc.*,

    832 F3d. 1335 (Fed. Cir. 2016) .................................................................. 3

*Nestle USA, Inc. v. Steuben Foods, Inc.*

    884 F. 3d 1350 (Fed. Cir. 2018) .................................................................. 9

*SanDisk Corp. v. Memorex Prod., Inc., Co.*,

    415 1278 (Fed. Cir. 2003.) ......................................................................... 1

*SunRace Roots Enter. Co., Ltd. v. SRAM Corp.*,

    336 F.3d 1298 (Fed. Cir. 2003) ................................................................. 4

*Thorner v. Sony Computer Entertainment Am. LLC*,

    669 F.3d 1362 (Fed. Cir. 2012) ................................................................. 2

## I.    INTRODUCTION

Defendants' Response brief only proves Oyster's point—and makes clear that Oyster's construction is the only correct construction under the law.

The parties agree that the "phase modulation" terms will require a showing that an accused product or prior art reference "alter[s] the phase of light to create an optical signal having a phase that is representative of data." Notably the parties further agree this is the plain meaning of "phase modulation." The sole dispute between the parties is whether the construction should include the ***negative limitation*** proposed by Defendants, namely, that "[u]se of phase modulation excludes use of amplitude modulation." In other words, should the term be construed to exclude systems that meet the plain meaning of "phase modulation" and amplitude modulation? The answer is even clearer now: it should not.

For their part, instead of attempting to make any independent showing on the '500 Patent, Defendants spend twenty one pages of their twenty-two page brief mischaracterizing the record and avoiding the key differences between the intrinsic record of the '500 patent family, on the one hand, and the different patent families that were at issue in *Oyster Optics, LLC v. Coriant America Inc., et al.*, Case No. 2:16-cv-01302-JRG (the "Prior Litigation"), on the other hand. That is not surprising—because they cannot make any such showing. And more to the point here: the key differences make clear that the very bases underlying this Court's ruling in the Prior Litigation is entirely missing here.

When the Defendants finally get around to tackling those key issues, they have no real response. Defendants do not contend, let alone show, that there is any lexicography. And though they seem to hint at a disclaimer, they do not show one, let alone one that comes close to the type of showing they need to obtain the negative limitation they seek. Even worse, that proposed negative limitation would ***exclude embodiments*** described in this different patent family, which is "rarely, if ever, [the] correct" construction under controlling law. *SanDisk Corp. v. Memorex Prod., Inc., Co.*, 415 1278, 1285 (Fed. Cir. 2003.)

## II. DISPUTED CONSTRUCTION FOR THE PATENT-IN-SUIT

### A. "phase modulate" and grammatical variations (claims 1, 8, 16, 17, 19)

| Oyster's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| alter the phase of light to create an optical signal having a phase that is representative of data | alter the phase of light to create an optical signal having a phase that is representative of data. **Use of phase modulation excludes use of amplitude modulation.** |

#### 1. Defendants Concede their Construction, Which Imports a Negative Limitation, Is Not the Plain Meaning of the "Phase Modulation"

As Oyster demonstrated in its opening brief: this Court considered definitions for the term from authoritative technical dictionaries, such as:

> **phase modulation:** Angle modulation in which the phase angle of a carrier, such as an electronic, radio, or optical carrier, is caused to depart from its reference value by an amount proportional to the instantaneous value of the modulating signal.

Mirzaie Decl., Ex. B, *Fiber Optics Standard Dictionary* 742 (3d ed. 1997). Based upon these definitions, the Court found that phase modulation cannot be met by amplitude modulation alone. Case No. 2:16-cv-01302-JRG, Dkt. 190 at 16. But the Court also found that "Defendants *have not shown* that using phase modulation necessarily *precludes* using amplitude modulation." *Id.* And as Oyster also laid out in its opening brief: in the context of the '500 patent, phase modulation and amplitude modulation are not mutually exclusive. They can both be used by "the same system" and, indeed, at "exactly the same time," as Oyster stated in its brief. Oyster's Opening Br. at 2-5.

