IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| OYSTER OPTICS, LLC,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>INFINERA CORPORATION,<br>CORIANT (USA) INC., CORIANT<br>NORTH AMERICA, LLC, and<br>CORIANT OPERATIONS, INC.,<br><br>　　　　　Defendants. | Civil Action No. 2:19-cv-00257 |

**DEFENDANTS' MOTION FOR PARTIAL SUMMARY
JUDGMENT OF NONINFRINGEMENT OF CLAIM 16**

███████████████████████████████

**TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................................. 1
II.    STATEMENT OF THE ISSUES........................................................................... 1
III.   STATEMENT OF UNDISPUTED MATERIAL FACTS ................................... 2
       A.   The '500 Patent ........................................................................................... 2
       B.   Defendants' Accused Products and Oyster's Infringement Allegations.................. 2
IV.    LEGAL STANDARDS ......................................................................................... 3
V.     ARGUMENT ......................................................................................................... 3
       A.   Claim 16's Plain Language Requires the Same Optical Fiber Connected to Both
            the Transmitter and the Receiver ................................................................ 3
       B.   The Accused Products Do Not Directly Infringe Because They Lack an Optical
            Fiber Connected to Both the Transmitter and Receiver.......................... 5
            1.   The Accused Products Do Not Include the Optical Fibers Identified in
                 Oyster's Infringement Contentions............................................................ 5
            2.   Dr. Goossen's Belated "Internal" Fiber Theory Is Unavailing.................. 5
       C.   The Court Should Also Grant Summary Judgment of No Induced Infringement .. 6
            1.   Oyster Waived Induced Infringement Allegations .................................... 6
            2.   Oyster Cannot Show Underlying Direct Infringement .............................. 7
            3.   Oyster Lacks Sufficient Evidence of Knowledge and Intent...................... 8
VI.    CONCLUSION...................................................................................................... 9

██████████████████████████

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*ACCO Brands, Inc. v. ABA Locks Mfrs. Co.*,
   501 F.3d 1307 (Fed. Cir. 2007) ................................................................................................7

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ..................................................................................................................3

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ..................................................................................................................3

*Commil USA, LLC v. Cisco Sys., Inc.*,
   135 S. Ct. 1920 (2015) ..........................................................................................................8, 9

*Convolve, Inc. v. Compaq Computer Corp.*,
   812 F.3d 1313 (Fed. Cir. 2016) ................................................................................................4

*Global-Tech Appliances, Inc. v. SEB S.A.*,
   563 U.S. 754 (2011) ..............................................................................................................8, 9

*Implicit, LLC v. Huawei Techs. USA, Inc.*,
   No. 6:17-cv-00812-JRG, 2018 WL 11182156 (E.D. Tex. July 2, 2018) ...................................5

*Linex Techs., Inc. v. Belkin Int'l, Inc.*,
   628 F. Supp. 2d 703 (E.D. Tex. 2008) ......................................................................................7

*Nielsen v. Preap*,
   139 S. Ct. 954 (2019) ................................................................................................................4

*Nike, Inc. v. Adidas America Inc.*,
   479 F. Supp. 2d 664 (E.D. Tex. 2007) ......................................................................................7

*O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*,
   467 F.3d 1355 (Fed. Cir. 2006) ................................................................................................6

*PC Connector Sols. LLC v. SmartDisk Corp.*,
   406 F.3d 1359 (Fed. Cir. 2005) ............................................................................................3, 6

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005) (*en banc*) ................................................................................4

*Rumsfeld v. Padilla*,
   542 U.S. 426 (2004) ..................................................................................................................4

*STMicroelectronics, Inc. v. Motorola, Inc.*,
　308 F. Supp. 2d 754 (E.D. Tex. 2004) ................................................................................... 5

*Tex. Instruments, Inc. v. U.S. Int'l Trade Comm'n*,
　805 F.2d 1558 (Fed. Cir. 1986) ............................................................................................ 8

*Vita-Mix Corp v. Basic Holding, Inc.*,
　581 F.3d 1317 (Fed. Cir. 2009) ............................................................................................ 8

*Wi-Lan, Inc. v. Apple, Inc.*,
　811 F.3d 455 (Fed. Cir. 2016) .............................................................................................. 4

**Other Authorities**

Fed. R. Civ. P. 56(a) ..................................................................................................................... 3

## I. INTRODUCTION

By reciting "*an* optical fiber connected to the transmitter" and "a receiver having an interferometer connected to *the* optical fiber," the plain language of asserted claim 16 of the '500 patent at least requires that the transmitter and receiver both connect to the *same* optical fiber. The accused products undisputedly do not include such a fiber. Indeed, the only optical fibers identified in Oyster's infringement contentions are not made or sold by Defendants at all, and are not connected as required by the claims. Tellingly, Oyster's expert, Dr. Goossen does not endorse Oyster's only theory preserved in Oyster's contentions. Dr. Goossen's opinions rest on an alternative theory, but this theory also fails because it requires reading claim 16 on a system with different optical fibers connected to the transmitter and receiver. The claim language itself, established principles of claim construction, the '500 patent's written description, and basic common sense all refute Dr. Goossen's unsupported reading of claim 16.

