# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| OYSTER OPTICS, LLC, <br><br> Plaintiff, <br><br> v. <br><br> INFINERA CORPORATION, CORIANT (USA) INC., CORIAN NORTHA AMERICA, LLC, and CORIANT OPERATIONS, INC., <br><br> Defendants. | Case No. 2:19-cv-00257-JRG <br><br> **JURY TRIAL DEMANDED** <br><br> REDACTED |

**PLAINTIFF OYSTER OPTICS, LLC'S MOTION FOR SUMMARY JUDGEMENT ON DEFENDANTS' FOURTH COUNTERCLAIM OF DECLARATORY JUDGMENT FOR EXPRESS OR IMPLIED LICENSE AND RELEASE AND RELATED SEVENTH, EIGHTH, AND NINTH AFFIRMATIVE DEFENSES**

Table of Contents

I. INTRODUCTION ..................................................................................................... 1

II. STATEMENT OF THE ISSUES.............................................................................. 2

III. FACTUAL BACKGROUND .................................................................................... 2

IV. STATEMENT OF UNDISPUTED FACTS............................................................. 3

V. RELEVANT LEGAL STANDARDS....................................................................... 5

VI. SUMMARY JUDGMENT IS APPROPRIATE AS TO DEFENDANTS' CLAIMS OF EXPRESS LICENSE, IMPLIED LICENSE, AND RELEASE ......................................... 7

A. Defendants' Claims of Express License Fail As The Oyster-Coriant Agreement's Use of "Related U.S. Patents" Is Limited To Family Patents Sharing The Same Chain of Priority ........................................................................................................................ 7

B. Defendants' Claims of Implied License Fail As Their Rights To Practice The '592 Patent Are Not Necessary To Practice the '500 Patent ................................................. 9

C. Defendants' Claims Of Release Do Nor Survive Even A Cursory Reading Of the Oyster-Coriant Agreement ........................................................................................... 12

VII. CONCLUSION ........................................................................................................ 14

## Table of Authorities

Page

**Cases**

*AMP Inc. v. United States*,
  389 F.2d 448 (Ct. Cl. 1968) .................................................................................. 10

Anderson v. Liberty Lobby, Inc.,
  477 U.S. 242 (1986) .................................................................................................. 6

*Bank of N.Y. Mellon v. WMC Mortgage, LLC*,
  22 N.Y.S.3d 3  (N.Y. Sup. St. 2015) ........................................................................ 9

*Brad H. v. City of New York*,
  17 N.Y.3d 180 (N.Y. Ct. App. 2011) ....................................................................... 6

Bugel v. WPS Niagara Props.,
  19 A.D.3d 1081 (N.Y. App. Div. 2005) ................................................................. 12

*Cahill v. Regan*,
  5 N.Y.2d 292 (N.Y. 1959) ................................................................................ 12, 13

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) .................................................................................................. 6

*Cheetah Omni LLC v. AT&T Services, Inc.*,
  949 F.3d 691 (Fed. Cir. 2020) ............................................................................. 8, 10

*Estes v. New York State Saddle Horse Ass'n Inc.*,
  188 A.D.2d 857 (N.Y. App. Div. 1992) ................................................................. 13

*G3–Purves St., LLC v. Thomson Purves, LLC*,
  101 A.D.3d 37 (N.Y. App. Div. 2012) ..................................................................... 6

*Green v. Lake Placid 1980 Olympic Games, Inc.*,
  147 A.D.2d 860 (N.Y. App. Div. 1989) ................................................................. 13

*Greenfield v. Philles Records*,
  98 N.Y.2d 562 (N.Y. Ct. App. 2002) ....................................................................... 6

*Kaminsky v. Gamache*,
  298 A.D.2d 361 (N.Y. App. Div. 2002) ................................................................. 13

*Lefrak SBN Assoc. v. Kennedy Galleries*,
  203 A.D.2d 256 (N.Y. App. Div. 1994) ................................................................. 12

