UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

MARSHALL DIVISION

| | |
|---|---|
| OYSTER OPTICS, LLC,<br><br>    Plaintiff,<br><br> v.<br><br>INFINERA CORPORATION, CORIANT (USA) INC., CORIANT NORTH AMERICA, LLC, and CORIANT OPERATIONS, INC.<br><br>    Defendants. | Case No. 2:19-cv-00257 |

**PLAINTIFF OYSTER OPTICS, LLC'S OPPOSITION TO DEFENDANTS' MOTION TO EXLCUDE OPINIONS AND EXPERT TESTIMONY OF DR. KETIH GOOSSEN PURSUANT TO FEDERAL RULE OF EVIDENCE 702 AND *DAUBERT***

# Table of Contents

**Page No.**

I. INTRODUCTION ................................................................................................................ 1

II. DR. GOOSSEN'S TECHNICAL OPINIONS AS TO THE BENEFITS OF THE PATENTED TECHOLOGY AND INDUCEMENT ARE PROPER .............................. 2

III. DR. GOOSSEN'S INFRINGEMENT OPINIONS WERE TIMELY DISCLOSED ....... 4

    A. Legal Standard ................................................................................................. 4

        1. Expert Reports And Infringement Contentions Are Not Coextensive ............... 4

        2. Exclusion of Evidence is a Severe Sanction Requiring Proof of Prejudice ....... 5

    B. Oyster Never Abandoned Its Claims of Induced Infringement .................................. 6

    C. Dr. Goossen's Opinions Regarding The Internal Optical Fiber Were Disclosed In Oyster's Infringement Contentions ................................................................. 7

    D. Dr. Goossen's Opinions Regarding the "Controller" Limitation Are Based On The Same Theory Set Forth In The Amended Infringement Contentions .......................... 7

    E. Dr. Goossen's Reliance on the Lipscomb Article is Proper ......................................... 9

    F. Imposition Of The Severe Sanction of Exclusion Is Unwarranted ........................... 10

        1. Defendants Are Not Prejudiced ......................................................................... 10

        2. There is no need for a continuance ................................................................... 11

        3. The evidence Defendants seeks to preclude is of paramount importance ....... 12

        4. Any purported deficiency in the contentions is due to Defendants' deficient discovery ........................................................................................................... 12

IV. DEFENDANTS' ATTACKS ON DR. GOOSEN'S SECONDARY CONSIDERATIONS LACK MERIT ............................................................................. 12

V. CONCLUSION ................................................................................................................ 13

**Table of Authorities**

**Page No.**

**Cases**

*Alfonso Cioffi v. Google,*
  Case No. 13-cv-103, D.I. 213 (E.D. Tex. Jan. 10, 2017) .......................................................... 11

*AntiCancer, Inc. v. Pfizer, Inc.,*
  769 F.3d 1323 (Fed. Cir. 2014) ................................................................................................. 4

*Ashland Oil, Inc. v. Delta Resins & Refractories, Inc.,*
  776 F.2d 281, 305 n.42 (Fed. Cir. 1985) ................................................................................. 13

*Biogen Idec., Inc. v. GlaxoSmithKline, LLC,*
  713 F.3d 1090 (Fed. Cir. 2013) ............................................................................................... 10

*Current v. Atochem N. Am.,*
  2001 WL 36101282 (W.D. Tex. Sept. 18, 2001) ...................................................................... 5

*DataQuill Ltd. v. Handspring, Inc.,*
  2003 WL 25696445 (N.D. Ill. Dec. 19, 2003) .......................................................................... 5

*DataTreasury v. Wells Fargo,*
  2010 WL 3912486 (E.D. Tex. Sept. 13, 2010) ....................................................................... 11

*Digital Reg of Texas, LLC v. Adobe Sys. Inc.,*
  2014 WL 1653131 (N.D. Cal. Apr. 24, 2014) ...................................................................... 5, 9

*Eli Lilly & Co. v. Dr. Reddy's Labs.,*
  2017 WL 3894956 (S.D. Ind. Sept. 6, 2017) .......................................................................... 11

*Fenner Invs., Ltd. v. Hewlett-Packard Co.,*
  2010 WL 786606 (E.D. Tex. Feb. 26, 2010) ............................................................................ 4

*First Assembly of God Church v. Fondren,*
  Case No. 5:02CV47, 2003 WL 25685226 (E.D. Tex. Jan. 8, 2003) ..................................... 4, 7

*Freeland v. Amigo,*
  103 F.3d 1271 (6th Cir. 1997) .................................................................................................. 5

