**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| OYSTER OPTICS, LLC, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO.  2:19-CV-00257-JRG |
| | § | |
| INFINERA CORPORATION,  CORIANT | § | |
| NORTH AMERICA, LLC,  CORIANT | § | |
| OPERATIONS, INC.,  CORIANT (USA) | § | |
| INC., | § | |
| | § | |
| *Defendants.* | § | |

## ORDER

The Court enters this Order in this case and similar cases now set for in-person jury trials during December of 2020 and January through February of 2021.  In such cases where formal motions for continuance have been filed, they are **GRANTED**.  In cases where formal motions for continuance have not been filed, the Court issues this Order *sua sponte*.

In March of this year, this Court—like its sister courts throughout the nation—ceased all in-person proceedings in response to the Novel Coronavirus Pandemic.  In an effort to keep the work of the Court moving while avoiding in-person proceedings, the Court issued new guidance to the parties, implementing new procedures and solutions to enable ongoing progress in cases while conducting proceedings remotely.[1]  When, in June and July, public health reports showed

---

[1] This approach, while adequate in a strict sense, allowed the Court to move forward virtually, albeit with regularly unwelcomed losses of audio, video, or both, including unfixable lagtime between audio and video where lips would move. . . lips would stop . . . and sound would follow.  The virtual proceedings detracted from the typical administration of justice, depriving the Court of the ability to observe such critical factors as intonation, body-language, attitude, demeanor, and similar vocal and other physical nuance and those quasi-intangibles that normally breathe life and meaning into the written briefing filed on the docket.  This approach also unavoidably hampered the Court's ability to interject questions and have an easy dialogue with

the rate of increase subsiding in cases of COVID-19, judges in this district and elsewhere became convinced that in-person proceedings could safely resume.  However, to facilitate such a resumption, many hours and much effort were expended by judges and court staff to develop extensive safety precautions and protocols rooted in the recommendations of public health officials to reduce the risk of spreading the virus.  Such precautions allowed a return to both in-person jury and bench proceedings.[2]

Implementing these and other safeguards and in response to improving medical data and the gradual reopening of businesses and the economy, this Court conducted its first in-person jury trial since the onset of the COVID pandemic in August of this year—safely and with no known incident.  Subsequent in-person jury trials (both civil and criminal) were conducted in September, October, and November in similar fashion.  Nevertheless, we now face a dangerously rising rate of increase in COVID-19 cases and swelling hospitalizations in this district and across the country.[3]  Despite the Court's optimism that an efficacious vaccine may become widely available

_____

counsel. In some instances, virtual proceedings before this Court were infected by the necessarily casual features of home life, such as intrusions of advocates' spouses, children, and family pets. While such happenings may be an increasing norm of remote work in many contexts, they stand in stark contrast to the formality and solemnity in which Court proceedings traditionally are and must be conducted. Such problems are only magnified in complex proceedings with many moving parts.

[2] These safety protocols included but were not limited to: taking temperatures of all entrants to court facilities; requiring masks and in some cases gloves; installing industrial air filtration devices in courtrooms; spacing in-person lawyers, parties, witnesses and jurors; installing plexiglass barriers around witness stands, jury boxes and elsewhere; limiting the number of participants physically present in court; periodic and repeated deep cleaning of jury rooms, restrooms and other common facilities; written questionnaires to venire members regarding their personal circumstances related to the virus sent and answered prior to their appearance; sequestering of jurors and providing individualized meals during trials to avoid exposure within communities during lunch breaks; and myriad other measures.

[3] This changing reality has recently been brought home by a trial conducted elsewhere in this District where, despite extensive precautions and safeguards, a mistrial was declared after multiple jurors, counsel, and court staff tested positive for COVID-19.

in the coming months, the Court is persuaded that the current status of the public health in the Marshall Division of the Eastern District of Texas requires it to **CONTINUE** all in-person jury trials.

Mindful of its docket largely populated with complex civil cases, where parties, witnesses, and staff often reside internationally or in domestic locations with a variety of travel restrictions and quarantines, the Court feels compelled to find that in-person jury trials must be continued. The Court comes to this result reluctantly—especially considering the huge earlier efforts undertaken to resume in-person jury trials. While some motion practice may be adequately addressed via virtual proceedings, the Court believes that the fair adjudication of the rights of the parties, as envisioned by the Framers and embodied in the Sixth and Seventh Amendments, requires jury trials to be conducted in-person.[4]

Consequently, jury selection in the above-captioned case will remain in-person in Marshall, Texas, but is **RESET** from **9:00 a.m. on Monday, January 4, 2021** to **9:00 a.m. on Monday, April 5, 2021**. Similarly, any outstanding pretrial conference not already held in the instant case is **CONTINUED** to a later date to be determined by the Court.

The Court, mindful of the significant ramifications of this relief, directs the parties to promptly meet and confer regarding the current schedule of deadlines in this case. Afterward, the parties may request additional relief to address any necessary modifications to the case schedule

---

[4] Jury trials are innately human experiences. More is often communicated in a courtroom non-verbally than verbally. Such a human experience must allow for the look and feel of direct human interaction. Such factors as cadence, tone, inflection, delivery, and facial expression are as vital to due process as is the applicable statute or case law. When Daniel Webster argued the Dartmouth College case, John Marshall cried from the bench. *Trustees of Dartmouth College v. Woodward*, 17 U.S. 518 (1819). Our history is replete with such examples of the humanity engrained in the American jury trial. This Court is persuaded that the remote, sterile, and disjointed reality of virtual proceedings cannot at present replicate the totality of human experience embodied in and required by our Sixth and Seventh Amendments.

by filing a jointly proposed Motion to Amend the Docket Control Order or other motion practice as these circumstances might require.[5]  Such should occur within **twenty-one (21) days** of this Order.


     **So ORDERED and SIGNED this 20th day of November, 2020.**


RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE

---

[5] To be clear, no one should view this, in and of itself, as a window of opportunity to re-open discovery or otherwise facilitate a "re-do" of cases substantially developed, narrowed, and ready to proceed.