Given the chance to respond, Defendants have no dispute or response to this. Instead, they concede it—as they had to. Defs' Br. at 21. Thus, it is now clear that, applying Federal Circuit law, Defendants must show clear and unambiguous lexicography or disclaimer in the patent's intrinsic record to obtain a narrower claim scope. That is because "[t]here are only two exceptions" in which claim terms are not given their full ordinary and customary meaning: "1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of a claim term either in the specification or during prosecution." *Thorner v. Sony Computer Entertainment Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012). And this burden is even more difficult

where, as here, Defendants attempt to import a negative limitation into the claims. *In re CSB-Sys. Int'l, Inc.*, 832 F3d. 1335, 1342-43 (Fed. Cir. 2016).

      **2.**       **Instead of Showing Lexicography or Disclaimer to Support their Construction in the '500 Patent's Intrinsic Record, Defendants' Largely Ignore That Record—and Have No Real Defense for Why They Should Obtain a Construction that Conflicts With That Record**

Instead of meeting this burden based on the intrinsic record of the '500 patent, Defendants' brief makes clear they have no legitimate direct response to two points regarding the intrinsic record of the '500 patent. Both are fatal to Defendants' position in this dispute.

First, as Oyster also laid out in its opening brief, far from showing some disclaimer to justify their negative limitation. Defendants' construction creates direct tension with and *reads out embodiments* in the patent's intrinsic record. Indeed, this is confirmed right of the bat—and explicitly so—in the "Summary of the Present Invention" section of the patent, which states:

> *The present invention* thus permits a phase-modulated transmission mode or an amplitude-modulated transmission mode, *or both a phase and amplitude modulated transmission mode*, which can permit the transmitter to work with different types of receivers.

'500 patent at 2:41–47 (emphasis added). The summary section goes on to describe a "second mode" where the light is amplitude modulated (*id.* at 2:63–64) and where "the optical signal may or may not also be phase modulated" (*id.* at 3:1–3). The specification also describes other ways of combining phase modulation with amplitude modulation, including in an "alternating stream" or a "mixed" signal. *Id.* at 3:27–30, 3:47–50, 3:62–64, 4:35–42.

This obviously conflicts with Defendants' construction. But a construction of "phase modulate" that "excludes" amplitude modulation, as proposed by Defendants, is contrary to this explicit disclosure of a "both a phase and amplitude modulated" mode—and *would exclude that embodiment*. But these types of constructions are "rarely, if ever, correct." *See Anchor Wall Sys., Inc. v. Rockwood Retaining Walls, Inc.*, 340 F.3d 1298, 1308 (Fed. Cir. 2003) (construction that excludes a preferred embodiment "is rarely, if ever correct").

Defendants avoid this fatal problem for over twenty pages of their brief. When they finally

get around to addressing it, they use nothing more than attorney argument to pretend it does not exist. Defs' Br. at 20-21. Beyond that, they again deflect to other patent families, to take the attention away from these passages that *are unique to the intrinsic record of the '500 patent*. That fails.

<u>Second</u>, as Oyster demonstrated in their opening brief, Defendants' proposed construction must also be rejected under the doctrine of claim differentiation. Claim 18 claims a "first transmission mode" that is phase-modulated but is "not amplitude-modulated." *Id.* at 10:14–16, 10:22–25. If "phase modulate" in the context of the '500 patent necessarily excluded amplitude modulation, then claim 18 and its requirement that the light "is not amplitude-modulated" would be superfluous, having exactly the same scope as the parent claim 17. *SunRace Roots Enter. Co., Ltd. v. SRAM Corp.*, 336 F.3d 1298, 1303 (Fed. Cir. 2003) (claim differentiation "is especially strong when the limitation in dispute is the only meaningful difference between an independent and dependent claim, and one party is urging [] the limitation in the dependent claim should be read into the independent [].") As Defendants concede, this is ***not*** the same record as in the Prior Litigation.

Defendants also have no legitimate or direct response to this, either. Instead, in a couple of sentences within their twenty-three page brief, they again use nothing more than attorney argument to pretend it does not exist. Defs' Br. at 20-21. Beyond that, they again deflect to other patent families, to take the attention away from these passages that *are also unique to the intrinsic record of the '500 patent*. That, too, fails. They are unable to avoid these passages in the '500 patent. An analysis of the intrinsic record and briefing on either of these two points disposes the current dispute, in Oyster's favor.