Oyster's attempt to invoke induced infringement also independently fails for several reasons. First, Oyster abandoned induced infringement when it served amended infringement contentions that made no mention of inducement. Second, Dr. Goossen identifies no evidence of direct infringement under any reading of claim 16, thereby defeating any claim of inducement. Third, Oyster has no evidence to establish the *mens rea* requirements of induced infringement. Because Oyster's infringement arguments for claim 16 either lack a factual basis or rest on a misinterpretation of the claim, and because many of them were not even preserved in Oyster's amended infringement contentions, summary judgment of noninfringement should be granted.

## II. STATEMENT OF THE ISSUES

In light of claim 16's requirement that the claimed apparatus include a transmitter and a receiver having an interferometer that both connect to the *same* optical fiber, does Oyster have sufficient evidence to show direct or induced infringement?

### III. STATEMENT OF UNDISPUTED MATERIAL FACTS

#### A. The '500 Patent

Oyster currently asserts claims 1, 4, 5, 8, and 16 of U.S. Patent No. 6,665,500 ("the '500 patent"). [Ex. A.] The '500 patent is titled "[d]ual-mode fiber optic telecommunications system and method." [*Id.*] In the described system, a "dual-mode transmitter 10" transmits "signals to an optical fiber 20" [*Id.*, 4:56-58.] The system also includes a "receiver 30," [*id.*, 3:46-50, 6:26-29, Fig. 2], which is also connected to optical fiber 20 and receives optical signal 22, which "is transmitted over fiber 20." [*Id.*, 5:43-44, 6:4-5, Fig. 2.] Consistent with this description, claim 16 requires, *inter alia*, a "transmitter," "*an* optical fiber connected to the transmitter," and "a receiver having an interferometer connected to *the* optical fiber." [*Id.*, cl. 16.] Unsurprisingly, the claimed system recites a functioning communication system, with a transmitter connected to one end of an optical fiber and a receiver connected to the other end of the same fiber.

#### B. Defendants' Accused Products and Oyster's Infringement Allegations

Oyster alleges that certain Infinera and Coriant optical line cards, line modules, and appliances infringe the '500 patent, which can be treated as similar for this motion. [Ex. B ¶¶99, 125.] In its Amended Infringement Contentions, Oyster contended that the accused products include "an optical fiber connected to the transmitter," citing evidence that "███████ ████████████████████████████████████████████████████████████████████ ███" [Ex. C at 117-19.] Its contentions regarding the "receiver having an interferometer being connected to the optical fiber" limitation cited the products' ability to receive an "incoming optical signal," but otherwise did not identify any specific optical fiber. [*Id.* at 122-24.] Defendants' response to Oyster's non-infringement contention interrogatory stated that ████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████ [Ex. D at 6, 12-14.] Defendants added that their

products ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ claim 16. [*Id.*]

Oyster's expert, Dr. Goossen, did not dispute that the accused products do not include the external fibers described in Oyster's contentions. [Ex. B ¶¶186-190, 246-250.] Instead, he made two new arguments not disclosed in Oyster's contentions. First, Dr. Goossen claimed that the products' transmitters are connected to an "internal" optical fiber. [*Id.* ¶¶186, 246.] Second, he alleged that Defendants induce customers to connect their products' transmitters and receivers to optical fibers. [*Id.* ¶¶187-190, 247-250.] Dr. Goossen testified, however, that "the extent of [his] analysis" was that "as long as the transmitter is connected to an optical fiber and the receiver is connected to an optical fiber, I believe it infringes the claim." [Ex. E at 115:6-21.] Dr. Goossen also testified as follows:

> Q. In the accused products do you believe that the same optical fiber connects the transmitter and receiver?
>
> A. No. [*Id.* at 115:22-25.]

## IV. **LEGAL STANDARDS**

Summary judgment follows when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Summary judgment of noninfringement "is proper when no reasonable jury could find that every limitation recited in a properly construed claim [is] found in the accused device." *PC Connector Sols. LLC v. SmartDisk Corp.*, 406 F.3d 1359, 1364 (Fed. Cir. 2005).