*Maddaloni Jewelers, Inc. v. Rolex Watch U.S.A., Inc.*,
  354 F. Supp. 2d 293 (S.D.N.Y. 2004) .................................................................... 12

*Mangini v. McClurg*,
  249 N.E.2d 386 (N.Y. 1969) .................................................................................. 13

*Murray-Gardner Mgt. v. Iroquois Gas Transmission Sys.*,
  229 A.D.2d 852 (N.Y. App. Div. 1996) ................................................................. 12

*NRT New York, LLC.*,
  131 A.D. 3d 952 (N.Y. App. Div. 2015) .............................................................. 6, 7

*Omni LLC v. AT&T Services, Inc.*,
  949 F.3d 691 (Fed. Cir. 2020) ............................................................................. 8, 10

*TransCore, LP v. Elec. Transaction Consultants Corp.*,
  563 F.3d 1271 (Fed. Cir. 2009) ......................................................................... 10, 12

*University of New Mexico v. Knight*,
  321 F.3d 1111 (Fed. Cir. 2003) ................................................................................ 8

*Verizon Services Corp. v. Vonage Holdings Corp.*,
  503 F.3d 1295 (Fed. Cir. 2007) ................................................................................ 8

**Statutes**

35 U.S.C. § 119(e) ............................................................................................................... 8
35 U.S.C. 120 ..................................................................................................................... 8
35 U.S.C. 121 ..................................................................................................................... 8
35 U.S.C. 365(c) ................................................................................................................. 8
35 U.S.C. 386(c) ................................................................................................................. 8

**Rules**

37 CFR § 1.76 .................................................................................................................... 8
Fed. R. Civ. P. 56(a) .......................................................................................................... 6

## I. INTRODUCTION

This Court is familiar with Oyster Optics, LLC's ("Oyster") Settlement Agreement and license with Coriant America, Inc. that settled a prior lawsuit between the parties. In Oyster's prior case against Defendant Infinera Corporation, the Court construed that agreement to find that Infinera received the benefit Oyster's license to Coriant through its subsequent acquisition of Coriant. Case No. 2:18-cv-00206-JRG, Dkt. No. 86. Oyster's assertion that Coriant defrauded it into entering the agreement by withholding information about that merger is one of the claims at issue in this action.

At issue in this Motion are Defendants' Counterclaims and Affirmative Defenses that Oyster's Agreement with Coriant somehow gave them the right to practice the claims of the patent asserted in this action, U.S. Patent No, 6,665,500, even though that patent was never previously asserted against any of the Defendants and was not mentioned or referenced in the Oyster-Coriant Agreement. Defendants' claims lack merit and summary judgment should be entered in Oyster's favor thereon.

First, Defendants' claims that they received an express license to practice the '500 Patent as patent "related" to those previously asserted against Coriant does not survive a cursory reading of the agreement. The unambiguous langue of the agreement clearly provides that a "related" patent is family member, or one that shares priority to a licensed patent. This is the standard definition of a "related patent" as used by the Federal Circuit and the United States Patent and Trademark Office. As there is no dispute that '500 Patent does not claim priority to any of the patents subject to the Oyster-Coriant Agreement or vice versa, it is not a related patent as a matter of law. Moreover, Defendants cannot escape their prior representations to this Court that the '500 Patent is "totally different" from those asserted in the prior cases because it is in a different family.

Second, Defendants' claims of implied license ignore the Court's differing claim constructions for the '500 Patent and those in the prior cases with respect to the "phase modulate" terms. Specifically, in the prior cases the Court found that phase modulation excludes amplitude modulation. However, the Court found no such exclusion for the claims at issue in this case based

1

in part on the different teachings in the specifications. For this reason, the claims scopes of the '500 patent and those subject to the license are different, and the '500 patent can be practiced without practicing the licensed claims. Accordingly, there can be no implied license as a matter of law and Defendants' claims fail.

Finally, Defendants' claim of release finds no support in Oyster-Coriant Agreement. That Agreement only released claims concerning the patents-in-suit in that action. As the '500 patent was not asserted in that action, Defendants have no claim that it was released.