*Godo Kaisha IP Bridge 1 v. Broadcom Ltd.,*
  Case No. 2:16-cv-134-JRG-RSP, D.I. 290 (E.D. Tex. May 1, 2017) ....................................... 5

*In re Paoli R.R. Litig.,*
  35 F.3d 717 (3d Cir. 1994) ........................................................................................................ 5

*Innogenetics, N.V. v. Abbott Labs.,*
  512 F.3d 1363 (Fed. Cir. 2008) ............................................................................................... 10

*Laserdynamics, Inc. v. Quanta Computer, Inc.,*
  Case No. 06-cv-348, D.I. 724 (E.D. Tex. Jan. 18, 2011) ........................................................ 11

*Linex Techs., Inc. v. Belkin Int'l, Inc.,*
  628 F. Supp. 2d 703 (E.D. Tex. 2008) ...................................................................................... 4

*MacLean-Fogg Co. v. Eaton Corp.*,
  2008 WL 4601476, *2 (E.D. Tex. Oct. 6, 2008) .................................................................. 12

*Nike, Inc. v. Adidas America, Inc.*,
  479 F. Supp. 2d 664 (E.D. Tex. 2007) ................................................................................... 6

*Paltalk Holdings, Inc. v. Microsoft Corp.*,
  Case No. 2:06-cv-367 (DF), D.I. 204 (E.D. Tex. Feb. 11, 2009) ............................................ 10

*PeridiemCo, LLC v. Industrack LLC*,
  15-CV-727-JRG-RSP, D.I. 257 (E.D. Tex. Oct. 24, 2016) ................................................. 4, 6

*Primrose Operating Co. v. Nat'l American Ins. Co.*,
  382 F.3d 546 (5th Cir. 2004) ................................................................................................... 5

*Realtime Data v. Actian Corp.*,
  Case No. 15-cv-463, D.I. 510 (E.D. Tex. Apr. 17, 2017) ....................................................... 11

*Rembrandt Wireless Tech., LP v. Samsung Elec. Co. Ltd.*,
  Case No. 2:13-cv-00213, D.I. 227 at 5 (E.D. Tex. Jan. 23, 2015) ............................................ 6

*Roy-G-Biv Corp. v. ABB, Ltd.*,
  63 F. Supp. 3d 690 (E.D. Tex. 2014) ....................................................................................... 4

*Tinnus Ent., v. Telebrands Corp.*
  Case No. 16-cv-33-RWS, D.I. 343 (E.D. Tex. July 12, 2017) ............................................... 11

*TiVo v. DISH Network*,
  Case No. 04-cv-01, D.I. 928 (E.D. Tex. June 2, 2009) .......................................................... 11

*United States v. Katz*,
  178 F.3d 368 (5th Cir. 1999) ................................................................................................... 6

I.       **INTRODUCTION**

Defendants' motion to strike Dr. Goossen's opinions is a series of strawman arguments untethered to the actual allegations of Dr. Goossen's reports or Oyster's infringement contentions. For example, Defendants' statement that Dr. Goossen offers "opinions regarding the personal motivations and subjected beliefs of Infinera's customers," Dkt. No. 106. at 3, finds no support in Dr. Goossen's actual report which Defendants avoid quoting in their motion. Instead, Dr. Goossen offers technical opinions as to the benefits provided by the use of the patented technology. Dr. Goossen is fully qualified to render these opinions. Interviewing Defendants' customers was not required or necessary to render these opinions—indeed Defendants did not identify any such customers in their initial disclosures.

Likewise, Defendants' contention that Dr. Goossen's opinions are inconsistent with Oyster's infringement contentions misrepresents Oyster's contentions. Specifically: (1) Oyster never abandoned its claims of induced infringement; (2) Oyster never limited its infringement read for the "optical fiber" limitation to just the "external fiber;" and (3) Oyster's infringement contentions specifically mention the MZM Drivers in the controller limitation about which Defendants' complain. Indeed, Dr. Goossen's opinions are all based on the same kinds (and in the most cases identical) of documents and figures contained in the contentions.

Moreover, Defendants request to strike the Lipscomb article makes little sense. Defendants do not complain that that its teaching is inconsistent with Oyster's infringement allegations. Moreover, Dr. Goossen timely disclosed this article by including it in his report. Defendants' apparent attempt to engage in a late claim construction of the interferometer term as a basis of excluding this opinion should be rejected.