### 3. Defendants' Attempts To Deflect Fail Because Their Arguments Are Fatally Flawed

#### a. A Reasonable Review Confirms the Intrinsic Evidence for the '500 Patent *Does Not "Align"* with the Evidence Resulting in this Court's Prior Construction

Rather than make any independent showing of disclaimer in the '500 patent's intrinsic record, Defendants invite this Court to avoid that kind of analysis altogether. Instead, they contend this Court should rule in their favor because the intrinsic record of the '500 patent is "nearly

identical" and "aligns" with that of the patent families in the Prior Litigation. Defs' Br. at 10-11. Defendants provide no legal authority to suggest this kind of shortcut is correct. Of course, there is no such authority. For example, what would this Court do if it had to construe the '500 patent claims first? Would a POSITA be required to look at all patent families owned by Oyster before determining the correct interpretation of the '500 patent? Defendants' brief glosses over these relevant but uncomfortable points—and many others.

But Defendants' argument fails even if we were to accept their invitation to take a flawed shortcut in the legal analysis and only determine whether Defendants' premise—namely that the intrinsic evidence for the '500 patent is "nearly identical" to that of the other patent families in the Prior Litigation—is true. This is because the record proves that premise is false. Indeed, just the opposite is true: the relevant intrinsic evidence here is significantly different from the intrinsic evidence for the patent families in the Prior Litigation.

As an initial matter, Oyster already demonstrated that the '500 patent's (1) "Summary of the Invention," (2) descriptions of embodiments that have both phase and amplitude modulation in the same mode, and (3) the claim 18 of the '500 patent are all unique to that patent family. Defendants have not shown and cannot show otherwise. This is dispositive. It shows that, on these salient points of tension with the Defendants' construction, the intrinsic evidence of the '500 patent family cannot be reasonably read to be "nearly identical" to or "align" with the patent families at issue in the Prior Litigation. To the contrary, Defendants' construction creates tremendous tension with the '500 patent's intrinsic record.

But there is more. The sentences in this Court's Order in the Prior Litigation and on which this Court relied on in the Prior Litigation to find disclaimer through "disparagement" are ***not in the '500 patent at all***. In other words, the '500 patent is missing the following types of statements:

- "Moreover, each phase-modulated light path is combined with a continuous wavelength base laser light path when sent over a telecommunications line, so that *amplitude-modulated* signals result." [***Not in '500 patent***];

- As with U.S. Pat. No. 5,606,446, U.S. Pat No 5,726,784 discloses creating

an amplitude-modulated data stream by combining a phase-modulated light path with a continuous wave base laser light path. [***Not in '500 patent***];

- The "present invention," by contrast, uses a signal that can be received only with an appropriate interferometer... An attempt to read the optical signal in the fiber, for example from a tap, requires knowledge of the delay and the creation of a precise physical delay path in the interferometer. [***Not in '500 patent***]; and

- Because the transmitter is typically transmitting in secure mode using a continuous wave laser, the energy level read by the detector should be constant. When a drop in the energy level is detected, which may indicate a tap, the card may provide an alarm signal. [***Not in '500 patent***]

Thus, in reality, the intrinsic evidence could not be more different on the salient issues here. Defendants' flawed attempt to show they are "nearly identical" does not withstand any scrutiny.

Defendants' other arguments in this vein also do not withstand scrutiny. For example, Defendants argue that the Court should ignore these dispositive points because it "correctly recognized" that the patents in the Prior Litigation are "useful" for enhancing security and the same "security concerns" are relevant to the '500 patent. Defs' Br. at 11. But this point regarding the supposed "sameness" is not true in light of the differences in the intrinsic evidence, as Oyster has demonstrated. At any rate, Defendants provide no authority to support any contention that the same "concerns" in two patent families requires that the terms in both families be construed the same way. And there is no such authority.

As another example, Defendants state that the '500 patent "disparages" amplitude modulation like the other patent families did. Defs' Br. at 11-12. But this again avoids the dispositively different intrinsic record. It also avoids the truth on a related point. If this were even a relevant question to begin with after reviewing the intrinsic record: the '500 patent disparages *both* prior art amplitude-modulated systems *and* prior art phase-modulated systems, without expressing any particular preference for either type of prior art system. '500 patent at 1:34–37, 2:21–23 ("The phase-modulated based systems described above moreover are not compatible with existing receivers, a *major disadvantage*.") (emphasis added). It contains no repeated disparagement of amplitude modulation or of using the two forms of modulation together.