## V. **ARGUMENT**

### A. **Claim 16's Plain Language Requires the Same Optical Fiber Connected to Both the Transmitter and the Receiver**

Claim 16 requires both "an optical fiber connected to the transmitter" and "a receiver

having an interferometer being connected to *the* optical fiber." [Ex. A, cl. 16.] This plain language, requires that "the" optical fiber connected to the transmitter is also, at a minimum, connected to the claimed receiver.[1] [*Id.*] As a matter of basic English grammar, the claim's use of the definite article indicates that "the" optical fiber connected to the receiver is the one specified in the previous limitation of the claim. *E.g.*, *Nielsen v. Preap*, 139 S. Ct. 954, 965 (2019) ("[G]rammar and usage establish that 'the' is 'a function word . . . indicat[ing] that a following noun or noun equivalent is definite or has been previously specified by context.'" (quoting Merriam Webster's Collegiate Dictionary 1294 (11th ed. 2005)). This precludes the reading applied by Dr. Goossen, in which the transmitter and receiver connect to separate fibers. [Ex. E at 111:5-115:21]; *see also, e.g.*, *Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004) (explaining that the "use of the definite article" in the phrase "the person" "indicates that there is generally only one" person covered).

Although the meaning here is plain, claim construction analysis leads to the same result. "Subsequent use of 'the' or 'said' in a claim refers back to the same term recited earlier in the claim." *Wi-Lan, Inc. v. Apple, Inc.*, 811 F.3d 455, 462 (Fed. Cir. 2016); *see also Convolve, Inc. v. Compaq Computer Corp.*, 812 F.3d 1313, 1321 (Fed. Cir. 2016). Consistent with normal grammar, established rules of claim construction also require that to practice claim 16, both the transmitter and receiver must connect to "the" optical fiber. *Id.* The specification confirms this reading. It shows the *same fiber*—"optical fiber 20"—connecting to both the transmitter and receiver. [Ex. A, 4:56-58, 6:26-58, Figs. 1-2.] That is not surprising, because the fiber's purpose in the invention is to carry optical signals 22 and 23 from the transmitter to the receiver. [*Id.* at 4:56-58, 5:43-45, 6:26-58, Figs. 1-2]; *Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005) (*en banc*).

---

[1] The claim language requires the optical fiber to specifically be connected to the interferometer, but Defendants would not infringe even if it could be read as only requiring a connection to the receiver, so the Court need not decide that issue to resolve this motion.

### B. The Accused Products Do Not Directly Infringe Because They Lack an Optical Fiber Connected to Both the Transmitter and Receiver

#### 1. The Accused Products Do Not Include the Optical Fibers Identified in Oyster's Infringement Contentions

There is no genuine dispute that the optical fibers identified in Oyster's infringement contentions (███████████████████████████████████████████████████████████████████████████) Thus, any one of these fibers mentioned in Oyster's contentions is not connected to either the transmitter *or* receiver of an accused product when made or sold by Defendants. *A fortiori*, there is also no such fiber connected to **both** the transmitter and receiver. Defendants simply do not make, use, or sell such an end-to-end system, and Dr. Goossen does not contend otherwise. [Ex. B ¶¶186-190, 246-250]. Thus, no reasonable jury could find direct infringement under the theory set forth in Oyster's infringement contentions.

#### 2. Dr. Goossen's Belated "Internal" Fiber Theory Is Unavailing

Unable to defend Oyster's contentions, ███████████████████████████████████████████████████████████████████████████████████████████████████ [Ex. B ¶¶186, 246; Ex. C at 117.] Oyster cannot avoid summary judgment by advancing a new direct infringement theory for the first time through Dr. Goossen's expert report. Oyster was obligated to provide infringement contentions with sufficient specificity to provide Defendants with fair notice of its infringement theory. *E.g.*, *STMicroelectronics, Inc. v. Motorola, Inc.*, 308 F. Supp. 2d 754, 755 (E.D. Tex. 2004). Its contentions made no mention of any "internal" optical fiber, and pointed only to actual transmission fibers that are not included in the accused products. [Ex. C at 117-124.] Under this District's Patent Rules, Oyster cannot "essentially revamp its case in order to maintain plausible infringement reads" just because Defendants pointed out that its original theory failed. *See Implicit, LLC v. Huawei Techs. USA, Inc.*, No. 6:17-cv-00812-JRG, 2018 WL 11182156, at *5 (E.D. Tex.