Accordingly, Oyster is entitled to summary judgment on Defendants' Fourth Counterclaim and Seventh, Eighth, and Ninth Affirmative Defense for Express License, Implied License, and Release.

## II.  STATEMENT OF THE ISSUES

Whether Oyster is entitled to summary judgment on Defendants' Fourth Counterclaim for Declaratory Judgment of Express or Implied License and Release, Seventh Defense of Express License, Eighth Defense of Implied License, and Ninth Defense of Release as these claims and defenses are based on an untenable reading of the Oyster-Coriant Agreement?

## III.  FACTUAL BACKGROUND

The present action arises out of several actions for patent infringement previously brought by Oyster in this Court. On or about November 24, 2016 Oyster filed a Complaint against Coriant America, Inc. ("Coriant") in this Court asserting infringement of U.S. Patent Nos. 6,469,816 ("'816 Patent"); 6,476,952 (the "'952 Patent"); 6,594,055 (the "'055 Patent"); 7,099,592 (the "'592 Patent"); 7,620,327 (the "'327 Patent"); 8,374,511 (the "'511 Patent"); and 8,913,898 (the "'898 Patent") (the "*Coriant* Action"). Case No. 2:16-cv-01302-JRG, Dkt. No. 1. Around the same time, Oyster also brought case against Infinera Corporation ("Infinera"), asserting infringement of the same patents. Case No. 2:16-cv-01295-JRG. The Court coordinated these actions, along with others, for pre-trial purposes with the *Coriant* Action being designated the lead case. *Coriant* Action, Dkt. Nos. 23, 96.

On or about June 28, 2018, Oyster and Coriant entered into a Settlement and License Agreement (the "Oyster-Coriant Agreement") resolving the *Coriant* Action. Ex. 1.[1] Infinera subsequently acquired Coriant. On June 25, 2019, this Court issued an Order finding Oyster's claims against Infinera related to the above patents were licensed and released as a result of the Oyster-Coriant Agreement. Case No. 2:18-cv-00206-JRG, Dkt. No. 86.

On or about July 30, 2019, Oyster filed its Complaint in the instant action against Infinera, Coriant, and related entities (collectively "Defendants"). Oyster's Complaint, as subsequently amended, asserts one cause of action for patent infringement (among other non-patent causes of action) of U.S. Patent No. 6,665,500 (the "'500 Patent"). See Dkt. No. 33. The '500 Patent was never previously asserted by Oyster in any of its prior litigation with Defendants.

On or about October 7, 2019, Defendants filed their Answer, Affirmative Defenses, and Counterclaims to Oyster's Complaint. Dkt. No. 17. Included therein was Defendants' Fourth Counterclaim for Declaratory Judgment of Express or Implied License and Release, Seventh Defense of Express License, Eighth Defense of Implied License, and Ninth Defense of Release. *Id.* at 8, 17-19. Each of these claims and defenses assert that Oyster's claims as to the '500 Patent are barred based on the Oyster-Coriant Agreement. Oyster is entitled to Summary Judgment on these claims.

## IV. STATEMENT OF UNDISPUTED FACTS

1. The '500 Patent was issued on or about December 16, 2003. Ex. 2.

2. The application that resulted in the '500 Patent, Application No.09/772,018 later published as US2002/01064, was filed on January 29, 2001. *Id.*

3. The '500 Patent does not claim priority to any other patent or patent application. *Id.*

4. U.S. Patent No. 7,099,592 resulted from its own separate application (09/776,438 later published as US 20020105702A1) and does not claim priority to the '500 patent. Ex. 3

---

[1] All Exhibits are attached to the concurrently filed Declaration of Paul A. Kroeger.

5. In the *Coriant* Action, the Court construed "phase modulate" and similar terms for claims 1, 9, and 11 of the '012 patent, claims 1 and 27 of the '055 patent, claim 9 of the '511 patent, claims 1, 5, 10, 13, and 14 of the '592 patent, claims 1, 4, 7, 12, and 19 of the '816 patent, claims 3, 4, 17 and 18 of the '898 patent, and claims 1, 4,5 and 12-14 of the '952 patent to mean "alter the phase of light to create an optical signal having a phase that is representative of data. *Use of phase modulation excludes use of amplitude modulation*." Case No. 2:16-cv-01302-JRG, Dkt. No. 190, *clarified by* Dkt. No. 615 (emphasis added).