Finally, Dr. Goossen's secondary considerations opinions are appropriately accompanied by sufficient testimony of nexus. That Defendants' simply disagree with Dr. Goossen's opinions about the benefits afforded by the patented technology, goes to the weight of the opinions, not their admissibility.

Defendants' motion should be denied on all grounds.

## II.   DR. GOOSSEN'S TECHNICAL OPINIONS AS TO THE BENEFITS OF THE PATENTED TECHOLOGY AND INDUCEMENT ARE PROPER

Defendants' motion greatly mischaracterizes Dr. Goossen's report. He does not purport to render "opinions regarding the personal motivations and subjected beliefs of Infinera's customers." Dkt. No. 106. at 3. Instead, in the challenged paragraphs, *which Defendants never even quote from*, Dr. Goossen provides opinions as to the technical benefits provided by the patented technology:

> In my opinion, the benefits of the '500 Patent include allowing Infinera's customers to enjoy additional flexibility beyond only using amplitude modulation or phase modulation and allowing the client to use both amplitude modulation and phase modulation in the same mode. The flexibility enabled by the '500 Patent also provides for additional benefits of the use of phase modulation within the same system provides the capability for the user to send more data over longer distances, which is of fundamental importance to optical network providers as the amount of data consumption continues to grow rapidly.
>
> By allowing two modes where one mode ranges from pure phase modulation to phase and-amplitude modulation (e.g., QAM), and another mode which ranges from pure amplitude modulation to phase-and-amplitude modulation, the patent allows the user to select a mode tailored to the particular application, optimized for distance/data rate/cost based on the "Capacity vs. Reach" tradeoff depicted below, a tremendous economic benefit:

Ex. A,[1] ¶¶ 87-88. *See also* Eh. B ¶¶216-217. Contrary to Defendants' contentions, Dr. Goossen's opinions are factually supported by: (1) the deposition testimony of the inventor of the '500 Patent Peter Snaewerdt (Ex. A, ¶¶ 86, 87); (2) technical documents produced by Infinera in this case (Ex. A, ¶ 88); and (3) the testimony of Infinera's 30(b)(6) witnesses (Ex. A, ¶ 89), Mr. Spinnler and Mr. Sun.[2]

Likewise, Dr. Goossen's "inducement" opinions, do not purport to opine as to the state of mind of Infinera's customers, but simply offer technical opinions as to how the products operate:

---

[1] All lettered exhibits refer to exhibits attached by Defendants to their motion. All numbered exhibits are attached to the concurrently filed declaration of Paul A. Kroeger.
[2] Curiously, Defendants do not move to strike Paragraph 89 of Dr. Goossen's infringement report which offers the same opinions as benefits found in paragraphs 86-88, but cites to the deposition testimony of their witnesses.

2

> [T]he purpose of the Accused Products is to communicate data optically over a fiber. This can only happen if a receiver is connected at the opposite end of the fiber. Defendants, as manufacturers and sellers of optical fiber telecommunications transceivers know and intend that their customers will connect transmitters to receivers over optical fibers. They also know and intend that the transmitter and receiver that are connected in this way will both be products sold by Defendants. They provide extensive documentation explaining how to successfully communicate data over such a fiber connections. For these reasons, Defendants induce their customers to connect receivers to transmitters over optical fibers and thereby satisfy this claim element.

Ex. B. ¶ 190. Indeed, Paragraph 248, which Defendants move to strike, is supported by the testimony of Infinera's own witness, Dr. Spinnler, concerning how Infinera's customers use its products. Ex. B, ¶ 198.[3]

And, Dr. Goossen's opinion concerning non-infringing alternatives in paragraph 255 was only pointing out the absence of evidence supporting those alternatives on which Defendants bear the burden of proof:

> After reviewing Defendants' interrogatory response on this issue, it also appears they make vague assertions about other alleged potentially non-infringing alternatives, but never identify any other one. Instead, they just cite dozens of pages of transcript from the depositions of the inventor and Oyster Optics's corporate representative. But those very large spans of pages also do not refer to any specific non-infringing alternatives. In fact, the only discussion of technical matters in those large spans of pages concerns the advancement of the inventor's claimed inventions over the prior art, which was missing all of the technical advantages of the claimed inventions, which I discussed elsewhere in this report. So, the extent Defendants' are vaguely referring to this prior art as a noninfringing "alternative," there is no evidence that it is a true alternative to Infinera's customers, let alone a technical or commercially acceptable alternative to customers in the optical networking field well over a dozen years after the date of the claimed inventions.

Ex. A, ¶ 255.