As yet one more example, Defendants contend that certain claims and embodiments in the '500 patent "switch" between amplitude and phase modulation. Defs' br. at 12. But this is irrelevant. Among other things, it says nothing about the embodiments that do not and does not support disclaimer to the point of adding a negative limitation.

But this argument—and others like it that Defendants wrong advance—also avoids an even bigger problem: Defendants' construction *excludes embodiments that practice both forms of modulation in the same mode*. This point is true for Defendants' flawed contention that the '500 patent has *other embodiments* that teach using one mode at one time and another mode during another time. Defs' Br. at 12. And this point is also true for Defendants' pure attorney argument that the '500 patent teaches other embodiments where "the light is kept constant during phase-modulation mode." Defs' Br. at 13. None of this really deals with the embodiments that are excluded, which render Defendants' construction incorrect.

### b. Defendants' Single Paragraph Regarding the Prosecution History Does Not Prove Their Point and Also Does Not Support a Negative Limitation

Defendants also argue, in a single-paragraph section that the '500 patent's file history "confirms the correctness of the Court's prior construction." Defs' Br. at 15. But that file history does not prove their point one bit. To the contrary, the amendment added by the patentee—and the statements Defendants now rely on—were to clarify that the AM and PM modes in the independent claims occur at different times. Ex. M at 5-8. But that is ***already expressly set forth in the claims in another limitation***. Thus, Defendants' argument that the amendment and statement create disclaimer for the disputed issue and limitation here does not pass muster.

It is also worth mentioning that the same prosecution history confirms the tension that Defendants' interpretation here would create with Dependent claim 18, which claims a "first transmission mode" that is phase-modulated but is "not amplitude-modulated." *Id.* at 10:14–16, 10:22–25. Again, if "phase modulate" in the context of the '500 patent necessarily excluded amplitude modulation, then claim 18 and its requirement that the light "is not amplitude-modulated"

would be superfluous, having exactly the same scope as the parent claim 17. This would lead to reversible error. Defendants' contrary contention is not reasonable. At the very least, there is more than one reasonable interpretation of this history, which means Defendants cannot meet their burden of showing disclaimer based on this history. *See Golight, Inc. v. Wal-Mart Stores, Inc., 355 F.3d 1327, 1332* (Fed. Cir. 2004) (statements in the prosecution history are subject to multiple reasonable interpretations, they do not constitute a clear and unmistakable" disclaimer).

> **c.** **Defendants' Argument that giving "Phase Modulate" a Different Meaning Would Render Oyster's Patents Internally Inconsistent is False and Irrelevant**

Also, just as Oyster suggested based on Defendants' claim-construction exchanges leading up to briefing, "Defendants may argue that the '500 patent disparages the use of amplitude modulation because it incorporates the application that lead to the '055 patent by reference." But that, too, fails.

This argument is irrelevant. There is no legal authority for any contention that a patent owner's different patent families must be "internally consistent," let alone any authority for any argument that this "concern" can replace any showing of clear and unambiguous disclaimer. Notably, even if this were a concern for the jury trial here, this case will have a separate jury than the ones involving the patent families in the Prior Litigation.

It is also false. The '816 patent that the Court cited in its prior *Markman* order is a continuation-in-part of the '055 patent. Exs. D, E. But as a continuation-in-part, the '816 patent added material to its specification that was not present in the '055 patent and thus not incorporated by reference into the '500 patent specification. Only two of the purportedly derogatory statements that the Court relied upon in its prior construction of "phase modulate" appear in the specification of the '055 patent. The first of these statements is a statement that amplitude-modulated signals can be tapped. Ex. D, '055 patent at 1:34–39; Case No. 2:16-cv-01302-JRG, Dkt. 190 at 14. But this same statement is also contained in the body of the '500 patent specification, as part of a section that critiques prior art techniques generally. '500 patent at 1:34–38. The second statement

contained in the '055 specification is the statement: "With the system of the present invention, the receiver functions as an interferometer. An attempt to read the optical signal in the fiber, for example from a tap, requires knowledge of the delay and the creation of a precise physical delay path in the interferometer." Ex. D, '055 patent at 2:49–53; Case No. 2:16-cv-01302-JRG, Dkt. 190 at 15. But this is expressly a statement about the "present invention" of the '055 patent, not about the invention of the '500 patent. It is also not a general disparagement of amplitude modulation.