July 2, 2018). Oyster cannot avoid summary judgment by invoking Dr. Goossen's new theory. *See, e.g.*, *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1369 (Fed. Cir. 2006) (affirming noninfringement summary judgment when plaintiff failed to show evidence supporting its infringement contentions).

In any case, Dr. Goossen fails to identify any "internal" optical fiber in any accused product which connects to **both** the accused product's receiver and transmitter. [Ex. B ¶¶186, 246 (stating that the internal fiber connects the transmitter not to the receiver but "to an external fiber connection"; Ex. E at 115:22-25 (admitting that the same optical fiber does not connect to the transmitter and receiver in the accused products).] Indeed, Dr. Goossen admitted that he did not analyze this claim requirement at all because he did not apply the claim language. He instead believes that the accused products infringe "as long as the transmitter is connected to an optical fiber and the receiver is connected to an optical fiber." [Ex. E at 111:5-115:21.] Accordingly, summary judgment is warranted even if Oyster were permitted to advance this previously-undisclosed infringement theory. *PC Connector*, 406 F.3d at 1364.

### C. The Court Should Also Grant Summary Judgment of No Induced Infringement

#### 1. Oyster Waived Induced Infringement Allegations

Summary judgment is also proper regarding induced infringement. First, although Oyster pled induced infringement in its complaint and included it in its November 8, 2019, infringement contentions, [Dkt. 33 ¶20; Ex. F at 2], Oyster's amended infringement contentions dropped inducement. [Ex. C at 1, 117-124.] Oyster did not seek to again amend its contentions after learning of Defendants' non-infringement positions. [Ex. D at 6, 12-14.] Oyster waived any induced infringement claim, and Oyster cannot revive it now through Dr. Goossen's expert report.

These facts are materially identical to *Nike, Inc. v. Adidas America Inc.*, 479 F. Supp. 2d 664, 669-70 (E.D. Tex. 2007). The plaintiff there alleged infringement under the doctrine of equivalents in its initial infringement contentions. *Id.* at 669. Later, it served "Supplemental Infringement Contentions with not even a passing reference to infringement by the doctrine of equivalents." *Id.* at 665-66. The Court held that it was therefore "reasonable for [the defendant] to assume that the doctrine of equivalents was not being pursued." *Id.* at 670. The Court therefore denied the plaintiff leave to again amend its contentions and reassert the doctrine of equivalents. *Id.* Here, Oyster's failure to even mention inducement in its amended infringement contentions likewise showed that induced infringement was no longer being pursued. Moreover, unlike the *Nike* plaintiff, Oyster did not even seek leave to amend its contentions, instead staying silent through the close of fact discovery and up to service of its expert report on infringement. For Oyster to reintroduce its abandoned inducement claim at this late stage of the case would be highly prejudicial and would thwart the notice and issue-narrowing purposes of this districts Patent Rules. *See, e.g.*, *Linex Techs., Inc. v. Belkin Int'l, Inc.*, 628 F. Supp. 2d 703, 707 (E.D. Tex. 2008).

### 2.  Oyster Cannot Show Underlying Direct Infringement

An inducement claim has a "threshold requirement of direct infringement." *ACCO Brands, Inc. v. ABA Locks Mfrs. Co.*, 501 F.3d 1307, 1312 (Fed. Cir. 2007). "In order to prove direct infringement, a patentee must either point to specific instances of direct infringement or show that the accused device necessarily infringes the patent in suit." *Id.* at 1313. Dr. Goossen does not identify any specific instances of direct infringement nor does he opine that every use of the accused products necessarily infringes. [Ex. B ¶¶187-190, 247-250.] Dr. Goossen's general assertion that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ [Ex. E at 111:5-115:21.] Indeed, Dr. Goossen admitted that "the

extent of [his] analysis" was that "as long as the transmitter is connected to an optical fiber and the receiver is connected to an optical fiber, I believe it infringes the claim," [*id.* at 115:6-21], despite his admission that in the accused products the transmitter and receiver are not connected to the same fiber. [*Id.* at 115:22-25.] His opinions therefore cannot provide sufficient basis for a jury to find that every use of the accused products necessarily infringes the '500 patent.[2] Moreover, Oyster took no discovery from any customers of Defendants and therefore lacks any evidence of how such customers connect the transmitters and the receivers in the accused products.

### 3. Oyster Lacks Sufficient Evidence of Knowledge and Intent

Beyond direct infringement, a claim for induced infringement further requires (1) "specific intent to encourage another's infringement of the patent," *Vita-Mix Corp v. Basic Holding, Inc.*, 581 F.3d 1317, 1328 (Fed. Cir. 2009); and (2) "knowledge that the induced acts constitute patent infringement," *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011); *Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1926-28 (2015). Oyster cannot show either prerequisite.