6. In this action, the Court has construed the term "phase modulate" and variants as used in claims 1, 8, 16, 17, and 19 to mean "alter the phase of light to create an optical signal having a phase that is representative of data." Dkt. No. 88.

7. In its Claim Construction Order, the Court specifically declined to include the phrase "[u]se of phase modulation excludes use of amplitude modulation" from its ruling in the *Coriant* Action noting that "there is a critical difference between the '500 Patent and the *Oyster I* patents." *Id.* at 9.

8. The Oyster-Coriant Agreement defined "Licensed Patents" in Section 1.3 as follows:



Ex. 1 at 1-2.

9. "Patents-in-suit" as used in Section 1.3 is defined in the recitals to mean "U.S. Patent Nos. 6,594,055; 6469,816; 6,476,952; 7,099,592; 8,913,898, 7,620,327; 8,374,511; and 9,363,012." Ex. 1 at 1.

10. Appendix B to the Oyster-Coriant Agreement does not include the '500 Patent. Ex. 1 at 13.

11. Oyster's Release to the Coriant Defendants is set forth in Section 3.1 of the Oyster Coriant-Agreement. Ex. 1 at 2-3. It includes the following language:



Ex. 1 at 2-3.

12. "Litigation" as used in Section 3.1 of Oyster-Coriant Agreement is defined in the recitals as follows:



Ex. 1. at 1.

13. On or about February 26, 2018, Infinera filed a "Motion to Exclude Opinions and Expert Testimony of Mr. Stephen Dell Pursuant to Federal Rule of Evidence 702 and *Daubert*." Case 2:16-cv-01302-JRG, Dkt. No 257.

14. In that Motion, Infinera contended that the opinions of Oyster's damages expert Stephen Dell concerning the proper reasonably royalty for the patents-in-suit should be excluded for among the following reasons:

> The first problem with Mr. Dell's reliance on these agreements is that both the SHF and Discovery agreements each granted specific rights only to ***a totally different patent in Oyster's portfolio (U.S. Patent No. 6,665,500). But the '500 Patent is not: (a) a patent-in-suit; (b) a family member to any patent-in-suit; or (c) subject to the same terminal disclaimer as each of the patents-in-suit.*** Accordingly, these agreements—by definition—are not appropriately considered as Factor 1 licenses and, thus, are not "highly probative" as to what the reasonable royalty would be in this case.

*Id.* at 8 (emphasis added).

## V.    RELEVANT LEGAL STANDARDS

Summary judgment is warranted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). A dispute is genuine only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Id. at 258.

The Oyster-Coriant Agreement is governed by New York law. (OFA at § 9). Under New York law, "[t]he fundamental, neutral precept of contract interpretation is that agreements are construed in accord with the parties' intent." *Greenfield v. Philles Records*, 98 N.Y.2d 562, 569, (N.Y. Ct. App. 2002). "[A] written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms." *Id.* "To determine whether a writing is unambiguous, language should not be read in isolation because the contract must be considered as a whole." *Brad H. v. City of New York*, 17 N.Y.3d 180, 185 (N.Y. Ct. App. 2011). Only if the language of the contract is susceptible of more than one reasonable interpretation, the contract will be considered ambiguous. *Id.* at 186.

"The threshold question of whether a contract is unambiguous, and the subsequent construction and interpretation of an unambiguous contract, are issues of law within the province of the court." *NRT New York, LLC.*, 131 A.D. 3d 952, 954 (N.Y. App. Div. 2015). "[W]hen interpreting a contract, the court should arrive at a construction which will give fair meaning to all of the language employed by the parties to reach a practical interpretation of the expressions of the parties so that their reasonable expectations will be realized." *G3–Purves St., LLC v. Thomson Purves, LLC*, 101 A.D.3d 37, 40 (N.Y. App. Div. 2012). "Extrinsic and parol evidence of the parties' intent may not be admitted to create ambiguity in a contract that is unambiguous on its

6

face, but such evidence may be considered where a contract is determined to be ambiguous." *NRT New York, LLC*, 131 A.D. at 258.