All of the above opinions are unquestionably proper in light of Dr. Goossen's technical expertise. Ex. 1. Moreover, Defendants' repeated contention that Dr. Goossen was required to consult with Infinera witnesses before rendering these opinions rings hollow at least in light of the fact that Defendants never identified any such witnesses in their initial disclosures. Ex. 2. Moreover, as Dr. Goossen's opinions are technical in nature consulting such customers was not required.

---

[3] Defendants' Motion erroneously identifies Paragraph 198 as offering an inducement opinion. Dkt. No. 106 at 4.

Defendants' motion is not really an attack on Dr. Goossen's qualifications or methodology. Instead, they are asking the Court to weigh the evidence and find their version of the facts concerning benefits to be correct. Dkt. No. 106 at 4-5. Such a request and finding is improper for a motion to strike. *See First Assembly of God Church v. Fondren*, Case No. 5:02CV47, 2003 WL 25685226, at *4 (E.D. Tex. Jan. 8, 2003) ("The focus of the *Daubert* inquiry should be on the methodology used, not on the conclusions reached."); *Id.* at *7 ("a *Daubert* analysis should not supplant trial on the merits."). The Motion should be denied.

## III. DR. GOOSSEN'S INFRINGEMENT OPINIONS WERE TIMELY DISCLOSED
### A. Legal Standard
#### 1. Expert Reports And Infringement Contentions Are Not Coextensive

"Infringement contentions are not meant to provide a forum for litigation of the substantive issues; they are merely designed to streamline the discovery process." *Linex Techs., Inc. v. Belkin Int'l, Inc.*, 628 F. Supp. 2d 703, 713 (E.D. Tex. 2008); *AntiCancer, Inc. v. Pfizer, Inc.*, 769 F.3d 1323 (Fed. Cir. 2014) (same); *Fenner Invs., Ltd. v. Hewlett-Packard Co.,* 2010 WL 786606 (E.D. Tex. Feb. 26, 2010) ("[T]he burden of notice the Patent Rules place on plaintiffs is intended to be a shield for defendants, not a sword.").

"[T]he Patent Rules do not impose a draconian burden on plaintiffs." *PeridiemCo, LLC v. Industrack LLC*, 15-CV-727-JRG-RSP, D.I. 257 (E.D. Tex. Oct. 24, 2016). "The Patent Rules intend to strike a balance of providing fair notice to defendants without requiring unrealistic, or overly factual contentions from plaintiffs." Id. Infringement contentions "need not meet the level of detail required, for example, on a motion for summary judgment on the issue of infringement." *Roy-G-Biv Corp. v. ABB, Ltd.*, 63 F. Supp. 3d 690, 699 (E.D. Tex. 2014).

"The scope of infringement contentions and expert reports are not … coextensive." *Id.* "Infringement contentions need not disclose 'specific evidence nor do they require a plaintiff to prove its infringement case,'…whereas expert reports must include a complete statement of the expert's opinions, the basis and reasons for them." *Id.* An expert report does not merely repeat

4

infringement contentions; indeed, "[t]hat the expert report includes information outside of the infringement contentions…is to be expected." *Digital Reg of Texas, LLC v. Adobe Sys. Inc.*, 2014 WL 1653131, *5 (N.D. Cal. Apr. 24, 2014) ("That the expert reports include new allegations concerning 'soft privileges' does not require that the allegations be present in the infringement contentions, because Plaintiff is not required to prove its infringement case at the IC stage.").

### 2. Exclusion of Evidence is a Severe Sanction Requiring Proof of Prejudice

Expert opinion is critical evidence in a patent case, and "[t]he exclusion of critical evidence is an extreme sanction." *Current v. Atochem N. Am.*, 2001 WL 36101282, *3 (W.D. Tex. Sept. 18, 2001); *Freeland v. Amigo*, 103 F.3d 1271, 1281 (6th Cir. 1997) ("the district court abused its discretion in imposing the harsh sanction of preclusion of plaintiffs' expert witnesses ... The district court is reversed on this issue."); *In re Paoli R.R. Litig.*, 35 F.3d 717, 791–92 (3d Cir. 1994) ("[T]he exclusion of critical evidence is an 'extreme' sanction, not normally to be imposed absent a showing of willful deception or 'flagrant disregard' of a court order"; reversing district court's exclusion of expert testimony because "the district court could have imposed a lesser sanction such as providing the defendants with the opportunity to re-depose Dr. DiGregorio"); *DataQuill Ltd. v. Handspring, Inc.*, 2003 WL 25696445, *1 (N.D. Ill. Dec. 19, 2003) ("the extreme sanction of exclusion [of expert testimony] is not warranted" because there was "a full opportunity to inquire into [the expert's] contentions and the bases for his opinions at his deposition").