The invention of the '500 patent, on the other hand, is different from the invention of the '055 patent or of the other patents at issue in the Prior Litigation. As the title of the patent suggests, it describes a "Dual-Mode" system. '500 patent at Abstract, 2:41–47. The system of the '055 patent is referred to in the '500 patent specification, but only as one "preferabl[e]" way of achieving the "first mode." '500 patent at 2:47–56. The '055 patent's disclosure is not a mandatory aspect of the '500 patent invention, and the '055 patent does not disclose the entire invention in the '500 patent.

### d. Defendants' Remaining Arguments Also Have Fatal Flaws on the Facts and the Law

Defendants' remaining distractions are also flawed. Continuing their theme of avoiding the intrinsic record in this case for the different record in the Prior Litigation, Defendants argue that Oyster is collaterally estopped from contending that "phase modulate" should mean anything different than it did in the Prior Litigation. To make this argument, Defendants realize they have to stretch the meaning of the "same issue" requirement in the doctrine of collateral estoppel, but they rely on a case, *Nestle USA, Inc. v. Steuben Foods, Inc.*, that does not get them close to doing so. In that case, the Federal Circuit applied a limited exception to the rule that collateral estoppel cannot apply across different patents because the two patents at issue had: (1) overlapping specifications; and (2) "***identical lexicography***" for the relevant term. 884 F.3d 1350, 1351-53 (Fed. Cir. 2018). Indeed, "[n]either party has pointed to any material difference between the two patents or their prosecution histories that would give rise to claim construction issues in this appeal different from those raised in the prior appeal." *Id*. The facts here are materially

different, to put it lightly. Thus, Defendants' attempt to expand the holding in *Nestle USA* beyond anything that can resemble collateral estoppel fails.

Defendants' argument concerning "judicial estoppel" fares no better. Though Defendants repeat the misleading statement that Oyster stated this Court's construction in the Prior Litigation is correct, the record in the Prior Litigation proves this false. The relevant record in that Prior Litigation proves that the issue resolved by this Court was how far the disclaimer in the patents in that Prior Litigation can carve out claim scope from the different patents in that case. It did not concern the issue here, which is whether Defendants' can show there should be any disclaimer from the plain meaning of phase modulate to being with. And it also did not concern the intrinsic record here, which is just another reason why Defendants' "judicial estoppel" argument is flawed and, respectfully, frivolous.

Finally, as an apparent last ditch effort to downplay the intrinsic record in this case, Defendants suggest Oyster's ***quoting*** of the '500 patent's Summary and passages about phase and amplitude modulation being used in the same mode and dependent claim 18 reveals a "tortured" reading and that some of the passages did not "relate[] to the input optical data stream." Defs' Br. at 20-22. But this pure attorney argument obviously has no actual support in the intrinsic record, which expressly contradicts it. At bottom, it, like Defendants' other distractions, cannot and do not provide any legal basis for importing the negative limitation Defendants seek.

## III. CONCLUSION

Oyster respectfully asks that the Court adopt its proposed construction because it is the only correct one under controlling law in light of the plain meaning of "phase modulation" *and* the unique intrinsic record of the '500 patent.

Dated: May 26, 2020                                Respectfully submitted,

                                                   By: */s/ Reza Mirzaie*
                                                   Marc A. Fenster (CA SBN 181067)
                                                   Email: mfenster@raklaw.com

Reza Mirzaie (CA SBN 246953)
Email: rmirzaie@raklaw.com
Paul Kroeger (CA SBN 229074)
Email: pkroeger@raklaw.com
Neil Rubin (CA SBN 250761)
Email: nrubin@raklaw.com
RUSS AUGUST & KABAT
12424 Wilshire Boulevard, 12th Floor
Los Angeles, CA 90025
Telephone: 310/826-7474
Facsimile 310/826-6991

## CERTIFICATE OF SERVICE

I hereby certify that the counsel of record who are deemed to have consented to electronic service are being served on May 27, 2020 with a copy of this document via the Court's ECF system.

DATED: May 27, 2020

Respectfully submitted,

By: /s/ Reza Mirzaie
    Reza Mirzaie