Although Dr. Goossen

---

[2] Despite his deposition testimony, Dr. Goossen's report suggests in passing that Defendants induce infringement because                                                                                                    [Ex. B ¶¶190, 250.] In addition to being disclosed nowhere in Oysters' contentions, this argument cannot establish that Defendants' customers necessarily infringe. Dr. Goossen admits in "typical" data links, the fiber connected to the transmitter has a multiplexer at its opposite end, not a receiver. [*Id.* ¶64.] Further, Dr. Goossen did not analyze any transmitter-receiver pairs at the opposite ends of Defendants' customers' links for infringement; like Oyster's contentions, his analysis maps the "transmitter" and "receiver" claim limitations to the transmitter and receiver pair contained within an individual unit of the accused products. [*Id.* ¶¶187-189, 247-249.] Having done so, he cannot rely on a different, remote "transmitter" or "receiver," which may not be one of Defendants' products, and may not even be located in the United States, to satisfy the requirement of an optical fiber connected to both components. *See Tex. Instruments, Inc. v. U.S. Int'l Trade Comm'n*, 805 F.2d 1558, 1569 (Fed. Cir. 1986) ("[I]t is the claimed invention as a whole that must be considered in determining whether there is infringement by the accused devices also considered as a whole."). Such an approach would also conflict with Oyster's damages case, which assumes the infringing unit is an individual product.

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████ [Ex. B ¶¶187-190, 247-250.] Thus, even if Oyster could show that a customer did so, Oyster cannot show the intent necessary for induced infringement.

Dr. Goossen's opinions regarding knowledge are even more deficient. They are limited to asserting that ████████████████████████████████████ [*id.*]—he does not at all address whether Defendants had "knowledge that" doing so would "constitute patent infringement," as induced infringement requires. *Global-Tech*, 563 U.S. at 766. That renders his opinions fatally insufficient because the Supreme Court was emphatic "in rejecting any lesser mental state as the standard" for indirect infringement *Commil*, 135 S. Ct. at 1928. Because Oyster has not adduced any other evidence to show the required knowledge, the Court can grant summary judgment of no indirect infringement on this basis alone.

Oyster's failure to show "knowledge that the induced acts constitute patent infringement," *Global-Tech*, 563 U.S. at 766, goes beyond a mere failure of proof. Recall that this is not the first patent lawsuit between these parties. Despite two years of contentious litigation in the prior case, Oyster failed to assert the '500 patent at any point and admits that it did not provide Defendants with any pre-suit notice as to the alleged infringement. [Ex. G at 43:3-19.] Further, Defendants have identified numerous bases for believing that their products do not infringe claim 16 of the '500 patent. For example, Defendants believe that they have a license and release to the '500 patent under the settlement of the prior Oyster-Coriant litigation. [*See* Dkt. 65 at 24-26.] While Oyster may dispute Defendants' interpretation of the scope of these agreement, there is no evidence that Defendants' knew their alleged acts of infringement were unauthorized.

## VI.   CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant partial summary judgment of non-infringement as to claim 16 of the '500 patent.

| | |
|---|---|
| Dated: September 28, 2020 | Respectfully submitted,<br><br>By: *Joseph V. Colaianni*<br><br>Ruffin Cordell<br>Bar No. 04820550<br>cordell@fr.com<br>Indranil Mukerji<br>MA Bar No. 644059<br>mukerji@fr.com<br>Joseph V. Colaianni<br>D.C. Bar No. 454744<br>colaianni@fr.com<br>Christopher Dryer<br>D.C. Bar No. 1022460<br>dryer@fr.com<br>Jack R. Wilson<br>VA Bar No. 91178<br>jwilson@fr.com<br>**FISH & RICHARDSON P.C.**<br>1000 Maine Avenue SW<br>Washington, DC 20024<br>Telephone: (202) 783-5070<br>Facsimile: (202) 783-2331<br><br>Melissa R. Smith<br>SBN 24001351<br>**Gillam & Smith LLP**<br>303 South Washington Avenue<br>Marshall, Texas 75670<br>Telephone: 903-934-8450<br>Fax: 903-934-9257<br>melissa@gillamsmithlaw.com<br><br>*Counsel for Defendants Infinera Corporation, Coriant (USA) Inc., Coriant North America, LLC and Coriant Operations, Inc.* |



## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been served on September 28, 2020, to all counsel of record who are deemed to have consented to electronic service via electronic mail.

Dated: September 28, 2020

/s/ *Melissa R. Smith*