## VI. SUMMARY JUDGMENT IS APPROPRIATE AS TO DEFENDANTS' CLAIMS OF EXPRESS LICENSE, IMPLIED LICENSE, AND RELEASE

### A. Defendants' Claims of Express License Fail As The Oyster-Coriant Agreement's Use of "Related U.S. Patents" Is Limited To Family Patents Sharing The Same Chain of Priority

Defendants' Fourth Counterclaim and Seventh Affirmative Defense contend that they have an express license to the '500 Patent as it is "related" to the patents licensed thereunder. Dkt. No. 17. Defendants contend the '500 Patent is related because its specification incorporates the specification of several of the licensed patents including the '592 Patent and '055 Patent. Dkt. No. 17, ¶¶ 41-42. Likewise, Defendants' technical expert, Dr. Paul Prucnal opines that "'500 Patent is substantially similar and closely related from technical perspective to that disclosed in the '592 Patent and '055 Patent" because they contain similar subject matter and "[a]ll of these patents name Mr. Snawerdt as the sole inventor, arose from the same body of work, and claim priority to applications filed in the 2001-02 time frame." Ex. 4, ¶¶ 176-184. Oyster is entitled to summary judgment on this claim a defense because it is based on an untenable interpretation of "related" as used in the Oyster-Coriant Agreement, which is limited to family member patents as a matter of law.

As noted above, the Oyster-Coriant Agreement defined "Licensed Patents" as follows:

[redacted]

Ex. 1 at 1-2. "Patents-in-suit" was defined and limited to mean "U.S. Patent Nos. 6,594,055; 6469,816; 6,476,952; 7,099,592; 8,913,898, 7,620,327; 8,374,511; and 9,363,012." Ex. 1 at 1. In referring to "classes and types of related U.S patents, U.S. patent applications and U.S. patent rights" the Oyster-Coriant Agreement is unambiguous that it is referring solely to patents and

applications that are family members and share the same priority date. *Id.* at 1-2. This definition is shown by the fact it expressly references "divisions, continuations, continuations-in-part, reissues and reexaminations or extensions."

That "classes and types or related U.S. patents" is limited to family members sharing the same priority is also how this term is typically understood and used in patent law. For example, this is the definition used by the Federal Circuit when referring to "related" patents." *See, e.g.*, *Regents of the University of New Mexico v. Knight*, 321 F.3d 1111 (Fed. Cir. 2003) (referring to "five continuation-in-part ('CIP') applications" as "related patents and applications."); *Verizon Services Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1306, 1312 (Fed. Cir. 2007) ("related patent of the same family of the '880 patents;" referring to patent that issued as a divisional application as "related"); *Cheetah Omni LLC v. AT&T Services, Inc.*, 949 F.3d 691, 695-96 (Fed. Cir. 2020) (later issued patent sharing same prior date is "related"). This same definition is used in the U.S. Patent And Trademark Office's Manual of Patent Examining Procedure ("MPEP").[2] *See, e.g.*, MPEP § 215 ("related Application . . . (to which present application claims the benefit under 35 U.S.C. 120, 121, 365(c)), or 386(c) or is a reissue application of a patent issued on the related application"). *See also* USPTO Nonprovisional (Utility) Patent Application Guide, ("Cross Reference to **Related** Applications" "Any nonprovisional utility patent application filed after September 16, 2012 claiming the benefit of one or more prior-filed copending nonprovisional applications (or international applications designating the United States of America) under 35 U.S.C. §§ 120, 121, or 365(c), or to a provisional patent application under 35 U.S.C. § 119(e), must present the reference to the earlier application in an application data sheet under 37 CFR § 1.76.").[3]