"The Fifth Circuit applies a four-factor test to determine whether exclusion of expert testimony based on the undisclosed information is an appropriate remedy: (1) the explanation, if any, for the failure; (2) the prejudice; (3) the possibility of curing such prejudice by granting a continuance; and (4) the importance of the evidence." *Godo Kaisha IP Bridge 1 v. Broadcom Ltd.*, Case No. 2:16-cv-134-JRG-RSP, D.I. 290 (E.D. Tex. May 1, 2017); *Primrose Operating Co. v. Nat'l American Ins. Co.*, 382 F.3d 546, 563-64 (5th Cir. 2004) (allowing expert testimony where party failed to provide a written expert report). "The district court 'should impose the least severe

5

sanction that will accomplish the desired result—prompt and full compliance with the court's discovery orders.'" *United States v. Katz*, 178 F.3d 368, 372 (5th Cir. 1999).

Where trial is months after the service of the expert report, or where the movant had opportunity to depose the expert and provide a rebuttal report, exclusion of expert testimony is unwarranted. E.g., *PerdiemCo*, Case No. 15-cv-727, D.I. 258 ("there is no prejudice to Perdiem ... By th[e] time [of trial], Perdiem will have had Dr. Heppe's supplemental report for over three months. Geotab has also made Dr. Heppe available for deposition regarding the report.").

In a motion to strike, the movant "alone bears the burden to demonstrate that th[e] portion[at issue] of the [expert report] should be stricken." *Rembrandt Wireless Tech., LP v. Samsung Elec. Co. Ltd.*, Case No. 2:13-cv-00213, D.I. 227 at 5 (E.D. Tex. Jan. 23, 2015).

### B. Oyster Never Abandoned Its Claims of Induced Infringement

Defendants' attempt to strike Dr. Goossen's infringement opinions on inducement are based on an incorrect premise. Oyster never "abandon[ed]" or "'waived" its inducement claims as Defendants contend. Dkt. No. 106 at 6-7. As Defendants note "Oyster plead induced infringement in its complaint and included it in November 8, 2019, infringement contention." *Id.* Defendants even attach Oyster's cover pleading to the infringement contentions demonstrating Oyster's allegations. *See*, Ex. G. Oyster's amended infringement contentions did not alter that cover pleading and thus Oyster's claims of inducement still remained following the amendment. Moreover, as shown in the correspondence leading to Oyster's amended contentions, the purpose of the amendments was to address Defendants' request that a separate chart was required for each accused product. Kroeger Decl., Ex. 3. The purpose of the amendment had nothing to do with inducement and, accordingly, Defendants had no basis to believe Oyster's position had changed.[4] Accordingly, Dr. Goossen should be permitted to opine as to inducement at trial.

---

[4] Defendants rely exclusively on *Nike, Inc. v. Adidas America, Inc.*, 479 F. Supp. 2d 664, 699-70 (E.D. Tex. 2007). Dkt. No. 106 at 7. *Nike* solely concerns a failure to disclose doctrine of equivalents opinions which must be specifically disclosed under the Local Patent Rules. The Local Patent Rules have no such requirement for indirect infringement. In any event, Oyster's theory of indirect infringement was fully disclosed in its infringement contentions.

6

### C. Dr. Goossen's Opinions Regarding The Internal Optical Fiber Were Disclosed In Oyster's Infringement Contentions

Defendants again misread Oyster's infringement contentions in contending that they do not disclose the existence of an "internal optical fiber" consistent with Dr. Goossen's opinions concerning limitation 16(f). Dkt. No. 106 at 7-8. In rendering this opinion, Dr. Goossen relies heavily on block diagrams of the CFP2-ACO compliant modules found in Defendants' products, Ex. B. ¶245, or similar block diagram, *Id.* ¶ 186. Similar block diagrams are found in the infringement contentions. *See*, Ex. H at 121 (reproducing Figure 1 from the CFP2-Analogue Coherent Optics Module Implementation Agreement). If Oyster intended to only rely on an external optical fiber, there would have been no need to include the internal block diagrams depicting the internal fiber. Accordingly, this provided more than sufficient notice of Oyster's infringement theory.