Nothing in the Oyster-Coriant Agreement suggests any intent by the parties to use anything other the standard meaning afforded "related patents" under patent law. Indeed, Defendants'

---

[2] *Available at*: https://www.uspto.gov/web/offices/pac/mpep/index.html.
[3] *Available at*: https://www.uspto.gov/patents-getting-started/patent-basics/types-patent-applications/nonprovisional-utility-patent#heading-11

8

contention that "related" stretches beyond family member patents and includes patents with similar subject matter would improperly render the "without limitation" language of Section 1.3 and listing of patents in Appendix B superfluous. *See Bank of N.Y. Mellon v. WMC Mortgage, LLC*, 22 N.Y.S.3d 3, 5 (N.Y. Sup. St. 2015) ("[C]ourts may not by construction add or excise terms, nor distort the meaning of those used and thereby make a new contract for the parties under the guise of interpreting the writing."). Indeed, Defendants' interpretation would provide them to a license for all of Mr. Snaewerdt's patents regardless of whether they were specifically listed in the agreement as long as they were developed around the same.

Thus, as there is no dispute that the '500 Patent does not claim prior to any of the Patents-in-Suit in the Coriant Action, and that none of the expressly licensed patents in the Oyster-Coriant Agreement claim priority to the '500 Patent, the 'Patent is not a "related U.S. Patent" as that term is used in the agreement as a matter of law. For this reason, Defendants' claim of express license to the '500 Patent fails.

Moreover, even if the Court were to accept Defendants' interpretation that Oyster-Coriant Agreement extended to "related" and non-family member patents, Defendants' claims of license still fail in light of Infinera's express representation to this Court that '500 Patent is "***totally different***" from those involved in the prior *Coriant* Litigation. Case 2:16-cv-01302-JRG, Dkt. No 257 at 8. Moreover, it bears noting that Infinera represented to this Court that the '500 Patent was "totally different was because it was not a family member. *Id.* Infinera specifically highlighted that "***the '500 Patent is not: (a) a patent-in-suit; (b) a family member to any patent-in-suit; or (c) subject to the same terminal disclaimer as each of the patents-in-suit.***" *Id.*[4]

For all of these reasons, Infinera's claims of express license to the '500 Patent fail.

### B. Defendants' Claims of Implied License Fail As Their Rights To Practice The '592 Patent Are Not Necessary To Practice the '500 Patent

---

[4] This view that the '500 Patent was "totally different" from the patents-asserted in the *Coriant* Action was not Infinera's alone. Defendants Cisco and Huawei took identical positions. Case 2:16-cv-01302-JRG, Dkt. Nos. 249 at 8-9, 258 at 6

Defendants' Fourth Counterclaim and Eight Affirmative Defense include implied license of legal estoppel. Defendants essentially claim that cannot practice licensed claims 5, 10 and 14 of the '592 Patent without also practicing claim 16 of the '500 Patent. Dkt. No. 17 at ¶¶44-46. *See also* Ex.4., Prucnal Report, ¶¶ 185-199. Defendants' claims fail as a matter of law because they do not account for this Court's differing construction of the "phase modulate" terms used in those two patents which shows that their claim scope is very different and not co-extensive.

Implied license arises from the doctrine of legal estoppel. *TransCore, LP v. Elec. Transaction Consultants Corp.*, 563 F.3d 1271, 1279 (Fed. Cir. 2009). "The essence of legal estoppel that can be found in the estoppel of the implied license doctrine involves the fact that the licensor (or assignor) has licensed (or assigned) ***a definable property right*** for valuable consideration, and then has attempted to derogate or detract from that." *Id.* (emphasis added). In other words, patent owner may not typically bring an action for the same infringement after licensing a patent, even though a different patent may be involved. *Id.* quoting *AMP Inc. v. United States*, 389 F.2d 448 (Ct. Cl. 1968) ("'[W]hen a person sells a patent which employs an invention which infringes a prior patent, the person is estopped from bring an action against his grantee ***for that infringement***, even though the earlier patent is acquired after the sale of the later patent. The same principle applies to the grant of a patent right by license as well as assignment." (emphasis added).