Defendants' contention that Dr. Goossen's opinions should be excluded because "he did not analyze this claim requirement" is simply false. Dkt. No. 106 at 8. Dr. Goossen's report contains multiple pages of analysis concerning both limitation 16(f) and 16(g) which concern the optical fiber limitations. *See* Ex. A, ¶¶185-198. Whatever deposition admissions Defendants believe they obtained from Dr. Goossen are more appropriately matters for cross-examination at trial, and do not justify exclusion of his opinions. *See First Assembly of God Church v*, 2003 WL 25685226, at *4. In any event, as shown in the cited deposition testimony, Dr. Goossen was simply refusing to offer a claim construction opinion—that the optical fiber from limitation 16(g) was required to be the same optical fiber from limitation 16(f). *See* Ex. C at 116:5-121:8. Given that Defendants did not seek to have this term construed, Dr. Goossen's refusal to offer new constructions at deposition was proper—it is certainly not a basis to have his opinion stricken.

### D. Dr. Goossen's Opinions Regarding the "Controller" Limitation Are Based On The Same Theory Set Forth In The Amended Infringement Contentions

Defendants' attacks on Dr. Goossen's opinions regarding the "controller" limitation are simply another strawman. At no point does Oyster's infringement contentions limit its infringement read to "FlexCoherent DSP" and "'PICS (photonic integrated circuits)'" as

7

Defendants maintain. Dkt. No. 106 at 8-9. Instead, with reference to the "Implementation Agreement for CFP-2 Analogue Coherent Optics Module, OIF-CF2_ACo-01.0, at 14, Oyster specifically highlighted the "Tx Driver (Linear or Limiting" in Defendants Accused Products) which is an example of the MZM Driver that Oyster accused of infringement:



Implementation Agreement for CFP2-Analogue Coherent Optics Module, OIF-CFP2-ACO-01.0, at 14.

Ex. H at 28-29 (annotations in original).

The opinions of Dr. Goossen that Defendants move to strike rely on *this exact same figure* to explain "[t]his [figure] shows the "Tx Driver" RF drivers receiving an electronic data stream in the form of 4 parallel RF signals and then controlling the MZM." Ex. B 64-65, ¶185. Simply put, Defendants have no credible basis to assert that Oyster's infringement theory concerning the controller limitation was not disclosed in its infringement contentions. Defendants' motion should be denied.

8

### E. Dr. Goossen's Reliance on the Lipscomb Article is Proper

Defendants' motion as to Dr. Goossen's reliance on the Lipscomb article (Dkt. No. 106 at 9-10) does not clearly state the grounds on which it should be precluded. Defendants do not claim that the contents of this article are inconsistent with Oyster's infringement contentions. And, indeed comparing Dr. Goossen's opinions therein with Oyster's contention shows no such conflict. *Compare* Ex. B at 79-84, ¶¶ 189-198, ¶¶249-251 *with* Ex. H at 122-125. Moreover, despite Infinera's implication that Dr. Goossen does not analyze "any of Defendants' technical documentation" (Dkt. No. 106 at 10), his report is replete with citations to Defendants technical documents when discussing this element, including INF-COR0018593, INF-COR-0003574, INF-COR0039376, and INF-COR0017589. Indeed, Dr. Goossen's report analyzes and discusses an identical figure (Figure 7) from the same document found in the infringement contentions. *Compare* Ex. B at ¶191 *with* Ex. H at 123 (both citing to INF-COR003575).

Nor is the fact that the article was not produced during discovery relevant. "That the expert report includes information outside of the infringement contentions…is to be expected." *Digital Reg of Texas, LLC v.* Adobe Sys. Inc., 2014 WL 1653131, *5 (N.D. Cal. Apr. 24, 2014). Moreover, the evidence cited by Infinera shows that this article was in Dr. Goossen's possession, not Oyster's. Thus, the article was timely produced under Rule 26 by being cited in Dr. Goossen's report. Indeed, Defendants never sought a production of documents from Dr. Goossen at any time after he was disclosed as an independent expert.