An implied license to another patent only extends to rights "necessary to practice" the license patent rights. *TransCore*, 563 F.3d at 1279. In other words, the right to practice the patent subject to an implied license must "necessarily [be] coextensive with the rights" the infringer received from the previous license. *Id.* Moreover a showing that "it is possible to practice the" licensed rights "without infringing" the claims subject to a purported implied license, may defeat such a claim. *Id.* at 1279, n.3.

Moreover, implied license is typically only extended to "***related***, later-issued patent[s]**."** *Cheetah Omni LLC v. AT&T Services, Inc.*, 949 F.3d 691, 696 (Fed. Cir. 2020). For example, the

10

Federal Circuit has found that the doctrine of implied license extends to "a continuation of [a] continuation" of "an expressly licensed patent" absent a carveout in the license agreement. *Id.*

Defendants' claim of implied license arises out of a comparison of claim 14 of the '592 Patent and claim 16 of the '500 Patent. Dkt. No. 17 at ¶¶44-46. *See also* Ex. 4., Prucnal Report, ¶¶ 185-199; Ex. 5, Prucnal Depo. Tr. at 9:21-11:22. Claim 14 of the '592 Patent recites:

> 14. A card for transmitting data over at least one optical fiber, the card comprising:
>
> a transmitter having at least one laser and a single phase modulator for phase modulating all of the light from the laser so as to create phase-modulated optical signals in the light as a function of an input electronic data stream;
>
> a receiver having an interferometer for reading received optical signals; and
>
> a switch for switching between an amplitude-modulated mode and a phase-modulated mode.

While claim 16 of the '500 Patent recites:

> Claim 16. A dual-mode optical transmission system comprising:
>
> [a] transmitter having a laser for transmitting amplitude-modulated signals in a first mode and phase-modulated signals in a second mode and a controller for switching an output of the laser between the first mode and the second mode,
>
> [b] the second mode occurring at a different time than the first mode;
>
> [c] an optical fiber connected to the transmitter; and
>
> [d] a receiver having an interferometer being connected to the optical fiber.

Although the claims have superficial similarities, the Court's claim constructions show that their claim scope is very different. Specifically, this Court has construed "phase modulated" as used in the '592 Patent to mean alter the phase of light to create an optical signal having a phase that is representative of data. *Use of phase modulation excludes use of amplitude modulation*."

11

Case No. 2:16-cv-01302-JRG, Dkt. No. 190, *clarified by* Dkt. No. 615 (emphasis added). Whereas this Court's construction of the "phase modulate" terms of the '500 Patent do not have the restriction that phase modulation excludes amplitude modulation. This means that in the situation were both phase modulation and amplitude modulation are used in the first mode, this system would infringe the claim 16 of the '500 Patent but would not infringe claim 14 of the '592 Patent. For this reason, the two claims are not "coextensive" in scope.

Accordingly, even if Defendants' have authority that doctrine of implied license applies to unrelated patents, their claim of implied license to the '500 Patent still fails because one can infringe the claims of the '500 Patent without infringing the claims of the '592 Patent. For this reason, Oyster is entitled to Summary Judgment on Defendants' claims of implied license. *TransCore*, 563 F.3d at 1279 (the right to practice the patent subject to an implied license must "necessarily [be] coextensive with the rights" the infringer received from the previous license).

### C. Defendants' Claims Of Release Do Nor Survive Even A Cursory Reading Of the Oyster-Coriant Agreement

Finally, Defendants' Fourth Counterclaim and Ninth Affirmative Defense concern "Release" based on the Oyster-Coriant Agreement. Once again, these claims are based on legally erroneous reading of the Agreement. Accordingly, Oyster is entitled to Summary Judgment as a matter of law.