To the extent Defendants are asking the Court to engage in claim construction over what is an "interferometer" by way of this motion, Dkt. No. 106 at 10, that request should be rejected as untimely. Defendants did not request that this term be construed in claim construction or at any other time. See Dkt. No 77. Defendants' assertions that "coherent system[s]" were "disclaimed" by the inventor at deposition have no merit. Disclaimer, if it can even arise during a deposition taken almost twenty years after issuance of the patent, requires a clear and unambiguous disavowal

9

of claim scope. *See Biogen Idec., Inc. v. GlaxoSmithKline, LLC*, 713 F.3d 1090, 1095 (Fed. Cir. 2013). The mere fact that the inventor stated he "didn't invent coherent detection" is not a disavowal that the claims of the '500 Patent cannot be infringed by such technology. Dkt. 106 at 10 (quoting Ex. J at 66:24-67:3). Moreover, Defendants' contention that the Lipscomb article is it is "fifteen years too late" ignores the fact that patent claims can be found to infringe by later arising technology. *Innogenetics, N.V. v. Abbott Labs.*, 512 F.3d 1363, 1371–72 (Fed. Cir. 2008) ("Our case law allows for after-arising technology to be captured within the literal scope of valid claims that are drafted broadly enough.").

Having been aware of Oyster's theory of infringement concerning the "interferometer" claim since well before claim construction, Defendants should not be able to raise a new claim construction argument now under the guise of a motion to strike. Defendants' motion should be denied.

### F. Imposition Of The Severe Sanction of Exclusion Is Unwarranted

Even if Defendants could establish a deficiency in the infringement contentions (which they have not), Defendants still have to demonstrate that exclusion is appropriate remedy. *Paltalk Holdings, Inc. v. Microsoft Corp.,* Case No. 2:06-cv-367 (DF), D.I. 204 (E.D. Tex. Feb. 11, 2009). A consideration of the four factor test shows that exclusion is unjustified.

#### 1. Defendants Are Not Prejudiced

As discussed above, Dr. Goossen's opinions are fully consistent with, and disclosed by, Oyster's contentions. To the extent there exist any deviations between the report and contentions, such differences are not prejudicial, as Defendants had no problem submitting a rebuttal expert report of Dr. Paul Prucnal addressing Dr. Goossen's, and they had ample opportunity to depose (and did depose, on September 18, 2020) Dr. Goossen fully regarding his opinions. Trial is not until January 4, 2021. The consideration of prejudice weighs heavily against an evidentiary exclusion sanction. *See, e.g., PerdiemCo*, Case No. 15-cv-727, D.I. 258 ("there is no prejudice to Perdiem … By th[e] time [of trial], Perdiem will have had Dr. Heppe's supplemental report for

10

over three months. Geotab has also made Dr. Heppe available for deposition regarding the report."); *Tinnus Ent., v. Telebrands Corp.*, Case No. 16-cv-33-RWS, D.I. 343 (E.D. Tex. July 12, 2017) ("This trial is still four months away and there is time for any prejudice to be cured."); *Alfonso Cioffi v. Google*, Case No. 13-cv-103, D.I. 213 (E.D. Tex. Jan. 10, 2017) (denying motion to exclude expert opinion; no prejudice due to "nearly four months to prepare for trial"); *Laserdynamics, Inc. v. Quanta Computer, Inc.*, Case No. 06-cv-348, D.I. 724 (E.D. Tex. Jan. 18, 2011) (denying motion to strike; no prejudice because the party had the opportunity to depose the expert); *TiVo v. DISH Network*, Case No. 04-cv-01, D.I. 928 (E.D. Tex. June 2, 2009) (denying motion to strike; no prejudice because defendant deposed the expert); *Eli Lilly & Co. v. Dr. Reddy's Labs.*, 2017 WL 3894956, *5 (S.D. Ind. Sept. 6, 2017) ("the inclusion of Lilly's expert reports will not prejudice DRL because DRL recently conducted discovery and served responsive expert reports regarding each and every infringement theory discussed in Lilly's expert reports."); *DataTreasury v. Wells Fargo*, 2010 WL 3912486, *4 (E.D. Tex. Sept. 13, 2010) ("SunTrust at no point moved for leave to conduct additional discovery related to Prof. Hiles' report. … Instead, SunTrust deposed Prof. Hiles and submitted a rebuttal expert report."); *Realtime Data v. Actian Corp.*, Case No. 15-cv-463, D.I. 510 (E.D. Tex. Apr. 17, 2017) ("The fact that Riverbed had a full opportunity to respond to [the expert's] theories, both through expert report and deposition, also weighs against exclusion of his opinions.").

Defendants' only claim of prejudice relates to their arguments concerning the "controller" limitation set forth above. Specifically, they contend that because Oyster accused the MZM drivers instead of the DSPs and PICs, Oyster has avoided their claims that some of the products are exhausted. Dkt. No. 106 at 9-10. The fact that Oyster plead and developed an infringement theory that contradicts Defendants' Affirmative Defenses is hardly the kind of prejudice that justifies exclusion—especially when such theory was fully set forth in Oyster's infringement contentions.