New York law interprets releases in settlement agreements narrowly, to cover the cases that the parties actually intended to settle. Even in the situation not present here, where the literal meaning of a release provision covers other matters, "a release may not be read to cover matters which the parties did not desire or intend to dispose of." *Cahill v. Regan*, 5 N.Y.2d 292, 299 (N.Y. 1959); see Bugel v. WPS Niagara Props., 19 A.D.3d 1081 at 1082-83 (N.Y. App. Div. 2005); *Murray-Gardner Mgt. v. Iroquois Gas Transmission Sys.*, 229 A.D.2d 852, 854 (N.Y. App. Div. 1996); *Lefrak SBN Assoc. v. Kennedy Galleries*, 203 A.D.2d 256 (N.Y. App. Div. 1994); *see Maddaloni Jewelers, Inc. v. Rolex Watch U.S.A., Inc.*, 354 F. Supp. 2d 293, 299 (S.D.N.Y. 2004) ("A release that employs general terms will not bar claims outside the parties' contemplation at

the time the release was executed."); *Estes v. New York State Saddle Horse Ass'n Inc.*,188 A.D.2d 857, 859 (N.Y. App. Div. 1992) (same).

New York courts interpret releases under "special rules" and caution that a release's "literal language should not be determinative of the ultimate result or be applied mechanically." *Mangini v. McClurg*, 249 N.E.2d 386, 390 (N.Y. 1969) ("the cases are many in which the release has been avoided with respect to uncontemplated transactions despite the generality of the language in the release form" (collecting cases)). In particular, New York courts apply the rule of ejusdem generis to releases and hold that recitals that identify the specific litigation being settled clarify and limit the scope of otherwise general release language. *Green v. Lake Placid 1980 Olympic Games, Inc.*, 147 A.D.2d 860, 862 (N.Y. App. Div. 1989) (citing treatise); *Kaminsky v. Gamache*, 298 A.D.2d 361, 361-62 (N.Y. App. Div. 2002) (same).

The *Cahill* case is illustrative. This case involved a suit by the estate of an employer against a former employee seeking ownership of a patent that the employee had invented while he was still employed, or in the alternative, "shop rights" to use the patented invention without compensation. *Cahill*, 5 N.Y.2d at 295. The defendant had previously sued the employer, and the parties had settled that suit with an exchange of general releases. *Id.* at 296. Unbeknownst to the employer at that time, the employee had already applied for a patent based upon the work he had done for the employer. Id. New York's highest court held that the release did not extend to the employer's patent-related claims, as it could not have intended to release claims associated with a patent application it was unaware of. *Id.* at 299.

Here, the scope of the release agreed to by Oyster and Coriant was clear. It applied only to



Ex. 1 at 2-3, ¶3.1 (emphasis added). As discussed above, the '500 Patent, is not a "Licensed Patent" as used in this definition. Accordingly,

the did not intend, and could not have intended, to release the claims concerning the '500 patent at issue in this suit.

Accordingly, Oyster is entitled to summary judgment on Defendants' claims of release.

## VII. CONCLUSION

For all of the foregoing reasons, Oyster is entitled to summary judgment on Defendants' Fourth Counterclaim and Seventh, Eighth, and Ninth Affirmative Defense for Express License, Implied License, and Release.

Dated: September 28, 2020

Respectfully submitted,

By: */s/ Paul A. Kroeger*
Marc A. Fenster (CA SBN 181067)
Email: mfenster@raklaw.com
Reza Mirzaie (CA SBN 246953)
Email: rmirzaie@raklaw.com
Paul Kroeger (CA SBN 229074)
Email: pkroeger@raklaw.com
Neil Rubin (CA SBN 250761)
Email: nrubin@raklaw.com
RUSS AUGUST & KABAT
12424 Wilshire Boulevard, 12th Floor
Los Angeles, CA 90025
Telephone: 310/826-7474
Facsimile 310/826-6991

**CERTIFICATE OF SERVICE**

I hereby certify that the counsel of record who are deemed to have consented to electronic service are being served on September 28, 2020 with a copy of this document via the Court's ECF system.


DATED: September 28, 2020                     Respectfully submitted,

                                              By: /*s/ Paul A. Kroeger*
                                                  Paul A. Kroeger