### 2. There is no need for a continuance

Because there is no undue prejudice to Defendants, there is no need for continuance. *See MacLean-Fogg Co. v. Eaton Corp.*, 2008 WL 4601476, *2 (E.D. Tex. Oct. 6, 2008) ("The absence of prejudice eviscerates the need for a continuance."). The fact that Defendants felt no need to seek an extension for their rebuttal expert report demonstrates no continuance is necessary.

### 3. The evidence Defendants seeks to preclude is of paramount importance

Dr. Goossen's opinions are central to Oyster's infringement case, and exclusion would be significant. An exclusion on this issue could be tantamount to summary judgment. Defendants seek summary judgment without even trying to show the lack of any genuine dispute of material fact.

### 4. Any purported deficiency in the contentions is due to Defendants' deficient discovery

Oyster fully disclosed its theories in its infringement contentions. But even if there were a deficiency in the contentions, it was due to Defendants' discovery deficiencies. Defendants provided their Rule 30(b)(6) witnesses on technical topics just only days before the close of fact discovery. To the extent the additional explanations in Dr. Goossen's report could be viewed as deviations from the contentions (they were not), they were entirely justified.

## IV. DEFENDANTS' ATTACKS ON DR. GOOSEN'S SECONDARY CONSIDERATIONS LACK MERIT

Defendants' attacks on Dr. Goossen's secondary considerations opinions are really just a rehash of their complaints as to his opinions on the technical benefits. In his report: (1) Dr. Goossen opines as to the technical benefits afforded to the accused products by their use of the '500 Patent and (2) that Defendants' commercial success of those products is based, at least in part, on these benefits. Nothing else is required to establish nexus, and Defendants' motion should be denied.

As Defendants' motion concedes all that is required to support Dr. Goossen's opinions is evidence of a "nexus between any secondary consideration and the claimed invention." Dkt. No. 106 at 11 (citing *Ashland Oil, Inc. v. Delta Resins & Refractories, Inc.*, 776 F.2d 281, 305 n.42

12

(Fed. Cir. 1985) ("Case law requires that a nexus be established between the merits of the claimed invention."). Contrary to Defendants' assertions, Dr. Goossen's report establishes that nexus.

Defendants admit that Dr. Goossen opines that "the commercial success of Infinera's accused products is substantial," "that the success stems from the use of the claimed inventions including the first and second mode and the ability to switch between modes," and that he further explained the reasons that the benefits were responsible for the commercial success in his "infringement report." Ex. B, ¶¶165, 166. Dr. Goossen's infringement report contains four pages of opinions, referencing Infinera documents and 30(b)(6) deposition testimony summarizing the "tremendous economic benefit" provided by patented technology. Ex. A, ¶¶ 85-89. Contrary to Defendants' statements that his opinions are not based "on any specific documentation or other evidence," (Dkt. No. 106 at 12), this opinions are based on the Infinera produced technical documents INF-COR0043196 as well as the 30(b)(6) testimony of Messrs. Sun and Spinnler. *Id.* ¶¶ 85-89. To the extent Defendants' attacks are based on their disagreement with the benefits afforded by the patented technology, those disputes go to the weight of the testimony, not to their admissibility. Defendants' motion should be denied.

## V. CONCLUSION

Defendants' motion should be denied.

Dated: October 13, 2020

Respectfully submitted,

By: */s/ Paul A. Kroeger*
Marc A. Fenster (CA SBN 181067)
Email: mfenster@raklaw.com
Reza Mirzaie (CA SBN 246953)
Email: rmirzaie@raklaw.com
Paul Kroeger (CA SBN 229074)
Email: pkroeger@raklaw.com
Neil Rubin (CA SBN 250761)
Email: nrubin@raklaw.com
RUSS AUGUST & KABAT
12424 Wilshire Boulevard, 12th Floor

13

        Los Angeles, CA 90025
        Telephone: 310/826-7474
        Facsimile 310/826-6991

## CERTIFICATE OF SERVICE

I hereby certify that the counsel of record who are deemed to have consented to electronic service are being served on October 13, 2020 with a copy of this document via the Court's ECF system.

DATED: October 13, 2020                    Respectfully submitted,

                                           By: /s/ *Paul A. Kroeger*
                                               Paul A. Kroeger

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I hereby certify that this document is authorized to be filed under seal pursuant to the Protective Order in this matter.

DATED: October 13, 2020                                      Respectfully submitted,

By: /*s/ Paul A. Kroeger*
Paul A. Kroeger